## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Fleming Companies, Inc., et al. | ) | Case No. 03-10945 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | | |
| Dean Food Company, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-835-SLR |
| | ) | |
| Post Confirmation Trust, | ) | |
| | ) | |
| Appellee. | ) | |

## OPENING BRIEF OF APPELLANT DEAN FOOD COMPANY

Dated: September 8, 2006
Wilmington, Delaware

**THE BAYARD FIRM**
Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
222 Delaware Avenue
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

- and-

**MUNSCH HARDT KOPF & HARR, P.C.**
Mark H. Ralston, Esq.
Texas Bar No. 16489460
4000 Fountain Place
1445 Ross Avenue
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4365

COUNSEL FOR DEAN FOOD COMPANY

635392v1

**TABLE OF CONTENTS**

**Page**

I.   STATEMENT OF THE NATURE OF THE PROCEEDINGS AND
     JURISDICTION ...........................................................................................................1

II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................1

III. SUMMARY OF THE ARGUMENT ..................................................................3

IV.  STATEMENT OF FACTS ...................................................................................4

     A.   The Bankruptcy Case. ................................................................................4
     B.   Prelude to the Bankruptcy Proceeding on Claim Ownership. ..................4
     C.   Bankruptcy Proceeding on Claim Ownership ...........................................6

V.   DISCUSSION .......................................................................................................7

     A.   The Plan……………………. ...................................................................7
     B.   Dean Food's Position is Consistent with the Plan as Written ..................9
     C.   The PCT's Interpretation of the Plan is Inconsistent with the Plan's
          Terms………………………… ..............................................................12
     D.   The Straw-Man Argument. .....................................................................14
     E.   The PCT's Position Leads to Absurd Results. ........................................16

VI.  CONCLUSION ...................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

CASES

*Apponi v. Sunshine Biscuits, Inc.*,
   652 F.2d 643 (6th Cir. 1981) ....................................................................................................10

*Boyette v. Algonquin Gas Transmission Co.*,
   952 F. Supp. 192 (S.D.N.Y. 1997) ........................................................................................10

*Engelhard Corp. v. NLRB*,
   437 F.3d 374 (3rd Cir. 2006) ..........................................................................................9

*In re: Cybergenics Corp.*,
   226 F.3d 237 (3rd Cir. 2000) ..................................................................................................14

*Knutson v. Morton Foods, Inc.*,
   603 S.W.2d 805 (Tex. 1980) ...................................................................................................17

*Monarch Life Ins. Co v. Ropes &Gray*,
   65 F.3d 973 (1st 1995)....................................................................................................10, 11

*Overthrust Constructors, Inc. v. Home Ins. Co.*,
   676 F. Supp. 1086 (D. Utah 1987) .........................................................................................11

*U.S. v. Monsanto*,
   182 F. Supp. 2d 385 (D.N.J. 2000) ........................................................................................11

STATUTES

28 U.S.C. § 158(a)(1).....................................................................................................................1

11 U.S.C. § 546(c) ..........................................................................................................................4

OTHER AUTHORITIES

Fed. R. Bankr. P. 8001(a) ..............................................................................................................1

Merriam-Webster OnLine..............................................................................................................10

Dean Food Company, on behalf of itself and its various subsidiary and affiliated entities (collectively, "Dean Food"), appeals from an order of the United States Bankruptcy Court for the District of Delaware.

## I.  Statement of the Nature of the Proceedings and Jurisdiction[1]

This is an appeal from a Bankruptcy Court order entered in the Fleming Foods bankruptcy case on October 19, 2005 (the "Order").[2]  The Order addressed a disputed interpretation of Fleming Foods' confirmed plan of reorganization (as described further below, the "Plan").  Because the Order disposed of all discreet claims between the parties regarding the Plan's terms, it is not interlocutory.  Accordingly, this District Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001(a).

## II.  Statement of Issues Presented for Review

The Plan provides for the assignment of all "Causes of Action" that are against Reclamation Creditors (such as Dean Food) to a special Reclamation Creditors Trust (or "RCT").  A substantial portion of Fleming's remaining assets are assigned to the Post Confirmation Trust (or "PCT").  Expressly excepted from the PCT's trust assets are those assets assigned over to the RCT.

The Plan's definition of what constitutes a claim is broad and includes claims that are "third-party" claims and claims that are not only "direct" claims, but also "indirect", "derivative" or "otherwise".

