TAB 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| FLEMING COMPANIES, INC., et al., | § | Case No. 03-10945 (MFW) |
| | § | |
| Debotrs. | § | (Jointly Administered) |
| | § | |
| | § | Related Documents: 11559 and 11822 |

**DEAN FOODS COMPANY'S (I) JOINDER
IN MOTION OF THE RECLAMATION CREDITORS'
TRUST TO ENFORCE THE REORGANIZATION PLAN AND
CONFIRMATION ORDER AND (II) RESPONSE IN OPPOSITION TO CROSS-
MOTION OF THE POST-CONFIRMATION TRUST FOR DECLARATORY RELIEF**

Dean Foods Company, on behalf of itself and its various subsidiary and affiliated entities (collectively, "Dean Foods"), joins the RCT in its motion seeking to enforce the terms of the Plan and Confirmation Order [Docket No. 11559] and requests that this Court enjoin the PCT from continuing to prosecute indirect claims against Dean Foods through its employee and officer, John Robinson.[1] Further, Dean Foods responds and objects to the PCT cross-motion for declaratory relief [Docket No. 11822].

### Synopsis

1. The issue here is whether the claims asserted by the PCT against the officers of certain Reclamation Creditors, including John Robinson as an officer of Dean Foods, are "indirect", "derivative" or "otherwise" claims against those Reclamation Creditors. If so, under the Plan, those claims are vested with the RCT, not the PCT. In the case of Dean Foods and John Robinson, the claims asserted by the PCT are clearly "indirect", "derivative" or "otherwise" claims against Dean Foods and, therefore, lie with the RCT.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as defined in the RCT motion or, if not defined in the RCT motion, the Plan.

604987v1

A 155 11867
10/12/05

2. As plead by the PCT, the claims against Robinson are for conduct allegedly committed by him in his capacity and within the scope of his authority as a Dean Foods' officer. Thus, the PCT expressly alleges that the alleged wrongdoing was also committed by Dean Foods. The PCT admits that in taking this position, it was motivated to avoid coverage issues under Dean Foods' director and officer insurance policies.[2] It is clear from the PCT's own statements that its intent is to obtain recovery from, at a minimum, Dean Foods' insurance policies (and presumably from Dean Foods, to the extent that it has agreed or is otherwise obligated to indemnify Robinson). Thus, although Dean Foods may not be a named defendant to the claims brought by the PCT, the PCT's own litigation pleading (as well as statements made in its cross-motion) demonstrate that Dean Foods is the PCT's target in suing Robinson.

3. The Plan carves-out from the PCT Assets any assets assigned to the RCT. The Plan assigns to the RCT all claims against Reclamation Creditors, including "indirect" claims, "derivative" claims or claims that would "otherwise" be considered claims against such creditors. Thus, the Plan carves-out *from* the PCT Assets claims that could not only be brought against a Reclamation Creditor directly, but also claims that seek recovery from the Reclamation Creditor even if it is not named as an actual party. That the PCT has a direct claim against Robinson is immaterial. The PCT's claims – as the PCT expressly states – are also claims against Dean Foods. Accordingly, this Court should find that the claims asserted by the PCT against Robinson are "indirect", "derivative" or "otherwise" claims against Dean Foods and, as requested by the RCT, enjoin the PCT from continuing to prosecute those claims.

---

[2] One would assume that the PCT's corporate authority allegation is based on a good faith belief in fact, although the PCT does not state in its cross-motion that such a good faith belief exists as a basis for the allegation. *See* PCT cross-motion at 12, ¶ 23.