---

[1]    Where first cited, record items shall be identified by reference to: (a) Bankruptcy Court docket number by citation to "Bankr. D.I.____"; Dean Food's designation of the record by citation to "R.I . ___", and, in the case of certain pertinent documents, to the appendix filed by Dean Food by reference to "App. ___".

[2]    Bankr. D.I. 11930; R.I. K;  App. 1.

In May, 2005, the PCT sued John Robinson, a Dean Food officer, for alleged tortious conduct undertaken by Mr. Robinson on behalf of Dean Food.   In its Cross-Complaint and Original Complaint initiating the suit against Robinson (the "Complaint"), the PCT alleges:

> Each of the Vendor-Officer Defendants [including Mr. Robinson] was acting within the course and scope of their employment as officers, agents or employees of the Vendors [including Dean Food] that employed them.   The Vendors are, therefore, responsible to indemnify the Vendor Officer Defendants for any damages they are compelled to pay the PCT as a result of its recovery in this action.[3] [4]

Dean Food denies that the PCT's claims against Mr. Robinson have any merit, but concurs that it has a duty to indemnify Mr. Robinson on those claims.

The central issue in the Bankruptcy Court proceeding was whether under the Plan an "indirect" claim meant a claim where the party ultimately liable on the claim was not a party to the underlying legal action.  If so (as Dean Food contends), the claim against the ultimately liable party would constitute a "Cause of Action".   If the ultimately liable party was a Reclamation Creditor, the claim (being a Cause of Action) would belong to the RCT, and not the PCT.

Both Dean Food and other parties aligned with it and the RCT agreed in the bankruptcy court proceeding that the disputed provisions of the Plan were unambiguous.

At issue in this appeal is whether the Bankruptcy Court erred as a matter of law in determining that claims against Dean Food's officer did not constitute a claim that was indirect or otherwise against Dean Food where it is undisputed that (a) those claims arise from alleged conduct undertaken as part of the officer's corporate duties and responsibilities, and (b) Dean Food would be obligated to indemnify its officer (and the PCT alleges that Dean Food is obligated to indemnify its officers) against any cost or liability arising from the claims.

---

[3]    *Complaint* at 46-47.

[4]    *See Complaint* at 29-31, 46-47.  The Complaint is attached as Exhibit "2" to the RCT Motion (defined herein). [Bankr. D.I. 11559; R.I. A;  App. 2.]

### III. Summary of the Argument

1.      Dean Food is a Reclamation Creditor.[5]

2.      The Plan provides that all "Causes of Action" against Reclamation Creditors, including claims that are "indirect", "derivative" or "otherwise" are assigned to the RCT. Expressly excepted from the assets assigned to the PCT are those assets that are assigned to the RCT.

3.      Bankruptcy plans are subject to the same rules of construction as contracts.

4.      In construing provisions of a contract: (i) terms are to be given their ordinary and plain meaning; and (ii) a contractual instrument should be interpreted where possible to give meaning and effect to all of its provisions.

5.      The PCT has asserted claims against John Robinson, a Dean Food's officer, for actions taken by Mr. Robinson in the scope of his corporate duties.

6.      Dean Food has a duty to indemnify John Robinson on the claims asserted by the PCT insofar as those claims relate to actions undertaken by Mr. Robinson on Dean Food's behalf.

7.      The claims asserted by the PCT against John Robinson constitute indirect claims against Dean Food.  Therefore, the Plan has assigned the claims against John Robinson to the RCT.

8.      The PCT's position that the claims asserted against John Robinson are not indirect claims against Dean Food fails to give effect to the plain meaning of the terms used in the Plan's "Causes of Action" definitional provision.

---

[5]      Dean Food's contention was never an issue in the Bankruptcy Court proceeding.  Support for this contention is contained in Dean Food Company's (I) Joinder in Motion of the Reclamation Creditors Trust to Enforce the Reorganization Plan and Confirmation Order and (II) Response in Opposition to Cross-Motion of the Post-Confirmation Trust for Declaratory Relief (the "Dean Food Joinder").  See Dean Food Joinder at 3, ¶4.  [D.I. 11867; R.I. H; App. 3.]