## Background

4.  There is no dispute that Dean Foods is a Reclamation Creditor. The Plan defines "Reclamation Creditor" as, among other things, those claimants identified on the Reclamation Claim Summary by Claimant of the Debtors dated November 21, 2003 (the "Reclamation Report").[3] Among other things, Dean Foods and two of its affiliates, Morningstar Foods Inc. and Dean Specialty Foods Group, LLC, are identified by the Debtors as Reclamation Creditors.[4] The PCT admits this fact in its cross-motion, if only indirectly.[5]

5.  Although the Plan did not provide for the resolution of Dean Foods' Reclamation Claims or the Debtors' claims against Dean Foods, it did provide a framework for the efficient and economical resolution those claims by calling for the adoption of voluntary claims reconciliation rules.[6] In short, the Plan provided for the creation of the RCT and vested with the RCT standing to pursue both Reclamation Claims and the Debtors' claims against Reclamation Creditors.[7] Given the litigious stance of the Debtors and the OCUC in connection with Reclamation Claims asserted by Dean Foods and other vendors and the practical approach to the resolution of claims by and against Reclamation Creditors proposed under the Plan, Dean Foods

---

[3] *See* Plan Art. I.B. 148. The Reclamation Claim Summary is attached as Exhibit "B" to the *Combined Amended Reclamation Report and Motion to Determine that Reclamation Claims are Valueless*, filed November 25, 2003 [Docket No. 4596]. A true and correct copy of the Reclamation Claim Summary is attached as Exhibit "F" to the PCT's cross-motion.

[4] The Debtors also brought three separate adversary proceedings against Dean Foods seeking the disallowance of all or a portion of Dean Foods' reclamation claim and seeking recovery on other grounds (including claims for the recovery of alleged preference, unpaid deductions and overpayments made by the Debtors). *See* Debtors' Complaint against Dean Foods Co., Adversary Proceeding No. 04-54904, Debtors' Complaint against Dean Specialty Foods Group, Adversary Proceeding No. 04-51916, Debtors' Complaint against Morningstar Foods, Inc., Adversary Proceeding No. 04-51910. The RCT has been substituted as the proper party in all three proceedings.

[5] *See* PCT cross-motion response at 11-12, ¶¶ 21-22 (stating that the PCT "specifically alleges that the Reclamation Creditors are not parties to its [litigation] action).

[6] *See* Draft Reclamation Creditors Trust Agreement at 15, ¶ 4.6 (attached as Exhibit 12 to the Plan).

[7] *See* Plan at Art. V.H.1.

welcomed the Plan's assignment of claims and causes of action by and against Reclamation Creditors to the RCT (as successor to the OCRC).

6. Dean Foods, in the spirit of the consensual claims-resolution process adopted by the RCT, has voluntarily provided the RCT with documents related to its Reclamation Claims and regarding claims assigned by the Plan to the RCT, including documents pertaining to the claims brought by the PCT against Robinson (and in addition to documents regarding overpayment, preference and deduction claims). The parties and their respective counsel have also spent significant time working to reach a global resolution of claims between them. As a result of those joint efforts, Dean Foods anticipates that the RCT and it will be in a position to enter into a comprehensive settlement agreement by the end of this month, if not sooner.

### **PCT Litigation**

7. Based on the cross-motion, it appears that the PCT is disgruntled with the RCT's decision to adequately investigate and evaluate the merits of the claims that the PCT has brought against Robinson, as opposed to precipitously filing suit against Dean Foods on those claims. Not content with the Plan's negotiated terms, the PCT now seeks to recover against Dean Foods by bringing claims against Dean Foods' officer and employee, John Robinson. The PCT's motives in suing Robinson are transparent from its own allegations. In its Complaint, the PCT indicates that Robinson is (or was at the time in question) a "[S]enior Vice President of Dean Dairy Group, a division of Dean Foods Company."[8] The PCT further alleges:

- Robinson, who the PCT groups as one of the "Vendor Officers", committed the alleged wrongful acts "while acting *within* the course and scope of [his] authority."[9]

---

[8] Complaint at 6, ¶ 30. (A true and correct copy of the Complaint is attached as Exhibit "2" to the RCT motion).

[9] Complaint at 2, ¶ 2.