9.     The PCT's position, if adopted, would raise significant legal and judicial problems, including the possibility that Dean Food would be subject to having to satisfy two judgments on the same claims.

## IV.  Statement of Facts

### A.     The Bankruptcy Case

On April 1, 2003, Fleming Companies, Inc. and numerous affiliates (collectively, "Fleming") filed for bankruptcy under Chapter 11 of the Bankruptcy Code.  The bankruptcy cases filed by Fleming were administratively consolidated under the case referenced as Case No. 03-10945 (the "Bankruptcy Case").

On May 28, 2004, Fleming and the Official Committee of Unsecured Creditors ("OCUC") filed the Plan (entitled "Third Amended and Revised Joint Plan of Reorganization").

On July 26, 2004, the Bankruptcy Court entered an order confirming the Plan.

### B.     Prelude to the Bankruptcy Proceeding on Claim Ownership

The Plan creates two distinct creditors trusts - the RCT and the PCT.  As described more fully below, the Plan assigned to the RCT all claims by and against Reclamation Creditors (which are essentially those creditors that asserted UCC reclamation claims, as provided under 11 U.S.C. § 546(c)).  The Plan assigned certain other assets to the PCT.  Expressly excepted from the assets assigned to the PCT were those assets assigned to the RCT, including all claims assigned to the RCT against Reclamation Creditors.

Apparently, in the spring of 2005 a dispute arose between the RCT and the PCT regarding the handling of claims involving certain Reclamation Creditors (including Dean Food). Essentially, the PCT alleged that the Reclamation Creditors aided and abetted Fleming employees in committing accounting fraud on Fleming (generally, the "E&O Claims").  The PCT urged the RCT to bring suit on those claims.  The RCT, concerned with issues involving the

merits of the claims, refused to do so without further investigation and the opportunity to permit the RCT and the affected Reclamation Creditors to negotiate any E&O Claims along with other claims between and among them.

Although the Plan did not provide for the resolution of Dean Food's Reclamation Claims or the Debtors' claims against Dean Food, it did provide a framework for the efficient and economical resolution those claims by calling for the adoption of voluntary claims reconciliation rules.[6]  In short, the Plan provided for the creation of the RCT and vested the RCT with standing and authority to pursue Fleming's claims against Reclamation Creditors.[7]  Likewise, the Plan vested the RCT with the responsibility of addressing and administering claims by Reclamation Creditors against Fleming. Given the litigious stance of Fleming and the OCUC in connection with Reclamation Claims asserted by Dean Food and other vendors and the practical approach to the resolution of claims by and against Reclamation Creditors proposed under the Plan, Dean Food welcomed the Plan's assignment of claims and causes of action by and against Reclamation Creditors to the RCT.

Dean Food, in the spirit of the consensual claims-resolution process adopted by the RCT, voluntarily provided the RCT with documents related to its Reclamation Claims and regarding claims assigned by the Plan to the RCT.  The documents produced to the RCT included substantial documents involving the transaction underlying the claims that were later brought by the PCT against John Robinson.  Also, Dean Food produced on a voluntary basis documents regarding alleged overpayments, preference transfers and Fleming deduction credits.  The parties and their respective counsel also spent significant time working to reach a global resolution of

---

[6]     *See* Draft Reclamation Creditors Trust Agreement at 15, ¶ 4.6 (attached as Exhibit 12 to the Plan).

[7]     *See* Plan at Art. V.H.1.

claims between them.  As a result of those joint efforts, Dean Food has settled *all* claims between it and the RCT in one global settlement.[8]

On March 31, 2005, apparently unsatisfied with the RCT's measured approach to resolving claims against the Reclamation Creditors, the PCT sought to end-run the RCT and filed its Complaint asserting E&O Claims against various officers or employees of the Reclamation Creditors, including John Robinson.  That Complaint was filed as part of an on-going federal civil suit pending in the Eastern District of Texas (the "Texas Action").  The PCT, recognizing that it lacked standing, did not sue Dean Food or other Reclamation Creditors in the Texas Action.  The PCT, however, did assert that Robinson's alleged actionable conduct was undertaken in the exercise of his corporate duties and responsibilities and was for the benefit of Dean Food.[9]  Thus, the PCT alleges that Dean Food is responsible for Robinson's conduct and that it owes Robinson a duty to indemnify him from any liability on those claims.[10]  (Like Robinson, Dean Food denies that the E&O Claims asserted against it through Robinson have any merit whatsoever, but does not deny that it has a duty to indemnify Robinson on those claims.)