604987v1                                              -4-

A    158

- Robinson acted on "behalf" of Dean Foods in committing the alleged wrongful acts.[10]
- Robinson's alleged thoughts, motives and actions are all attributable to Dean Foods.[11]

8. The merits of the PCT's litigation claims are not before this Court. Nonetheless, Dean Foods disputes that any of its actions with respect to the Debtors, including the actions ascribed to Robinson and Dean Foods by the PCT in the Complaint, resulted in any harm to the Debtors or their creditors or that those alleged actions provide grounds for obtaining any judicial relief.

9. The PCT also makes certain incredible allegations or misleading statements in its cross-motion regarding the claims it has asserted against various Vendor Officers and their related employers (including, respectively, Robinson and Dean Foods) or generally about these bankruptcy cases. These claims are not germane to the issue before the Court involving claim ownership. Nevertheless, so that silence is not mistaken for admission or acquiescence, Dean Foods responds summarily to certain of these allegations or misleading statements:

- **SEC Consent Decree.** The SEC consent decree entered into by Dean Foods and Robinson states on its face that the stipulations are limited to SEC proceedings and the purpose of such stipulations is for settlement. Also, the SEC consent decree contains *no* admission by Dean Foods or Robinson of any complicity in Fleming's alleged misstatement of its financial statements.

- **Damages.** The PCT, while making combative and broad-brush allegations regarding the damages allegedly wrought by "non-innocent" Reclamation Creditors, has failed to cogently explain as how payments made by these vendors *to* the Debtors, regardless how such payments were reflected by the Debtors in their own financial statements, resulted in damages *to* the Debtors or its creditors.[12]

- **Concern for Innocent Trade Creditors.** The PCT's concern for "innocent" vendors is remarkable, seeing as those are the same vendors that have been

---

[10] Complaint at 2, ¶ 3.

[11] *See* Complaint at 29-30, ¶ 82-84.

[12] If anyone was damaged by the Dean Foods' payment of $2.5 million to the Debtors, it was Dean Foods.

subject to the thousands of preference suits brought by the PCT (estimated by the PCT in its recent status report as being approximately 3,200 in number).[13]

### Plan Construction

10. As previously noted, the issue of whether the PCT's claims have any merit is not before this Court. What is before this Court is whether the PCT can circumvent the clear terms and intent of the Plan to vest claims against Reclamation Creditors with the RCT.

11. The PCT alleges that the Plan is not ambiguous and that the Plan does not foreclose it from bringing suit against officers of Reclamation Creditors.[14] In particular, the PCT argues that it has standing to assert claims against "Vendor Officers" of Reclamation Creditors, even though these individuals are all asserted to have acted within the scope of their corporate authority.[15] The PCT admits, however, that its motivation in asserting that the "Vendor Officers" acted within the scope of their corporate authority was to "forestall any coverage defenses that might exist under applicable policies of insurance."[16]

12. The Plan provides as follows:

- The RCT Assets include all "Causes of Action" against Reclamation Creditors.[17]

- The term "Causes of Action" includes claims "whether direct, indirect, derivative or otherwise" against any person.[18]

---

[13] See First Status Report of the PCT, filed August 26, 2005 [Docket No. 11600].

[14] See PCT cross-motion at 7-9.

[15] See PCT cross-motion at 9-11.

[16] See PCT cross-motion at 12, ¶ 23.

[17] See Plan Art. V.H.2.

[18] See Plan at Art. I.B.36. The term "Cause of Action" is defined in its entirety as follows:

"Cause of Action" means, including but is not limited to, all Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to, all claims in any avoidance, recovery, subordination or other actions against Insiders and/or any

- The PCT Assets include certain assets of the Debtors, the Reorganized Debtors and Core-Mark Newco, but "do not include any RCT Assets."[19]

13. The PCT fails to address how the RCT can be vested with all Causes of Action against Reclamation Creditors, including "indirect" and "derivative" claims (as well as claims that would "otherwise" be against such creditors), while the PCT may still bring suit against officers of those same Reclamation Creditors for actions taken by the officers within the scope of their corporate authority.[20] To wit, the PCT never explains what form an "indirect" claim would take. The PCT acknowledges that bankruptcy plans are to be construed as contractual instruments, but fails to give the term "indirect" any meaning whatsoever. Thus, the PCT fails to adhere to a fundamental principal of contractual construction – that terms contained in a contractual instrument are intended to have real meaning.[21] The PCT's interpretation of the defined term "Cause of Action" would be limited to direct actions only. The definition of that term, however, is much broader and encompasses any claim where recovery is ultimately sought against a Reclamation Creditor.