## C.     Bankruptcy Proceeding on Claim Ownership

Faced with the PCT's blatant end-run action around the RCT's rights and obligations to administer claims both by and against Reclamation Creditors, the RCT moved the Bankruptcy Court to enforce the Plan's terms by enjoining the PCT from bringing the E&O Claims (the "RCT Motion").  The PCT, by response and cross-motion, opposed the relief (the "PCT

---

[8]     The RCT – Dean Food settlement agreement was entered into as of January 15, 2006.  Consequently, having been consummated after the Bankruptcy Court's hearing on the claim ownership issue, it is not part of the record on appeal.  For reference, however, the settlement agreement appears at App. 4.

[9]     Complaint at 46-47, ¶ 120.

[10]     *Id.*

Motion").[11]   Dean Food (along with three other Reclamation Creditors) joined in the RCT Motion and objected to the PCT Motion by the filing of the Dean Food Joinder.

On October 19, 2005, the Bankruptcy Court heard the RCT Motion, the PCT Motion, the Dean Food Joinder (as well as three other joinder motions filed by three other Reclamation Creditors).  It was undisputed that the PCT premised its E&O Claims on the duty of Reclamation Creditors to satisfy any ultimate liability their officers might have.  The Bankruptcy Court also expressed concerns that that claims being pursued by the PCT and the claims directly against the Reclamation Creditors were one and the same.  Despite its concerns, however, the Bankruptcy Court adopted the PCT's strained interpretation of the Plan's "Cause of Action" definition provision and granted the PCT Motion.

## V.  Discussion

### A.    The Plan

Whether the PCT's E&O Claims have any merit was not before the Bankruptcy Court and is not at issue in this appeal.[12]   The issue here is whether the PCT can circumvent the Plan's assignment of claims against Reclamation Creditors to the RCT, including "indirect" claims or claims "otherwise" against the Reclamation Creditors, by bringing those same exact claims against officers and employees of the Reclamation Creditors acting in their representative capacities.

---

[11]    *See* Amended Response of the Post-Confirmation Trust to Claim Ownership Motion of Reclamation Creditors Trust and Cross-Motion of the Post-Confirmation Trust for Declaratory Relief [D.I.11889; R.I C; App. 5] (amending the PCT's original response to the RCT Motion [D.I. 11866; R.I. E].

[12]    Despite that obvious fact, the PCT has taken great pains to try and create a case that its E&O Claims are substantial and important to the PCT.  Dean Food views the PCT's E&O Claims as nothing more than an effort to pursue meritless claims against any possible "deep-pocket" source.

In the proceeding before the Bankruptcy Court, the PCT agreed that the Plan is *not* ambiguous.[13]  The PCT, for its part, took the position that the Plan does not foreclose it from bringing suit against officers of Reclamation Creditors.[14]  In particular, the PCT argued that it has standing to assert claims against "vendor officers" of Reclamation Creditors, regardless of the fact that those individuals are all asserted to have acted within the scope of their corporate authority, and that the Reclamation Creditors are obligated to indemnify them.[15]

The Plan provides as follows:

- The RCT Assets include all "Causes of Action" against Reclamation Creditors.[16]

- The term "Causes of Action" includes claims "whether direct, indirect, derivative or otherwise" against any person.[17]

- The PCT Assets include certain assets of the Debtors, the Reorganized Debtors and Core-Mark Newco, but "do not include any RCT Assets."[18]

---

[13]  *See* PCT Motion at 7-9.

[14]  *See id.*

[15]  *See* PCT Motion at 9-11. The PCT has admitted that its motivation in asserting that the "Vendor Officers" acted within the scope of their corporate authority was to "forestall any coverage defenses that might exist under applicable policies of insurance. *See* PCT Motion at 12-13, ¶ 23.

[16]  *See* Plan Art. V.H.2., p. 28.