14. The PCT has taken pains to allege that Robinson acted in his capacity as a Dean Foods' officer and that Robinson's knowledge, intent and conduct are all attributable to Dean

---

other Persons under the Bankruptcy Code, including sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553) of the Debtors, the Debtors in Possession and/or the Estates (including, but not limited to, those actions listed in this Plan, Exhibit A filed herewith and the Disclosure Statement that are or may be pending on the Effective Date or instituted by Core-Mark Newco, the Reorganized Debtors, the PCT or the RCT as applicable, after the Effective Date against any Person based on law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown.

[19] *See* Plan Art. V.G.3.

[20] *See*, generally, PCT cross-motion at 12-13.

[21] *See Boyette v. Algonquin Gas Transmission Co.*, 952 F. Supp. 192, 201 (S.D.N.Y. 1997) (holding that "it is a cardinal principal of contract construction that the document should be read to give effect to all its provisions and to render them consistent.") (citing, among other authority, the Restatement (Second) of Contracts §§ 202(5), 203(a) and Comment b)).

Foods. The PCT also expressly states that it seeks recovery from potential insurance policies obtained by Reclamation Creditors for the benefit of directors and officers. Thus, the PCT itself establishes that the claims asserted against Robinson are actually claims against Dean Foods, albeit indirectly asserted through one of its officers acting within the scope of his corporate authority. The PCT's own allegations demonstrate that its claims against Robinson are merely a vehicle to recover against Dean Foods.

15. The PCT's position that the claims it asserts against Robinson are not indirect claims against Dean Foods also proves plain illogical and unreasonable. If (as the PCT professes to believe) it owns those claims, while the RCT owns the same claims against Dean Foods itself, then Dean Foods becomes subject to having two different bankruptcy trusts (with distinct bodies of beneficiaries) seeking recovery against it on the same claims. Essentially, the PCT must argue that it was the intent of the parties who formulated and negotiated the Plan, through the artifice of clever drafting, to create an opportunity to obtain a double recovery against certain Reclamation Creditors, including Dean Foods.

16. Whether, absent the Plan and its provisions dividing assets between the RCT and the PCT, the PCT would have a direct claim against Robinson is immaterial. The claim asserted by the PCT against Robinson is of its very nature an indirect claim against Dean Foods. Under the Plan, those claims belong to the RCT and cannot be maintained by the PCT.

17. The PCT's position is untenable. And, accordingly, its view of the Plan cannot be the correct one. This Court should put an end to the PCT's cavalier view of the negotiated terms of the Plan and enjoin the PCT from continuing its indirect action against Dean Foods, through Robinson.

WHEREFORE, Dean Foods joins in the relief requested by the RCT in its motion and for any and all other relief to which it may be entitled.

Date: October 12, 2005

                                  THE BAYARD FIRM

By: _/s/ Eric M. Sutty_
     Jeffrey M. Schlerf (No. 3047)
     Eric M. Sutty (No. 4007)
     222 Delaware Avenue
     Wilmington, DE 19899
     Telephone: (302) 655-5000
     Facsimile: (302) 658-6395

                                  - and -

MUNSCH HARDT KOPF & HARR, P.C.
Mark H. Ralston, Esq. (Texas Bar No. 16489460)
4000 Fountain Place
1445 Ross Avenue
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4365

COUNSEL FOR DEAN FOODS COMPANY