[17]  *See* Plan at Art. I.B.36., p. 4.  The term "Cause of Action" is defined in its entirety as follows:

"Cause of Action" means, including but is not limited to, all Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to, all claims in any avoidance, recovery, subordination or other actions against Insiders and/or any other Persons under the Bankruptcy Code, including sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553) of the Debtors, the Debtors in Possession and/or the Estates (including, but not limited to, those actions listed in this Plan, Exhibit A filed herewith and the Disclosure Statement that are or may be pending on the Effective Date or instituted by Core-Mark Newco, the Reorganized Debtors, the PCT or the RCT as applicable, after the Effective Date against any Person based on law or equity, including, but not limited to, under the Bankruptcy Code, *whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown.* (Emphasis added.)

[18]  *See* Plan Art. V.G.3., pp. 25-26.

The crux of the dispute, then, is whether the use of the words "indirect" or "otherwise" in describing the different types of claims constituting "Causes of Action" include claims that would be recoverable from an indemnitor indirectly or otherwise through the defendant - indemnitee.   If the answer is yes, then the claims being asserted by the PCT against John Robinson are, in addition to being direct claims against Robinson, Causes of Action against Dean Food.  Because Dean Food is a Reclamation Creditor, those Causes of Action are assigned by the Plan to the RCT.

**B.     Dean Food's Position is Consistent with the Plan as Written**

The plain and ordinary meaning of the words "indirect" or "otherwise" in the context of what constitutes a "Cause of Action" establishes that this defined term includes claims beyond those that could be directly recovered against a party.   Rather, "Cause of Action" must also include claims that would be recoverable against that party through "indirect" or other non-direct means.

In the Bankruptcy Court proceeding, the parties concurred that bankruptcy plans are to be construed as contractual instruments.   Accordingly, no party presented evidence outside of the Plan itself regarding the intent of the parties to the Plan.  Because the Plan is not ambiguous, the Bankruptcy Court's ruling is one of law and subject to de novo review by this District Court.[19]

Two rules of contractual construction appear relevant to this matter.  First, words are to be given their ordinary and common meaning unless shown to have a particular distinct

---

[19]     *See, e.g., Engelhard Corp. v. NLRB,* 437 F.3d 374, 377 (3rd Cir. 2006) (holding that de novo review was appropriate in adjudicating an appeal involving the interpretation of an unambiguous collective bargaining agreement.)

meaning.[20]    Second, where not unreasonable, provisions are to be construed has having

substantive meaning. [21]

     First, the plain meaning of the terms "indirect" and "otherwise" with respect to the

definition of "Cause of Action" supports Dean Food's position in this matter.    The word

"indirect" means "deviating from a direct line or course" or "not going straight to the point".[22]

The word "otherwise" means "different".[23]    Thus, in the context of the Plan provision describing

what the term "Cause of Action" means, "indirect" must refer to a legal claim where recovery

can be had from someone other than the named defendant.    The term "otherwise", when

employed in the same context, appears to further broaden the concept of what constitutes a claim

encompassing legal claims that contemplate any conceivable form of recovery against a person,

even if not direct or indirect.

     The proposition that a claim recoverable from a third-party indemnitor (via an action by

the indemnitee) constitutes an "indirect claim" has support in case law.    For example, the First

Circuit in the *Monarch Life* case describes a possible indemnification claim as an "*indirect*

*claim*" protecting the potential indemnitor from actions under a bankruptcy plan third-party

injunction provision.[24]    In *Monarch Life*, the appellant (a subsidiary of the debtor corporation)

was found to be enjoined from pursuing a conflict of interest action against its attorneys, who

---

[20]    *See Apponi v. Sunshine Biscuits, Inc.*, 652 F.2d 643, 647 (6th Cir. 1981) (holding, "[t]he "'plain and ordinary meaning'" doctrine is at the heart of contract construction. Under this doctrine, "'words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument.'" (*quoting Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 245-46, 374 N.E.2d 146, 150 (1978))).

[21]    *See Boyette v. Algonquin Gas Transmission Co.*, 952 F. Supp. 192, 201 (S.D.N.Y. 1997) (holding that "it is a cardinal principal of contract construction that the document should be read to give effect to all its provisions and to render them consistent.") (citing, among other authority, the Restatement (Second) of Contracts §§ 202(5), 203(a) and Comment b)).

[22]    See Merriam-Webster OnLine (http://m-w.com).

[23]    *Id.*

[24]    *See  Monarch Life Ins. Co v. Ropes & Gray*, 65 F.3d 973, 980 (1st Cir. 1995).

also represented the parent-debtor, on the ground that the parent's confirmed bankruptcy plan contained an injunction provision against claims that that could affect the parent corporation, its property or in any way related to a claim against the parent.[25]  In its findings, the First Circuit Court also noted that Monarch Life itself was a potential beneficiary of the broad third-party release provision, in that the provision would insulate it from possible "*indirect claims* for indemnification."[26]

Because "Causes of Action" against Reclamation Creditors were assigned to the RCT and expressly excluded from the PCT's assets, it is the RCT that is the beneficiary of the broadly worded and inclusive "Cause of Action" definition provision. (The Plan's exclusion of the RCT assets from the PCT's assets is emphatic.  The laundry list of PCT Assets is "[S]ubject to the preceding exclusion of all RCT Assets.")  Thus, there is no ambiguity that the same cause of action could not be assigned to both the PCT and the RCT, even if that action lay against both a Reclamation Creditor and a non-Reclamation Creditor.  If the Cause of Action was against a Reclamation Creditor and that Reclamation Creditor could be liable both directly and indirectly (e.g., by a claim for contribution or indemnification), the Cause of Action was assigned to the RCT.  Thus, when the terms of the Plan at issue are given their plain and ordinary meanings, it is clear that the E&O Claims against Robinson were assigned to the RCT, not the PCT.

---

[25]    *Id.* at 976, 984.

[26]    *Id.* at 980 (emphasis added).  *See also U.S. v. Monsanto*, 182 F. Supp. 2d 385, 393 (D.N.J. 2000) (in discussing the procedural history of the case, noting that "any *indirect claims* against Monsanto based on contribution or *indemnification* were futile ….");  *Overthrust Constructors, Inc. v. Home Ins. Co.*, 676 F. Supp. 1086, 1089-90 (D. Utah 1987) (in discussing the provisions of policy exclusions contained in a commercial liability insurance, finding that the exclusion referring to "indirect claims" addressed the insured's coverage rights with respect to indemnification and contribution claims).

C.   **The PCT's Interpretation of the Plan is Inconsistent with the Plan's Terms**

In the proceeding below, the PCT made a number of arguments – most of which were not at all relevant to the issue of whether the term "Causes of Action" includes claims that would be indirectly recoverable against an indemnifying party.[27]

The essence of the PCT's argument regarding the construction of the Plan with respect to the assignment of Causes of Action is essentially that it is not suing Reclamation Creditors and that indemnification claims belonging to officers of those Reclamation Creditors are independent claims.[28]

The PCT's construction argument fails to give any meaning to the breadth of the claims that are encompassed by the term "Cause of Action". Most notably, the PCT's interpretation would be limited to direct claims only and would obviate any meaning of the words "indirect" or "otherwise" contained in the "Causes of Action" definitional provision. As noted above, the term "indirect" has been used in a number of cases to describe indemnification claims (including in the bankruptcy context). The flaw in the PCT's position is highlighted by the PCT's failure to ascribe any meaning in its PCT Motion to the word "indirect" in defining the types of claims included in the term "Cause of Action".

The PCT's position is also founded on the assumption that the Causes of Action against John Robinson would be a different Causes of Action than those against Dean Food. The Causes of Action – the E&O Claims against both John Robinson and Dean Food are the same. But it is the fact that Robinson has an indemnification claim back against Dean Food on the E&O Claims

---

[27]   *See, generally,* PCT Motion at 2-5.

[28]   *See* PCT Motion at 12-14, ¶¶ 23-26.

that makes those claims both direct claims (by the RCT against Dean Food) and also indirect claims (by the PCT against Dean Food via its indemnification obligation). Stated another way, it is not the indemnification claim that is being assigned, but Fleming's E&O Claims. Because Robinson has the right to indemnification, those substantive claims are both direct and indirect claims against Dean Food.[29]

At hearing, the PCT appears to have urged that the words "indirect" and "otherwise" in defining the term "Cause of Action" did have some meaning and referred to claims that could be brought by a non-debtor on behalf of Fleming's bankruptcy estate. At hearing below, the PCT argued that the terms "indirect" claims or claims that are "otherwise" against Reclamation Creditors can refer only to claims brought on behalf of another party for Fleming also renders those terms meaningless. Under the Bankruptcy Code, claims that would be otherwise maintainable by third-parties (e.g., *creditors*) on account of a debtor vest with the estate or its representative upon the filing of bankruptcy. For example, claims otherwise maintainable by creditors to recover fraudulent conveyances on behalf of a debtor cannot, after bankruptcy, be brought by anyone other than a bankruptcy trustee or debtor-in-possession (absent authority of

---

[29]    The PCT also appears to back off of its position that the Reclamation Creditors involved indirectly in the PCT's Texas Action owe a duty to indemnify their officers or employees. The PCT notes that only the affected officers and employees would have the right to pursue indemnification claims "if they exist at all". Dean Food does not contest that it owes this duty to its officer, John Robinson. Thus, the PCT cannot evade the issue here by arguing that the ultimate issue of indemnification is undecided.

Alternatively, it may be sufficient that the E&O Claims are only direct claims against Dean Food, even if Dean Food's owed no duty to John Robinson a duty to indemnify him. The PCT assumes that the Cause of Action against Robinson is distinct from that against Dean Food. A more logical approach would be to recognize that the same Causes of Action lie against both John Robinson and Dean Food, as to which each person could be held severally liable. Under this approach, the E&O Claims would be carved out from the PCT's assets as an RCT asset regardless of whether John Robinson had a right to indemnification.

the bankruptcy court for another party or committee to bring the claims on behalf of the bankruptcy estate).[30]

Here, to the extent that any other party had standing to bring claims for Fleming, that standing was eliminated upon Fleming's bankruptcy filing. Thus, under the PCT's interpretation of the Plan, the distinction between "direct" and "indirect" claims is rendered meaningless. Accordingly, the PCT's position is contrary to fundamental principles of statutory construction.

## D.    The Straw-Man Argument

In the PCT Motion and at hearing, the PCT devoted significant effort to creating a straw-man argument that Dean Food's interpretation of the Cause of Action definitional provision would foreclose actions by the PCT against significant targets alleged to have been involved in Fleming's demise, including Fleming's officers and directors and Deloitte & Touche ("D&T"). [31] The PCT argued that, if Dean Food's interpretation was adopted, claims against a defendant director, officer, or D&T would not vest with the PCT if that defendant could show a right to obtain indemnification or contribution (no matter how small) from Dean Food's on the claims.

Thus, the PCT appears to have urged that the terms employed in the "Cause of Action" definitional provision be discarded as unreflective of the intent of the Plan. The Bankruptcy Court became unnecessarily pre-occupied with the PCT's straw-man construct and appears to have rendered its ruling largely as a result of that pre-occupation. Thus, the Bankruptcy Court incorrectly adopted the position that the terms "indirect" claims and claims that might "otherwise" be against a Reclamation Creditor referred only to claims that could have been brought by third-parties on behalf of Fleming.

---

[30]    *See In re: Cybergenics Corp.*, 226 F.3d 237, 243-44 (3rd Cir. 2000) (discussing the manner in which a bankruptcy debtor-in-possession or trustee obtain standing to bring state law fraudulent transfer and other creditor avoidance claims under 11 U.S.C. § 544(b) for the benefit of the creditor body).

[31]    See, e.g., Hearing Transcript ("Hrg Tr.") at 31-39.  D.I. 11992; R.I. L.; App. 6.

The Bankruptcy Court erred. Dean Food's interpretation of the Plan is the interpretation that is consistent with the terms and provisions of the Plan as written. Because the Plan is unambiguous, that should end the argument.

Also, the (hypothetical) concern asserted by the PCT that Dean Food's interpretation of the "Cause of Action" provision would effectively release insiders or D&T, is groundless and without merit.

First, none of these litigation targets have raised the claim ownership issue. Rather, it appears that claims against Fleming's officers, directors and pre-bankruptcy professionals have all been resolved.

Second, the Causes of Action against directors, officers and professionals would not be "erased" or released under the PCT's straw-man construct – they would be assigned over to the RCT. And the Plan does not preclude the RCT from voluntarily assigning to the PCT any claims that the RCT does not wish to maintain or pursue (in fact, the PCT complains vociferously in the PCT Motion that the RCT did not do this with respect to the E&O Claims against Reclamation Creditors).

Third, the E&O Claims asserted by the PCT against Robinson involve one discreet transaction. The E&O Claims do not encompass the long series of wrongdoing alleged to have been committed by certain directors, officers and professionals. Thus, any supposed D&T contribution claims against Dean Food would involve only the discrete transaction involving Dean Food. Contrast that with the claims brought against Robinson, where the PCT asserts that *all* of Robinson's alleged actions are attributable to Dean Food.

And fourth, the allegation that a duty of indemnification or contribution would lie against Dean Food by a director or officer or by D&T has never been alleged or demonstrated. Here,

however, the PCT itself alleges that the connection to Dean Food exists through Robinson's established indemnification claim.

Accordingly, the PCT's straw-man argument is not only irrelevant, but ill-founded.

**E.     The PCT's Position Leads to Absurd Results**

Moreover, it is the PCT's interpretation of the "Cause of Action" term that creates both hypothetical and real issues.  Among other things, the PCT's position creates the potential for: (a) double recoveries; (b) inconsistent rulings by different courts on the same claims; (c) jurisdictional issues regarding how recoveries should be apportioned between the two trusts; (d) issues involving res judicata and collateral estoppel involving separate actions on the same claims..

Under the PCT's interpretation of the RCT assignment provision, the RCT could seek recovery from a Reclamation Creditor for tortious conduct, while the PCT could do so from the Reclamation Creditor's employees.  The two trusts could conceivably bring these same claims in separate actions in different cases, courts and jurisdictions.  Thus, the position advocated by the PCT is one in which fosters an environment of judicial inefficiency and inconsistency.  It also presents the specter of a double recovery, where the RCT could obtain a judgment or settlement in one action and the PCT in another (in differing amounts), with each trust recovering against its respective adversary (either the defendant Reclamation Creditor or its employee).

To the extent that only one total recovery could be had on any claims, the Plan provides no mechanism for establishing how alleged damages are determined or apportioned between the two trusts.  This concern presents more than a hypothetical issue.  After the Bankruptcy Court hearing on the clam ownership question, Dean Food and the RCT entered into a settlement agreement under which the parties exchanged mutual releases of claims and causes of action against the other and their respective officers, directors, agents, attorneys and other

representatives. As part of the release granted by the RCT to Dean Food, the RCT recognized that all claims (including E&O Claims) were fully satisfied. The Texas Supreme Court has recognized that such an acknowledgment precludes any further recovery on account of the release and satisfied claims.[32] Thus, at this point, any recovery by the PCT against Robinson reflects a double recovery on the part of Fleming and its successors.

Also, the claim splitting position advocated by the PCT leads to other legal inconsistencies. If the RCT were to have sued Dean Food on the E&O Claims and lost, would the PCT be barred from suing Robinson on res judicata or collateral estoppel grounds? Would positions taken in the hypothetical RCT action be binding on the PCT on judicial estoppel grounds? What if both trusts each obtained a judgment, but in differing amounts – which would control for purposes of determining actual damages (so as to avoid a double recovery) and which court would make that determination? All in all, the PCT's approach could not work and is just plain wrong.

## VI. Conclusion

The plain and ordinary meaning of the Plan's "Cause of Action" definition provision and the provision providing for the assignment of Causes of Action to the RCT (and likewise excluding those same Causes of Action from the assignment of assets to the PCT) establishes that the E&O Claims brought by the PCT belong, in fact, to the RCT. The Bankruptcy Court, therefore, erred as a matter of law in holding otherwise.

---

[32] *See Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805, 807 (Tex. 1980) (holding that a settlement with an employee did not result in the release of the employer, and that to do so, the settlement would have to recognize that it was "in full *satisfaction* of the plaintiff's claims against both the employee and the employer.")

Also, Dean Food's interpretation of the Plan is both consistent with standard rules of contractual construction and consistent with the efficient and fair administration of justice.

Accordingly, the Bankruptcy Court's Order should be reversed and an order should be entered (a) finding that the claims asserted by the PCT against John Robinson are claims belonging to the RCT, not the PCT, and (b) enjoining the PCT from continuing to litigate the claims against John Robinson.

Dated: September 8, 2006          THE BAYARD FIRM
Wilmington, Delaware

Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
222 Delaware Avenue
Wilmington, DE 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

- and-

**MUNSCH HARDT KOPF & HARR, P.C.**
Mark H. Ralston, Esq.
Texas Bar No. 16489460
4000 Fountain Place
1445 Ross Avenue
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4365

COUNSEL FOR DEAN FOOD COMPANY