### a.    Dean Foods Company

Dean is a dairy products manufacturer. Beginning in early 2002, Fleming and Dean began negotiating a supply agreement under which Dean would provide Fleming's retail operations with dairy products for three years. Throughout the negotiations, Fleming made clear that, to receive the supply agreement, Dean would make an up-front payment, which the parties ultimately agreed would be $2.5 million.

At the end of negotiations, however, Fleming demanded that Dean provide a side letter, dictated by Fleming, describing the payment as a rebate for past performance. Fleming knew the letter mischaracterized the payment's true purpose, but needed to recognize the payment immediately. Dean acquiesced to Fleming's demand, but did seek to protect its investment by requiring a penalty provision in the supply agreement that obligated Fleming to repay the $2.5 million if it breached.

Although Fleming had not earned the entire payment during the first quarter of 2002, Fleming used the side letter to justify recognizing the entire $2.5 million as an offset to expenses, which increased earnings in violation of GAAP.

### b.    Dexsi

In April 2002, Fleming again turned to Dexsi, demanding that it pay $4 million and provide a side letter describing the payment as reimbursement of "warehouse expenses" that Fleming purportedly had incurred on Dexsi's behalf during the quarter. Fleming knew this description was inaccurate. In return, Fleming allowed Dexsi to charge higher diverting prices to recoup its payment.

Fearing that it would be expelled from Fleming, Dexsi made the payment and signed the letter. Fleming improperly used this letter to justify recording the full $4 million as an offset to expenses, which improperly increased its earnings for the first quarter.

### c.    Kraft

In April 2002, Kraft and Fleming negotiated a $5.6 million extension of the no-divert agreement to year-end 2002. At Fleming's request, the Kraft employee responsible for the Fleming account signed a side letter describing the $5.6 million as payment of a "shortfall" under the Kraft PVA. Fleming knew that no such shortfall existed and that the $5.6 million was intended to extend the no-divert agreement. Although Fleming had not earned the entire amount, Fleming relied on the letter to justify improperly recording the entire payment as an offset to expenses, which increased earnings in the first quarter in violation of GAAP.

### d.    Excessive inventory purchases

In the first quarter of 2002, Fleming senior management concluded that Fleming was carrying too much inventory and directed that inventory levels be reduced as quickly and

7

efficiently as possible. Despite this directive, however, Fleming executed a series of large forward buys[7] of inventory during the quarter's final weeks to generate discounts or rebates that it could record immediately.[8] These purchases added more than $50 million of merchandise to Fleming's inventory balance, and generated rebates or discounts of $5.6 million. Although Fleming had not earned all of the rebates or discounts during the quarter, Fleming nonetheless recorded the entire $5.6 million as an offset to expenses in the first quarter of 2002. Fleming never disclosed to investors that it was generating earnings in the quarter through these large inventory purchases.

### e.    Fleming's first quarter financial results were misstated

Together, these improperly recorded transactions totaled $17.7 million and materially overstated Fleming's reported pre-tax and net earnings for the quarter, which were $41.2 million and $24.6 million, respectively.

### 3.    Second Quarter 2002

To meet earnings targets for the second quarter 2002, Fleming made additional forward buys of inventory (some of which was perishable and close to expiration), filling its warehouses with excessive inventory. These purchases approximated $110 million and generated approximately $8.1 million of rebates or discounts. Although Fleming had not earned all of the rebates or discounts during the quarter, Fleming nonetheless recorded the entire $8.1 million as an offset to expenses in the second quarter of 2002. Fleming also recognized $2.1 million in revenues from an intracompany transfer of aged inventory, and established a $900,000 reserve against it for a net increase in earnings of $1.2 million for the second quarter of 2002. These transactions, which totaled $9.3 million, overstated Fleming's reported second quarter 2002 pre-tax and net earnings (before extraordinary charge) of $15.4 million and $10.1 million, respectively.

### D.    Fleming also manipulated retail division same store sales

During 2001 and the first quarter of 2002, Fleming presented FRG as a growth vehicle for the future. Grocery industry analysts took up this theme, focusing in part on FRG's positive same store sales growth during this period, which is a key industry performance metric. Fleming reported same store sales in periodic filings with the Commission and in public earnings releases.

---

[7] A "forward" buy is an inventory purchase that exceeds the usual quantity the purchaser normally would make, generally to take advantage of special pricing offered by vendors. For example, if Fleming normally purchased a six-week supply of a given product, it would "forward" buy, hypothetically, a ten-week supply at the special pricing. Fleming also used the term "block" buy to describe these types of transactions.

[8] This approach was arguably permissible at the time, but is not permitted currently under EITF 02-16, which dictates that such discounts or rebates be recognized as the inventory is sold to customers, not at the time of purchase. This EITF was not effective when Fleming entered into these transactions.

Although there is no fixed industry standard, many retailers calculate same store sales by comparing a store's current period sales against its sales for the corresponding period in the prior year. Fleming followed this methodology through the end of 2000. From the first quarter of 2001 through the first quarter of 2002, however, Fleming began changing the methodology (sometimes quarter to quarter) to allow FRG to report positive same store sales growth. At different times, Fleming included in its calculations stores open less than a full reporting period; stores under remodel; stores operated by different owners; and sometimes compared different stores if they were located in close proximity to one another. Fleming never disclosed these periodic changes to its same store sales methodology. Instead, Fleming continued to compare the positive figures reported in 2001 with less favorable prior period figures calculated under different methodology.

Fleming also included in its calculations several financing transactions that should not have been treated as sales. In several transactions from April 2001 through April 2002, Fleming provided short-term financing to fund inventory acquisitions by an opportunity goods vendor.[9] Fleming executed documentation reflecting its "purchase" of the inventory from the vendor at one price and a simultaneous sale of the goods to the vendor's related company at a slightly higher price.[10] In these transactions, Fleming wired the "purchase" price to the vendor in return for a promissory note from the related company (sometimes guaranteed by the vendor) reflecting the "sale" price. The same person signed all documents on behalf of the vendor and the related company. Fleming had no role in locating either the goods or the vendor's customer.

Fleming used these transactions to improve its same store sales picture. For example, Fleming reported same store sales growth of 0.7% for the fourth quarter of 2001. Fleming was able to achieve this growth, however, only by recording "sales" of more than $17 million from two of the sales transactions. But for these transactions, Fleming would have reported same store sales *decline* of 3.0%.

Under GAAP, Fleming should not have recorded these transactions as sales. Instead, it should only have recorded as interest income or other revenue the net difference between the promissory note and the amount Fleming had wired the vendor. *See* EITF 99-19, *Reporting Revenue Gross as a Principal versus Net as an Agent*. Had Fleming excluded these transactions from its calculations, same store sales would have been materially worse throughout 2001 and the first quarter of 2002.

In the second quarter of 2002, Fleming returned to its original same store sales methodology and same store sales dropped steeply from the prior quarter.

---

[9] This vendor typically bought liquidation merchandise at deep discounts, which it then sold to its stable of customers.

[10] The documentation for some of these transactions was poor; for example, some of the transaction documents reflected that Fleming bought from and sold to the exact same entity at the exact same time. Fleming still recorded these transactions as sales.

**E.    Fleming includes these misstatements in Commission filings and public earnings releases**

Fleming included the misstatements and omissions described above in its periodic filings on Forms 10-K and 10-Q. These filings were incorporated into multiple registration statements on Forms S-3, S-8 and S-4 Fleming filed with the Commission during 2002. Fleming also included these misstatements and omissions in public earnings releases covering the relevant periods.

**F.    Cooperation**

In determining to accept the Offer, the Commission considered remedial acts promptly undertaken by Fleming and cooperation afforded the Commission staff.

**G.    Conclusion**

As a result of the foregoing, the Commission finds that Fleming violated Section 17(a) of the Securities Act and Sections 10(b), 13(a), 13(b)(2) and 13(b)(5) of the Exchange Act and Rules 10b-5, 12b-20, 13a-1, 13a-13 and 13b2-1 thereunder.

**IV.**

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in the Offer.

Accordingly, IT IS HEREBY ORDERED, pursuant to Section 8A of the Securities Act and Section 21C of the Exchange Act, that Respondent Fleming cease and desist from committing or causing any violations and any future violations of Section 17(a) of the Securities Act and Sections 10(b), 13(a), 13(b)(2) and 13(b)(5) of the Exchange Act and Rules 10b-5, 12b-20, 13a-1, 13a-13 and 13b2-1 thereunder.

By the Commission.

Jonathan G. Katz
Secretary

10

# Exhibit D

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No. 8487 / September 14, 2004

SECURITIES EXCHANGE ACT OF 1934
Release No. 50370 / September 14, 2004

ACCOUNTING AND AUDITING ENFORCEMENT
Release No. 2102 / September 14, 2004

ADMINISTRATIVE PROCEEDING
File No. 3-11658

|  |  |
|---|---|
| In the Matter of<br><br>Bruce Keith Jensen,<br><br>Respondent. | ORDER INSTITUTING PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933 AND SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS AND IMPOSING A CEASE-AND-DESIST ORDER |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate to institute cease-and-desist proceedings pursuant to Section 8A of the Securities Act of 1933 (the "Securities Act") and Section 21C of the Securities Exchange Act of 1934 (the "Exchange Act") against Bruce Keith Jensen ("Jensen" or "Respondent").

II.

In anticipation of the institution of these proceedings, Jensen has submitted an Offer of Settlement ("Offer") that the Commission has determined to accept.[1] Solely for the purpose of these proceedings or any other proceeding brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings contained herein, except that Jensen admits the Commission's jurisdiction over him and over the subject matter of these proceedings, Jensen consents to the entry of this Order Instituting Proceedings

---

[1] Simultaneously with this proceeding, the Commission has filed the following settled actions: In re Fleming Companies, Inc., Exch. Act Rel. No.34-50365; In re Dean Foods Company and John D. Robinson, Exch. Act Rel. No. 34-50368; In re Kemps LLC f/k/a Marigold Foods, LLC, James Green and Christopher Thorpe, Exch. Act Rel. No. 34-50369; In re Digital Exchange Systems, Inc., Rosario Coniglio and Steven Schmidt, Exch. Act Rel. No. 34-50366; In re John K. Adams, Exch. Act Rel. No. 34-50367.


EXHIBIT
D

Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings and Imposing a Cease-and-Desist Order.

### III.

On the basis of this Order and Respondent's Offer, the Commission finds that:[2]

A.    **Respondent and Fleming Companies, Inc. ("Fleming")**

   1.    **Respondent**

Bruce Keith Jensen of Valrico, Florida, was Director of National Accounts at Frito Lay, Inc. ("Frito Lay") during the relevant periods.  During this time, Fleming was one of Frito Lay's largest customers and Jensen was principally responsible for the Fleming account.

   2.    **Fleming**

Fleming is an Oklahoma corporation headquartered in Lewisville, Texas that currently is in Chapter 11 bankruptcy.  Before its April 2003 bankruptcy filing, Fleming's stock traded on the New York Stock Exchange.  At one time, Fleming was the nation's largest grocery wholesaler, with about 50 major distribution centers across the country, and a sizable retail grocery operator as well, with more than 100 stores throughout the Midwest and West. Fleming's 2001 and 2002 reported revenues were approximately $15.6 billion and $15.5 billion, respectively.  But its earnings relatively were much smaller, with only a $23.3 million profit and an $84 million loss, respectively, in those years.

B.    **Facts**

   1.    **Fleming used fraudulent "initiatives" to meet earnings expectations.**

During 2001 and the first half of 2002, Fleming improperly executed a series of transactions, called "initiatives," to fabricate earnings to "bridge the gap" between actual operating results and Wall Street expectations.  In these initiatives, Fleming fraudulently structured otherwise ordinary transactions in forms that, on paper, justified and maximized an immediate increase in earnings. One type of initiative that Fleming used frequently during this period was accelerating recognition of up-front payments received under forward-looking vendor agreements.  On multiple occasions, Fleming persuaded vendors to provide side letters that described up-front payments – which Fleming and the vendors plainly intended to secure future rights and services – as compensation for some past event, such as a rebate or expense item. Fleming then used these letters to justify recognizing the entire up-front payment as an offset to expenses immediately, rather than over time as generally accepted accounting principles ("GAAP") required.  These illicit bookings enabled Fleming to meet securities analysts' earnings expectations.

---

[2] The findings herein are made pursuant to Respondent's Offer and are not binding on any other person or entity in these or any other proceedings.

2

2.    **Jensen caused Fleming's inflation of earnings in violation of GAAP.**

In December 2001, Fleming and Frito Lay negotiated an agreement that would pay Fleming for achieving certain sales targets during 2002. Jensen was principally responsible for negotiating the agreement for Frito Lay. The agreement included a $400,000 incentive for Fleming to set up certain new product store displays by February 2002.

As the 2001 fiscal year was ending, Fleming sought ways to meet an impending earnings shortfall. Fleming wanted to recognize the $400,000 incentive immediately to help meet its numbers. Fleming therefore asked Jensen to execute a side letter mischaracterizing the $400,000 payment as "non-refundable" compensation. Jensen knew that Fleming had not earned the $400,000 during 2001 and, in fact, never earned it. Jensen nevertheless signed the Fleming-prepared letter, which Fleming used to justify recording the entire $400,000 million as an offset to expenses in the fourth quarter of 2001. This overstated Fleming's earnings for the quarter by approximately 3%. Fleming included these misstated earnings in its 2001 Form 10-K, and in publicly disseminated press releases. Fleming further incorporated the misstated Form 10-K into registration statements on Forms S-3, S-8 and S-4 filed during the summer of 2002.

C.    **Conclusion**

As a result of the foregoing, the Commission finds that Jensen caused Fleming's violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act and Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1 and 13b2-1 thereunder.

**IV.**

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in the Offer.[3]

Accordingly, IT IS HEREBY ORDERED, pursuant to Section 8A of the Securities Act and Section 21C of the Exchange Act, that Respondent Jensen cease and desist from committing or causing any violations and any future violations of Section 17(a)(2) and 17(a)(3) of the Securities Act, and causing any violations and any future violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1 and 13b2-1 thereunder.

By the Commission.

Jonathan G. Katz
Secretary

---

[3] Jensen has agreed to pay a $25,000 civil penalty in connection with a parallel civil action.

3

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No. 8484 / September 14, 2004

SECURITIES EXCHANGE ACT OF 1934
Release No. 50367 / September 14, 2004

ACCOUNTING AND AUDITING ENFORCEMENT
Release No. 2098 / September 14, 2004

ADMINISTRATIVE PROCEEDING
File No. 3-11655

| | |
|---|---|
| In the Matter of :<br><br>John K. Adams, :<br><br>Respondent. : | ORDER INSTITUTING PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933 AND SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS AND IMPOSING A CEASE-AND-DESIST ORDER |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate to institute cease-and-desist proceedings pursuant to Section 8A of the Securities Act of 1933 (the "Securities Act") and Section 21C of the Securities Exchange Act of 1934 (the "Exchange Act") against John K. Adams ("Adams" or "Respondent").

II.

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement ("Offer") that the Commission has determined to accept.[1] Solely for the purpose of these proceedings or any other proceeding brought by or on behalf of the Commission, or to

---

[1] Simultaneously with this proceeding, the Commission has filed the following settled actions: In re Fleming Companies, Inc., Exch. Act Rel. No. 34-50365; In re Dean Foods Company and John D. Robinson, Exch. Act Rel. No. 34-50368; In re Kemps LLC f/k/a Marigold Foods, LLC, James Green and Christopher Thorpe, Exch. Act Rel. No. 34-50369; In re Digital Exchange Systems, Inc., Rosario Coniglio and Steven Schmidt, Exch. Act Rel. No. 34-50366; and In re Bruce Keith Jensen, Exch. Act Rel. No. 34-50370.

which the Commission is a party, and without admitting or denying the findings contained herein, except that Respondent admits the Commission's jurisdiction over him and over the subject matter of these proceedings, Respondent consents to the entry of this Order Instituting Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings and Imposing a Cease-and-Desist Order.

### III.

On the basis of this Order and Respondent's Offer, the Commission finds that:[2]

A.   **Respondent and Fleming Companies, Inc. ("Fleming")**

    1.   **Respondent**

John K. Adams of Dallas, Texas, was a Region Manager at Kraft Foods, Inc. ("Kraft") during the relevant periods. During this time, Fleming was among Kraft's top ten customers and Adams was principally responsible for the Fleming account.

    2.   **Fleming**

Fleming is an Oklahoma corporation headquartered in Lewisville, Texas that currently is in Chapter 11 bankruptcy. Before its April 2003 bankruptcy filing, Fleming's stock traded on the New York Stock Exchange. At one time, Fleming was the nation's largest grocery wholesaler, with about 50 major distribution centers across the country, and a sizable retail grocery operator as well, with more than 100 stores throughout the Midwest and West. Fleming's 2001 and 2002 reported revenues were approximately $15.6 billion and $15.5 billion, respectively. But its earnings relatively were much smaller, with only a $23.3 million profit and an $84 million loss, respectively, in those years.

B.   **Facts**

    1.   **Fleming used fraudulent "initiatives" to meet earnings expectations.**

During 2001 and the first half of 2002, Fleming improperly executed a series of transactions, called "initiatives," to fabricate earnings to "bridge the gap" between actual operating results and Wall Street expectations. In these initiatives, Fleming fraudulently structured otherwise ordinary transactions in forms that, on paper, justified and maximized an immediate increase in earnings. One type of initiative that Fleming used frequently during this period was accelerating recognition of up-front payments received under forward-looking vendor agreements. On multiple occasions, Fleming persuaded vendors to provide side letters that described up-front payments – which Fleming and the vendors plainly intended to secure future rights and services – as compensation for some past event, such as a rebate or expense item. Fleming then used these letters to justify recognizing the entire up-front payment as an offset to

---

[2] The findings herein are made pursuant to Respondent's Offer and are not binding on any other person or entity in these or any other proceedings.

A   250

expenses immediately, rather than over time as generally accepted accounting principles ("GAAP") required. These illicit bookings enabled Fleming to meet securities analysts' earnings expectations.

**2.    Adams caused Fleming's inflation of earnings in violation of GAAP.**

During 2001, Fleming and Kraft executed two agreements pertinent to this case. First, in April 2001, the parties entered into a one-year "no-divert" agreement, under which Kraft was to pay $7.5 million to Fleming in exchange for Fleming's promise to waive certain promotional fees and to refrain from "diverting" Kraft products.[3] Then, in June 2001, the parties agreed to a one-year preferred vendor agreement (the "Kraft PVA"), under which Kraft was to pay Fleming $10.7 million in exchange for Fleming's commitment to eliminate several dysfunctional practices and fees and to cooperate in the resolution of certain disputed deductions made by Fleming. Although these deductions generally declined following this agreement, they nevertheless continued, and by early 2002, amounted to at least $4 million.

**a.    The December 2001 side letter**

As the 2001 fiscal year was ending, Fleming sought ways to meet an impending earnings shortfall. In December 2001, Fleming contacted Adams and requested that Kraft accelerate $1.65 million payable under the no-divert agreement. Although these funds were not due until the first quarter of 2002 under the terms of the no-divert agreement, and were subject to other criteria as well, such as that they would "pass through" to Fleming's retail customers to help promote Kraft products, Kraft agreed to make the requested payment in December 2001. At Fleming's request, Adams also signed a Fleming-prepared letter which represented that Kraft was willing to pay Fleming $1.65 million to "offset the administrative costs associated with" the no-divert agreement. Neither the no-divert agreement nor Fleming's records, however, indicated that any "administrative costs" were owed. Instead, Fleming desired the letter solely to justify recording the entire $1.65 million as an offset to expenses in the fourth quarter of 2001, which overstated Fleming's earnings for the quarter by approximately 12%. Fleming included these misstated earnings in its 2001 Form 10-K, and in publicly disseminated press releases.

In February 2002, Adams signed and returned an audit confirmation letter stating that Fleming was entitled to $1,650,000 to offset the administrative costs incurred in the period April 2001 to December 2001.

---

[3] "Diverting" occurs when a wholesaler overbuys from a vendor at a special discount, and then sells the excess product to buyers other than its normal customers at a higher price. Manufacturers dislike diverting for a number of reasons, including how it distorts the calculation of funding ordinarily allocated to retailers to promote the manufacturer's goods.

3

**b.     The April 2002 side letter**

In early 2002, Adams began negotiations to extend the no-divert agreement, which was to expire in April 2002.  In mid-April 2002, just before Fleming's fiscal first quarter ended, Kraft agreed to pay $5.6 million to extend the no-divert agreement to December 31, 2002.

Fleming, however, needed to recognize the $5.6 million payment immediately to help meet analysts' first quarter earnings targets.  Fleming therefore asked Adams to sign a Fleming-dictated letter describing the $5.6 million as payment of a purported "shortfall" under the Kraft PVA.  Although no shortfall existed, Adams signed the letter.  Fleming then used the letter to justify booking the entire $5.6 million as an offset to expenses in the first quarter of 2002, which provided approximately $.06 of the company's reported $.52 per share quarterly earnings.  Fleming included these figures in its Form 10-Q for the first fiscal quarter ended April 20, 2002, and in publicly disseminated press releases.  Fleming further incorporated the first quarter Form 10-Q into registration statements on Forms S-3, S-8 and S-4 filed during the summer of 2002.

Fleming's recognition of the entire $5.6 million as an offset to expenses in its first quarter 2002 financial statements violated GAAP.  The payment was express consideration for extending the no-divert agreement, and Kraft would not have made the payment but for that extension.  Fleming therefore was required to recognize the payment ratably over the extension's term. *See* Statement of Financial Accounting Concepts No. 5, ¶¶ 83-84; Staff Accounting Bulletin No. 101, *Revenue Recognition in Financial Statements*, Question 5.

**C.     Conclusion**

As a result of the foregoing, the Commission finds that Adams caused Fleming's violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act and Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1, 13a-13, and 13b2-1 thereunder.

**IV.**

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in the Offer.[4]

Accordingly, IT IS HEREBY ORDERED, pursuant to Section 8A of the Securities Act and Section 21C of the Exchange Act, that Respondent Adams cease and desist from committing or causing any violations and any future violations of Section 17(a)(2) and 17(a)(3) of the Securities Act, and causing any violations and any future violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1, 13a-13 and 13b2-1 thereunder.

By the Commission.

Jonathan G. Katz
Secretary

---

[4] Adams has agreed to pay a $25,000 civil penalty in connection with a parallel civil action.

4

# Exhibit E

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No.   8486 / September 14, 2004

SECURITIES EXCHANGE ACT OF 1934
Release No. 50368 / September 14, 2004

ACCOUNTING AND AUDITING ENFORCEMENT
Release No.  2100 / September 14, 2004

ADMINISTRATIVE PROCEEDING
File No.  3-11657

| | |
|---|---|
| In the Matter of         : <br><br> Dean Foods Company and    : <br> John D. Robinson,       : <br><br> Respondents.       : | ORDER INSTITUTING<br>PROCEEDINGS PURSUANT TO<br>SECTION 8A OF THE SECURITIES<br>ACT OF 1933 AND SECTION 21C OF<br>THE SECURITIES EXCHANGE ACT<br>OF 1934, MAKING FINDINGS AND<br>IMPOSING A CEASE-AND-DESIST<br>ORDER |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate to institute cease-and-desist proceedings pursuant to Section 8A of the Securities Act of 1933 (the "Securities Act") and Section 21C of the Securities Exchange Act of 1934 (the "Exchange Act") against Dean Foods Company ("Dean") and John D. Robinson ("Robinson") (collectively, "Respondents").

II.

In anticipation of the institution of these proceedings, Respondents have submitted Offers of Settlement ("Offers") that the Commission has determined to accept.[1]  Solely for the purpose of these proceedings or any other proceeding brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings contained herein, except that Respondents admit the Commission's jurisdiction over them and over the

---

[1]  Simultaneously with this proceeding, the Commission has filed the following settled actions:  In re Fleming Companies, Inc., Exch. Act Rel. No. 34-50365; In re Bruce Keith Jensen, Exch. Act Rel. No. 34-50370; In re Kemps LLC f/k/a Marigold Foods, LLC, James Green and Christopher Thorpe, Exch. Act Rel. No. 34-50369; In re Digital Exchange Systems, Inc., Rosario Coniglio and Steven Schmidt, Exch. Act Rel. No. 34-50366; In re John K. Adams, Exch. Act Rel. No. 34-50367.



**EXHIBIT**

E

subject matter of these proceedings, Respondents consent to the entry of this Order Instituting Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings and Imposing a Cease-and-Desist Order.

### III.

On the basis of this Order and Respondents' Offers, the Commission finds that:[2]

**A.    Respondents and Fleming Companies, Inc. ("Fleming")**

####    1.    Respondents

Dean, a Delaware corporation headquartered in Dallas, Texas, is a leading processor and distributor of milk and other dairy products. During the relevant times, John Robinson of Dallas, Texas, was Senior Vice President of Sales and Marketing for the Dean Dairy Group, a business unit of Dean. During the relevant periods, Fleming was a sizable customer of Dean's dairy operations.

####    2.    Fleming

Fleming is an Oklahoma corporation headquartered in Lewisville, Texas that currently is in Chapter 11 bankruptcy. Before its April 2003 bankruptcy filing, Fleming's stock traded on the New York Stock Exchange. At one time, Fleming was the nation's largest grocery wholesaler, with about 50 major distribution centers across the country, and a sizable retail grocery operator as well, with more than 100 stores throughout the Midwest and West. Fleming's 2001 and 2002 reported revenues were approximately $15.6 billion and $15.5 billion, respectively. But its earnings relatively were much smaller, with only a $23.3 million profit and an $84 million loss, respectively, in those years.

**B.    Facts**

####    1.    Fleming used fraudulent "initiatives" to meet earnings expectations.

During 2001 and the first half of 2002, Fleming improperly executed a series of transactions, called "initiatives," to fabricate earnings to "bridge the gap" between actual operating results and Wall Street expectations. In these initiatives, Fleming fraudulently structured otherwise ordinary transactions in forms that, on paper, justified and maximized an immediate increase in earnings. One type of initiative that Fleming used frequently during this period was accelerating recognition of up-front payments received under forward-looking vendor agreements. On multiple occasions, Fleming persuaded vendors to provide side letters that described up-front payments – which Fleming and the vendors plainly intended to secure future rights and services – as compensation for some past event, such as a rebate or expense item. Fleming then used these letters to justify recognizing the entire up-front payment as an offset to

---

[2] The findings herein are made pursuant to Respondents' Offers and are not binding on any other person or entity in these or any other proceedings.

expenses immediately, rather than over time as generally accepted accounting principles ("GAAP") required. These illicit bookings enabled Fleming to meet securities analysts' earnings expectations.

### 2. Dean and Robinson were a cause of Fleming's inflated earnings in violation of GAAP.

In early 2002, Fleming and Dean began negotiating a supply agreement under which Dean would provide Fleming's retail operations with fluid milk for three years. Robinson was principally responsible for negotiating the supply agreement on Dean's behalf. Throughout the negotiations, Fleming had made it clear that, to receive the supply agreement, Dean would make an "up-front" payment in the $2 million range. An initial draft of the supply agreement required Dean to pay Fleming up-front dollars in return for supply rights. Ultimately, the parties agreed that the amount of the up-front payment would be $2.5 million.

As the negotiations were concluding, however, Fleming demanded that the payment provision be removed from the supply agreement and supplied Dean with a form of letter describing the payment as a "rebate" for "past performance." While rebates for past performance are not uncommon in the industry, Fleming knew it had not earned any such rebate in this instance and, up to that point in the negotiations, the up-front payment was understood to be consideration for the future business being negotiated. Thus, Fleming knew that the letter mischaracterized the payment's true purpose, but needed to recognize the payment immediately to help meet an impending earnings shortfall. At the time of negotiations, Fleming had been a sizable customer of Dean's dairy operations, but Dean knew it had no existing obligation to pay Fleming any such rebate. Indeed, Dean knew that it was paying the $2.5 million to secure the supply agreement. Dean acquiesced to Fleming's demand because it feared that Fleming would choose a different dairy supplier. Dean did seek to protect its investment, however, by requiring a penalty provision in the supply agreement that obligated Fleming to repay a prorated portion of the $2.5 million if Fleming breached its contractual obligations.

On or about March 26, 2002, Dean provided Fleming the requested side letter and up-front payment, but only after Fleming signed the supply agreement. Fleming used the side letter to justify recognizing the entire $2.5 million as an offset to expenses in the first quarter of 2002, which accounted for approximately $.03 of the $.52 per share Fleming reported as earnings for the quarter.

Fleming's recognition of the entire $2.5 million payment as an offset to expenses in the first quarter 2002 violated GAAP. Both parties understood that the payment was an inducement to the supply agreement; that is, Dean would not have made the payment but for receiving the supply agreement and Fleming would not have awarded the supply agreement absent the payment and side letter. This understanding is consistent with the express penalty provision in the agreement, which was intended to require Fleming to repay the $2.5 million on a prorated basis if it breached the agreement. Fleming therefore was required to recognize the up-front payment ratably over the agreement's term. *See* Statement of Financial Accounting Concepts No. 5, ¶¶ 83-84; Staff Accounting Bulletin No. 101, *Revenue Recognition in Financial Statements*, Question 5.

3

Fleming's recognition of the entire up-front payment as an offset to expenses in the first quarter of 2002 materially misstated Fleming's earnings for the quarter. Fleming included these misstated earnings in its Form 10-Q for the first fiscal quarter ended April 20, 2002, and in publicly disseminated press releases. Fleming further incorporated the misstated first quarter Form 10-Q into registration statements on Forms S-3, S-8 and S-4 filed during the summer of 2002.

## C.    Conclusion

As a result of the foregoing, the Commission finds that Dean and Robinson were a cause of Fleming's violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act and Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-13 and 13b2-1 thereunder.

### IV.

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in the Offers.[3]

Accordingly, IT IS HEREBY ORDERED, pursuant to Section 8A of the Securities Act and Section 21C of the Exchange Act, that Respondent Dean cease and desist from committing or causing any violations and any future violations of Section 17(a)(2) and 17(a)(3) of the Securities Act and Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-13 and 13b2-1 thereunder, and that Respondent Robinson cease and desist from committing or causing any violations and any future violations of Section 17(a)(2) and 17(a)(3) of the Securities Act, and causing any violations and any future violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-13 and 13b2-1 thereunder,.

By the Commission.

Jonathan G. Katz
Secretary

---

[3] Dean has agreed to pay a $400,000 civil penalty and Robinson has agreed to pay a $50,000 civil penalty, in connection with a parallel civil action.

4

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No. 8483 / September 14, 2004

SECURITIES EXCHANGE ACT OF 1934
Release No. 50366 / September 14, 2004

ACCOUNTING AND AUDITING ENFORCEMENT
Release No. 2099 / September 14, 2004

ADMINISTRATIVE PROCEEDING
File No. 3-11654

| | |
|---|---|
| In the Matter of | ORDER INSTITUTING PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933 AND SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS AND IMPOSING A CEASE-AND-DESIST ORDER |
| Digital Exchange Systems, Inc., Rosario Coniglio and Steven Schmidt, | |
| Respondents. | |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate to institute cease-and-desist proceedings pursuant to Section 8A of the Securities Act of 1933 (the "Securities Act") and Section 21C of the Securities Exchange Act of 1934 (the "Exchange Act") against Digital Exchange Systems, Inc. ("Dexsi"), Rosario Coniglio ("Coniglio") and Steven Schmidt ("Schmidt") (collectively, "Respondents").

## II.

In anticipation of the institution of these proceedings, Respondents have submitted an Offer of Settlement ("Offer") that the Commission has determined to accept.[1] Solely for the purpose of these proceedings or any other proceeding brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings contained herein, except that Respondents admit the Commission's jurisdiction over them and over the subject matter of these proceedings, Respondents consent to the entry of this Order Instituting Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings and Imposing a Cease-and-Desist Order.

## III.

On the basis of this Order and Respondents' Offer, the Commission finds that:[2]

### A.    Respondents and Fleming Companies, Inc. ("Fleming")

#### 1.    Respondents

Dexsi is a privately held Delaware corporation based in Tampa, Florida. Rosario Coniglio, age 47, of North Caldwell, New Jersey, is Dexsi's majority owner. He is not a Dexsi officer or employee but participates in the company's high-level business decisions. Steven Schmidt, age 35, of Tampa, Florida, is Dexsi's President and one of its founders.

Dexsi is what is known in the grocery industry as a "diverter." Diverters scour the market for special deals, typically buying from other wholesale or retail companies, or from inventory liquidators, who have too much inventory of a given product and sell the excess at deep discounts to the manufacturer's list price. Dexsi buys the inventory at the discount and then sells to its customer (in this case, Fleming) with a small markup, which is still lower than list price. Dexsi's customer thereby lowers its cost of goods sold, while Dexsi makes money on the markup.

#### 2.    Fleming

Fleming is an Oklahoma corporation headquartered in Lewisville, Texas that currently is in Chapter 11 bankruptcy. Before its April 2003 bankruptcy filing, Fleming's stock traded on the New York Stock Exchange. At one time, Fleming was the nation's largest grocery wholesaler, with about 50 major distribution centers across the country, and a sizable retail grocery operator as

---

[1] Simultaneously with this proceeding, the Commission has filed the following settled actions: In re Fleming Companies, Inc., Exch. Act Rel. No. 34-50365; In re Dean Foods Company and John D. Robinson, Exch. Act Rel. No. 34-50368; In re Kemps LLC f/k/a Marigold Foods, LLC, James Green and Christopher Thorpe, Exch. Act Rel. No. 34-50369; In re Bruce Keith Jensen, Exch. Act Rel. No. 34-50370; and In re John K. Adams, Exch. Act Rel. No. 34-50367.

[2] The findings herein are made pursuant to Respondents' Offer and are not binding on any other person or entity in these or any other proceedings.

2

A    259

well, with more than 100 stores throughout the Midwest and West. Fleming's 2001 and 2002 reported revenues were approximately $15.6 billion and $15.5 billion, respectively. But its earnings relatively were much smaller, with only a $23.3 million profit and an $84 million loss, respectively, in those years.

**B.    Facts**

**1.    Fleming uses fraudulent "initiatives" to meet earnings expectations.**

During 2001 and the first half of 2002, Fleming improperly executed a series of transactions, called "initiatives," to fabricate earnings to "bridge the gap" between actual operating results and Wall Street expectations. In these initiatives, Fleming fraudulently structured otherwise ordinary transactions in forms that, on paper, justified and maximized an immediate increase in earnings. One type of initiative that Fleming used frequently during this period was accelerating recognition of up-front payments received under forward-looking vendor agreements. On multiple occasions, Fleming persuaded vendors to provide side letters that described up-front payments – which Fleming and the vendors plainly intended to secure future rights and services – as compensation for some past event, such as a rebate or expense item. Fleming then used these letters to justify recognizing the entire up-front payment as an offset to expenses immediately, rather than over time as generally accepted accounting principles ("GAAP") required. These illicit bookings enabled Fleming to meet securities analysts' earnings expectations. Respondents provided Fleming two such side letters, one in the fourth quarter of 2001 and a second in the first quarter of 2002.

**2.    Dexsi mischaracterizes an up-front payment at Fleming's request.**

In late 2001, Fleming hired Dexsi to handle part of its diverting business. Fleming was, by far, Dexsi's biggest customer. Accordingly, Dexsi expended significant capital ramping up to handle the Fleming business, such as by purchasing equipment and hiring employees to work on-site at Fleming's headquarters.

In December 2001, Fleming realized that its earnings would fall short of analysts' expectations. To fill some of that shortfall, Fleming turned to Dexsi, demanding a $2 million payment and a side letter falsely attributing the payment to past performance. Fleming insinuated that, if Dexsi refused, it would terminate their relationship. Knowing that the letter Fleming wanted was false, but recognizing their precarious position, Coniglio and Schmidt acquiesced to Fleming's demands. In return, however, they secured a separate agreement from Fleming allowing Dexsi to recoup the $2 million by charging Fleming a higher-than-normal price on diverting purchases.[3] This second agreement was never shown to Fleming's internal accountants or external auditor. The parties kept a running tab of Dexsi's recovery of the $2 million, which Dexsi did not

---

[3] To illustrate, if Fleming wanted to purchase a product with a list cost of $1 per unit, Dexsi normally would sell that product to Fleming for, hypothetically, $.90. Under their secret agreement, however, Fleming allowed Dexsi to charge $1 for that product, with the additional $.10 per unit credited against the $2 million. This mechanism remained in place until Dexsi recovered the entire $2 million.

fully recoup until February 2002. The $2 million overstated Fleming's earnings for the fourth quarter by approximately 15%. Fleming included these misstated earnings in its 2001 Form 10-K, and in publicly disseminated press releases.

### 3. Dexsi provides Fleming's auditor with a misleading confirmation letter.

In February 2002, Fleming's external auditor sent Dexsi a letter requesting confirmation that "Fleming earned a $2,000,000 rebate for purchases by Fleming from Dexsi in 2001. This rebate is not connected to any future commitments made by Fleming and is not refundable." Although he knew the payment was in fact an advance against future Fleming purchases and had not been earned in 2001, Schmidt signed the confirmation letter.

### 4. Dexsi provides Fleming a second misleading side letter.

In April 2002, Fleming again demanded Dexsi's help in filling its earnings shortfall for the fiscal first quarter.[4] This time, Fleming demanded that Dexsi pay $4 million. As before, Fleming insisted that Dexsi provide a side letter describing the payment as reimbursement of "warehouse expenses" that Dexsi purportedly had incurred during the quarter. In return, Fleming allowed Dexsi to charge higher diverting prices to recoup its payment.

Dexsi was loath to pay such a large amount, and knew that it owed Fleming no warehouse expenses, but still feared that refusal would cost it the Fleming business. Therefore, on or about April 10, 2002, Dexsi made the payment and signed the false "warehouse expense" letter. Dexsi immediately began charging Fleming the agreed-upon higher price on diverting purchases, and the parties again tracked Dexsi's recovery of its payment. Unlike the December payment, however, Dexsi does not appear to have fully recouped the $4 million because Fleming stopped all diverting in the summer of 2002.

Fleming relied on Dexsi's letter to justify recording the $4 million as an offset to expenses, which equaled nearly 10% of the earnings Fleming reported for the first quarter. Indeed, Fleming's recognition of the entire $4 million violated GAAP. Both parties understood the payment was an advance payment on future diverting purchases by Fleming. Fleming therefore was required to recognize the payment ratably as Fleming made the diverting purchases. *See* Statement of Financial Accounting Concepts No. 5, ¶¶ 83-84; Staff Accounting Bulletin No. 101, *Revenue Recognition in Financial Statements*, Question 5. Fleming included these misleading figures in its Form 10-Q for the first fiscal quarter ended April 20, 2002, and in publicly disseminated press releases. Fleming further incorporated the first quarter Form 10-Q into registration statements on Forms S-3, S-8, and S-4 filed during the summer of 2002.

---

[4] Fleming operated on a retail calendar with a fiscal first quarter consisting of four four-week periods, followed by three fiscal quarters consisting of three four-week periods each. Fleming's 2002 first fiscal quarter ended on April 20, 2002.

4

**C.    Conclusion**

As a result of the foregoing, the Commission finds:

(1)    Dexsi caused Fleming's violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act and Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1, 13a-13 and 13b2-1 thereunder;

(2)    Rosario Coniglio caused Fleming's violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act and Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1, 13a-13 and 13b2-1 thereunder; and

(3)    Steven Schmidt caused Fleming's violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act and Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1, 13a-13 and 13b2-1 thereunder.

## IV.

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in the Offer.[5]

Accordingly, IT IS HEREBY ORDERED, pursuant to Section 8A of the Securities Act and Section 21C of the Exchange Act, that Respondents Dexsi, Coniglio and Schmidt cease and desist from committing or causing any violations and any future violations of Section 17(a)(2) and 17(a)(3) of the Securities Act, and causing any violations and any future violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1, 13a-13 and 13b2-1 thereunder.

By the Commission.

Jonathan G. Katz
Secretary

---

[5] Dexsi has agreed to pay a $100,000 civil penalty, and Coniglio and Schmidt each have agreed to pay $75,000 civil penalties, in connection with a parallel civil action.

5

A    262

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No. 8485 / September 14, 2004

SECURITIES EXCHANGE ACT OF 1934
Release No. 50369 / September 14, 2004

ACCOUNTING AND AUDITING ENFORCEMENT
Release No. 2101 / September 14, 2004

ADMINISTRATIVE PROCEEDING
File No. 3-11656

| | |
|---|---|
| In the Matter of : <br> : <br> Kemps LLC, f/k/a Marigold Foods, : <br> LLC, James Green and : <br> Christopher Thorpe, : <br> : <br> Respondents. : | ORDER INSTITUTING PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933 AND SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS AND IMPOSING A CEASE-AND-DESIST ORDER |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate to institute cease-and-desist proceedings pursuant to Section 8A of the Securities Act of 1933 (the "Securities Act") and Section 21C of the Securities Exchange Act of 1934 (the "Exchange Act") against Kemps LLC, f/k/a Marigold Foods, LLC ("Marigold"), James Green ("Green") and Christopher Thorpe ("Thorpe") (collectively "Respondents").

II.

In anticipation of the institution of these proceedings, Respondents have submitted an Offer of Settlement ("Offer") that the Commission has determined to accept.[1] Solely for the

---

[1] Simultaneously with this proceeding, the Commission has filed the following settled actions: In re Fleming Companies, Inc., Exch. Act Rel. No. 34-50365; In re Dean Foods Company and John D. Robinson, Exch. Act Rel. No. 34-50368; In re Digital Exchange Systems, Inc., Rosario Coniglio and Steven Schmidt, Exch. Act Rel. No. 34-50366; In re John K. Adams, Exch. Act Rel. No. 34-50367; and In re Bruce Keith Jensen, Exch. Act Rel. No. 34-50370.

purpose of these proceedings or any other proceeding brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings contained herein, except that Respondents admit the Commission's jurisdiction over them and over the subject matter of these proceedings, Respondents consent to the entry of this Order Instituting Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings and Imposing a Cease-and-Desist Order.

### III.

On the basis of this Order and Respondents' Offer, the Commission finds that:[2]

A.    **Respondents and Fleming Companies, Inc. ("Fleming")**

1.    **Respondents**

Marigold is a Delaware limited liability company headquartered in Minneapolis that produces and supplies dairy products.

James Green of Chanhassen, Minnesota, is Marigold's President and Chief Executive Officer.  Christopher Thorpe of Eden Prairie, Minnesota, is Marigold's Vice President of Financial Services.

2.    **Fleming**

Fleming is an Oklahoma corporation headquartered in Lewisville, Texas that currently is in Chapter 11 bankruptcy.  Before its April 2003 bankruptcy filing, Fleming's stock traded on the New York Stock Exchange.  At one time, Fleming was the nation's largest grocery wholesaler, with about 50 major distribution centers across the country, and a sizable retail grocery operator as well, with more than 100 stores throughout the Midwest and West.  Fleming's 2001 and 2002 reported revenues were approximately $15.6 billion and $15.5 billion, respectively.  But its earnings were much smaller, with only a $23.3 million profit and an $84 million loss, respectively, in those years.

B.    Facts

1.    **Fleming uses fraudulent "initiatives" to meet earnings expectations.**

During 2001 and the first half of 2002, Fleming improperly executed a series of transactions, called "initiatives," to fabricate earnings to "bridge the gap" between actual operating results and Wall Street expectations.  In these initiatives, Fleming fraudulently structured otherwise ordinary transactions in forms that, on paper, would justify and maximize an immediate increase in

---

[2] The findings herein are made pursuant to Respondents' Offer and are not binding on any other person or entity in these or any other proceedings.

2

earnings. One type of initiative that Fleming used frequently during this period was accelerating recognition of up-front payments received under forward-looking vendor agreements. On multiple occasions, Fleming persuaded vendors to provide side letters that described up-front payments - which Fleming and the vendors plainly intended to secure future rights and services - as compensating some form of past performance, such as a rebate or expense item. Fleming then used these letters to justify booking the entire up-front payment as an offset to expenses immediately, rather than over time as generally accepted accounting principles ("GAAP") required. These illicit bookings enabled Fleming to meet securities analysts' earnings expectations. Marigold, Green and Thorpe did not know of Fleming's initiatives.

2.    **Respondents are a cause of Fleming's inflated earnings in violation of GAAP.**

Marigold provided Fleming with such a side letter in the fourth quarter of 2001, in connection with an agreement to supply ice cream to Fleming's wholesale business for three years beginning March 2002 (the "Supply Agreement"). Marigold and Fleming negotiated the Supply Agreement during 2001. Fleming was willing to grant the Supply Agreement in return for an up-front payment of $2 million. Though it was extremely reluctant to make any such payment to Fleming, Marigold eventually viewed it as the "ante" or necessary first step to retaining and expanding the Fleming business. Indeed, Fleming was Marigold's largest customer. Marigold would not have agreed to such payment but for Fleming's willingness to continue the existing business between the two companies and to consider entering into a new Supply Agreement that would expand that business.

While the parties were finalizing the Supply Agreements, Fleming, at the 11th hour of negotiations, demanded a side letter describing the payment as a "non-refundable" "rebate" for "2001 purchases." Fleming provided Marigold the precise language it needed in the letter. As Green and Thorpe understood the existing contracts between Marigold and Fleming, they knew Marigold did not owe Fleming any such rebate; indeed, a $2 million rebate represented a significant percentage of Marigold's margin from its total 2001 ice cream sales to Fleming. Marigold was hesitant to pay that amount as a "rebate" because doing so would require Marigold to currently expense the entire amount. Marigold consulted with its accountants in this regard and was advised that the entire amount, if characterized as a "rebate," would have to be fully expensed in 2001 on Marigold's books.

Hesitant to provide the side letter because of the impact on its own books, yet still desiring to maintain and expand the lucrative Fleming business, Marigold acquiesced to Fleming's demand. As a condition to Marigold's providing the letter, however, Marigold required a penalty provision in the Supply Agreement that obligated Fleming to pay $2 million, which included Marigold's other investment costs incurred in performing the contract, on a *pro rata* basis, if Fleming failed to buy a certain volume of products during the agreement's term. The penalty provision therefore allowed Marigold to recoup the $2 million payment Marigold agreed was a "non-refundable" "rebate" for "2001 purchases." Satisfied that this penalty provision protected a large portion of Marigold's "ante," Green signed and returned Fleming's desired side letter.

Fleming accounting personnel accepted the letter and booked the entire payment as an offset to expenses in the fourth quarter of 2001. However, under GAAP, Fleming was required to

3

recognize the up-front payment ratably over the Supply Agreement's term. *See* Statement of Financial Accounting Concepts No. 5, ¶¶ 83-84; Staff Accounting Bulletin No. 101, *Revenue Recognition in Financial Statements*, Question 5. This improper recognition materially overstated Fleming's fourth quarter 2001 reported earnings, providing approximately $.02, or over 15%, of the $.12 per share earnings Fleming reported for that quarter. Fleming included these misstated earnings in its 2001 Form 10-K, and in publicly disseminated press releases. Fleming further incorporated the misstated Form 10-K into registration statements on Forms S-3, S-8 and S-4 filed during the summer of 2002.

### 3.    Marigold provides Fleming's auditor with a confirmation letter.

As part of its audit of Fleming's 2001 financial statements, Fleming's external auditor sent Marigold a letter requesting confirmation that the $2 million payment was a "rebate" for Fleming's "actual 2001 purchases," was "not connected to any future commitments" and was "not refundable." Green signed and returned the letter without qualification.

### C.    Conclusion

As a result of the foregoing, the Commission finds that Marigold, Green and Thorpe each were a cause of Fleming's violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act and Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1 and 13b2-1 thereunder.

### IV.

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in the Offer.[3]

Accordingly, IT IS HEREBY ORDERED, pursuant to Section 8A of the Securities Act and Section 21C of the Exchange Act, that Respondents Marigold, Green and Thorpe cease and desist from committing or causing any violations and any future violations of Section 17(a)(2) and 17(a)(3) of the Securities Act, and causing any violations and any future violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1 and 13b2-1 thereunder.

By the Commission.

Jonathan G. Katz
Secretary

---

[3] Marigold has agreed to pay a $150,000 civil penalty, and Green and Thorpe have each agreed to pay $50,000 civil penalties in connection with a parallel civil action.

# Exhibit F

## Fleming Companies, Inc., et al.
## Reclamation Claim Summary by Claimant
### November 21, 2003

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received in Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Consumed by Demand Date | [j] Satisfied Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3M | $92,140 | 4/2/2003 | $92,140 | $0 | ($75,063) | ($10,472) | $0 | $79,606 | ($18,218) | ($62,283) | $0 |
| ABGE Corp/Access Business Group, LLC | $19,894 | 4/7/2003 | $19,894 | $0 | $0 | ($37,082) | $0 | $13,911 | ($2,162) | | $29,749 |
| ACH Food Companies Inc | $869,920 | 4/22/2003 | $869,720 | $0 | $0 | ($134,697) | $0 | $755,023 | ($172,975) | ($104,697) | $453,591 |
| Adams & Brooks Inc | $4,504 | 4/12/2003 | $4,504 | $1 | $0 | ($1,978) | $0 | $2,508 | ($165) | $0 | $2,243 |
| Adirondack Beverage Corp | $9,405 | 4/12/2003 | $9,405 | $0 | $0 | $0 | $0 | $9,405 | ($320) | ($1,000) | $7,285 |
| Advance Brands LLC | $157,718 | 4/12/2003 | $150,269 | $0 | ($19,015) | ($134,697)? | $0 | $131,244 | ($61,291) | ($33,500) | $36,437 |
| Advantage Int'l Foods Corp | $17,776 | 4/2/2003 | $17,776 | $0 | ($447) | ($2,310) | $0 | $15,019 | ($8,547) | $0 | $5,672 |
| AEP Industries Inc | $107,701 | 4/7/2003 | $107,701 | $0 | ($58,626) | ($12,172) | ($36,543) | $0 | $0 | $0 | $0 |
| Agro Foods Inc | $49,031 | 4/4/2003 | $55,134 | $0 | $0 | ($39,140) | $0 | $45,995 | ($12,606) | $0 | $33,335 |
| AJM Packaging Corp. | $216,254 | 4/7/2003 | $210,666 | $0 | $0 | ($59,451) | $0 | $151,215 | ($57,456) | ($14,718) | $78,869 |
| Albaco Cashew USA, Inc | $117,283 | 4/2/2003 | $133,011 | $0 | $0 | ($28,038) | $0 | $84,972 | ($17,355) | ($67,617) | $0 |
| Alcoda Gricco Ltd | $0 | 4/1/2003 | $144,699 | $0 | ($19,866) | ($34,633) | $0 | $131,244 | ($13,542) | $0 | $84,214 |
| Alma Cleaning Co. | $218,355 | 4/12/2003 | $218,355 | $0 | ($317,070) | ($34,388) | $0 | $106,297 | ($1,532) | ($8,541) | $33,335 |
| Alki Aluminum Products | $3,505 | 4/12/2003 | $3,505 | $0 | $0 | $0 | $0 | $3,505 | $0 | $0 | $0 |
| Allstate Consumer Products Co. | $171,030 | 4/12/2003 | $256,071 | $0 | ($31) | ($60,607) | $0 | $193,373 | ($33,028) | ($11,591) | $148,745 |
| Allvita USA | $19,982 | 4/2/2003 | $19,190 | $0 | $0 | ($2,491) | $0 | $16,699 | ($1,161) | ($227) | $15,245 |
| American Bauling Co | $217,702 | 4/1/2003 | $187,389 | $0 | ($14,509) | ($14,509) | ($78,610) | $93,864 | ($8,481) | ($55,140) | $20,243 |
| American Distributing Co | $102,699 | 4/2/2003 | $102,699 | $0 | ($102,699) | $0 | $0 | $0 | $0 | $0 | $0 |
| American Foods Group | $94,719 | 4/12/2003 | $94,719 | $0 | $0 | ($59,828) | $0 | $34,892 | ($9,310) | $0 | $25,762 |
| American Greetings Corp | $156,220 | 4/2/2003 | $156,320 | $0 | $0 | ($59,231) | ($370,919) | $9,121 | ($314) | ($8,305) | $0 |
| American Italian Pasta Co. | $239,669 | 4/2/2003 | $239,669 | $0 | $0 | ($18,733) | $0 | $241,336 | ($278,194) | ($496,697) | $122,445 |
| American Licorice Co. | $128,195 | 4/10/2003 | $124,195 | $0 | ($3,288) | ($59,486) | $0 | $68,709 | ($32,209) | ($91,208) | $18,291 |
| American Safety Razor Co. | $16,466 | 4/12/2003 | $16,466 | $0 | $0 | ($9,711) | $0 | $6,467 | ($1,098) | ($5,370) | $0 |
| Arden Companies | $16,057 | 4/2/2003 | $16,057 | $0 | $0 | ($34,555) | $0 | $1,492 | ($79) | ($1,418) | $0 |
| Army Plastic Manufacturing Co. | $36,632 | 4/2/2003 | $36,632 | $0 | $0 | ($32,919) | $0 | $6,632 | ($639) | ($5,046) | $0 |
| Ateco Inc | $0 | 4/2/2003 | $56,231 | $0 | $0 | $0 | $0 | $56,231 | ($1,723) | ($34,508) | $0 |
| Atkins Nutritionals Inc | $7,915 | 4/8/2003 | $7,915 | $0 | $0 | $0 | $0 | $7,915 | $0 | ($688) | $1,573 |

68

**EXHIBIT F**

A    268

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received In Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Covered by Demand Date | [j] Selloff Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Anthony Park Co | $70,155 | 4/17/2003 | $70,156 | $0 | $0 | ($70,160) | $0 | $0 | $0 | $0 | $0 |
| Aurora Foods Inc | $354,947 | 3/12/2003 | $354,947 | $0 | ($25,730) | ($105,628) | ($1,500) | $492,019 | ($46,069) | ($141,693) | $359,404 |
| B & G Foods Inc | $244,725 | 4/4/2003 | $244,725 | $0 | ($317,217) | ($352,257) | $0 | $175,161 | ($33,403) | ($36,389) | $0 |
| B Bueno & Sons Inc | $23,251 | 4/2/2003 | $23,493 | $0 | ($2,193) | ($321,241) | $0 | $0 | $0 | $0 | $0 |
| Bagwell Packaging LLC | $23,938 | 4/4/2003 | $23,938 | $0 | $0 | ($14,073) | $0 | $9,859 | ($3,410) | $0 | $6,449 |
| Bake-Line Group LLC | $227,801 | 4/4/2003 | $227,800 | $0 | $0 | ($16,911) | $0 | $210,898 | ($26,140) | ($36,398) | $168,360 |
| Barber Product, Inc. | $14,400 | 4/11/2003 | $33,900 | $0 | $0 | ($324,900) | $0 | $9,000 | ($5,412) | $0 | $3,538 |
| Basila America Inc | $0 | 4/11/2003 | $171,574 | $0 | $0 | ($186,718) | $0 | $0 | ($220,043) | ($30,621) | $34,491 |
| Bes'd Foods Co | $121,648 | 4/2/2003 | $73,392 | $0 | ($206,893) | $165,806 | $0 | $83,136 | ($4,675) | ($27,317) | $0 |
| Bausch & Lomb | $41,631 | 4/7/2003 | $41,631 | $0 | ($1,160) | ($516,351) | $0 | $32,206 | ($27,317) | ($20,065) | $0 |
| Bayer Corp | $146,112 | 4/9/2003 | $45,101 | $0 | ($311,741) | $0 | $0 | $24,114 | ($4,600) | ($22,426) | $0 |
| BC Stocking Distributing | $12,399 | 4/10/2003 | $11,741 | $0 | ($311,741) | ($7,655) | $0 | $45,105 | ($22,665) | $0 | $71,859 |
| Beatrice Meadow Creamery Inc | $115,561 | 3/31/2003 | $115,561 | $0 | $0 | ($17,130) | $0 | $108,306 | ($16,645) | ($3,429) | $39,294 |
| Beaver St Fisheries Inc | $69,997 | 4/16/2003 | $69,997 | $0 | $0 | ($32,803) | $0 | $72,855 | ($10,147) | ($32,293) | $32,293 |
| Beer Nuts Inc | $35,312 | 4/2/2003 | $35,312 | $0 | $0 | $0 | $0 | $132,510 | ($216) | ($50,083) | $64,666 |
| Bejrandom Inc | $99,805 | 4/2/2003 | $99,805 | $0 | $0 | ($18,550) | $0 | $99,805 | ($15,057) | ($20,083) | $5,737 |
| Bel/Kaukauna USA | $44,196 | 4/2/2003 | $44,196 | $0 | $0 | ($18,245) | $0 | $25,691 | ($7,459) | ($84,698) | $84,707 |
| Bell Carter Foods Inc | $118,095 | 4/2/2003 | $118,095 | $0 | $0 | ($15,977) | $0 | $59,850 | ($13,140) | $0 | $0 |
| Berks Packing Co Inc | $3,865 | 4/1/2003 | $118,206 | $0 | $10 | $0 | $0 | $22,352 | ($1,694) | ($386) | $0 |
| Bienz & Kopseifel Foods Division | $101,500 | 3/27/2003 | $101,609 | $0 | ($101,600) | $0 | $0 | $23,852 | $0 | ($37,659) | $0 |
| Bremilsby's Pizza Inc | $63,887 | 4/2/2003 | $63,887 | $0 | ($3,958) | ($1,200) | ($23,667) | $32,667 | ($2,417) | $0 | $3,549 |
| Bretnik Co | $9,508 | 4/8/2003 | $9,508 | $0 | ($7,587) | ($31,759) | $0 | $5,956 | $0 | $0 | $47,781 |
| Barry Bialck Corp | $69,130 | 4/10/2003 | $69,130 | $0 | ($1,835) | ($19,110) | $0 | $47,781 | ($1,332) | ($35,767) | $0 |
| Beatbook Specialty Products | $27,849 | 4/2/2003 | $27,849 | $0 | $0 | ($19,110) | $0 | $6,859 | ($358,100) | ($555,840) | $23,167 |
| BIC USA Inc | $889,137 | 4/7/2003 | $889,137 | $0 | ($308,306) | ($412,018) | ($5,590) | $163,107 | $0 | $0 | $0 |
| Bierg Cheese Co | $11,992 | 4/2/2003 | $14,152 | $0 | $0 | ($19,110) | ($14,152) | $0 | $0 | $0 | $0 |
| Bimbo Bakeries USA | $50 | 4/22/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

Page 2 of 23

69

A     269

Fleming Companies, Inc. et al.
Reclamation Claim Summary by Claimant
November 21, 2003

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received In Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Consumed by Demand Date | [j] Shelf of Product Pre-Petition Reductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Elmay & Smith Inc | $5,343 | 4/1/2003 | $5,343 | $0 | $0 | ($2,248) | $0 | $3,025 | ($707) | ($2,328) | $0 |
| Birchwood Foods - Kenosha | $12,482 | 3/31/2003 | $12,482 | $0 | $0 | ($5,508) | $0 | $5,974 | ($272) | ($5,702) | $0 |
| Birds Eye Foods | $338,906 | 4/7/2003 | $338,906 | $0 | $0 | ($353,932) | ($7,641) | $297,332 | ($36,072) | ($258,660) | $0 |
| Bissell Homecare Inc | $37,945 | 4/2/2003 | $37,945 | $0 | ($300) | ($20,558) | $0 | $56,187 | ($1,649) | $0 | $4,538 |
| Bilreco Inc | $39,432 | 4/2/2003 | $37,155 | $0 | ($3900) | ($3,703) | $0 | $16,808 | ($22,613) | ($32,502) | $11,635 |
| Blue Bell Creameries LP | $6,876 | 4/4/2003 | $6,876 | $0 | ($11,350) | ($3,703) | ($6,006) | $167 | ($13) | ($17) | $135 |
| Blue Diamond | $23,397 | 3/20/2003 | $373,523 | $0 | ($13,545) | ($15,578) | $0 | $0 | $0 | $0 | $0 |
| Bob Evans Farms | $35,677 | 4/2/2003 | $36,677 | $0 | ($15,540) | $0 | ($23,137) | $0 | $0 | $0 | $0 |
| Borges USA | $79,283 | 3/15/2003 | $79,283 | ($79,283) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| BP Oil Products | $320,479 | 4/2/2003 | $320,479 | $0 | ($34,053) | ($58,412) | ($9,256) | $220,479 | ($15,140) | ($50,601) | $2,256 |
| Brach's | $159,733 | 4/1/2003 | $159,735 | $0 | ($312,423) | $0 | $0 | $58,003 | ($33,810) | ($4,743) | $17,351 |
| Brakebush Brothers Inc | $76,429 | 4/2/2003 | $37,829 | $0 | $0 | ($27,493) | $0 | $25,406 | ($8,316) | ($2,433) | $8,570 |
| Brewster Dairy Inc | $47,308 | 4/8/2003 | $47,308 | $0 | ($318,533) | $0 | $0 | $19,819 | ($22,946) | $0 | $4,784 |
| Brinkmann Food Co Inc | $23,879 | 4/2/2003 | $30,554 | $0 | $0 | ($4,235) | $0 | $7,730 | ($1,938) | $0 | $238 |
| Brinkmann Corp | $3,791 | 4/4/2003 | $3,791 | $0 | $0 | ($1,595) | $0 | $2,196 | ($552) | $0 | $238 |
| Buddig Dowd Adrelisa Wells Ltd | $5,029 | 4/2/2003 | $5,009 | $0 | $0 | ($1,780) | $0 | $3,229 | ($808) | ($360) | $2,012 |
| Bunge North America Inc | $101,409 | 4/7/2003 | $201,907 | $0 | ($4,751) | ($112,312) | $0 | $56,844 | ($40,400) | ($750) | $3,694 |
| Bunzl Inc | $1,380,061 | 4/2/2003 | $1,451,391 | $0 | ($31,621) | ($295,517) | ($697,422) | $306,829 | ($102,883) | ($52,259) | $227,647 |
| Bush Brothers & Co. | $284,302 | 4/14/2003 | $292,038 | $0 | $0 | ($113,302) | $0 | $178,753 | ($80,823) | ($97,931) | $0 |
| C&H Sugar Co Inc | $385,715 | 4/2/2003 | $385,715 | $0 | $0 | ($309,725) | ($5,821) | $289,165 | ($77,706) | ($59,269) | $142,100 |
| Cains Foods LP | $3,773 | 4/7/2003 | $3,773 | $0 | $0 | ($1,595) | $0 | $3,773 | ($1,440) | ($392) | $2,441 |
| Cal-Maine Foods Inc | $560,610 | 4/2/2003 | $560,610 | $0 | $0 | ($202,709) | ($107,611) | $230,313 | ($217,300) | ($14,420) | $18,585 |
| Cameco Inc | $2,954 | 4/1/2003 | $2,954 | $0 | ($2,954) | $0 | $0 | $0 | $0 | $0 | $0 |
| Camino Real Foods Inc | $11,275 | 4/8/2003 | $11,275 | $0 | $0 | ($11,275) | $0 | $0 | $0 | $0 | $0 |
| Campbell Sales Co & Subsidiaries | $1,922,781 | 3/12/2003 | $2,016,588 | $0 | ($356,042) | ($481,379) | ($565,725) | $1,413,422 | ($243,597) | ($1,162,429) | $0 |
| Castleman Foods Inc | $4,566 | 4/9/2003 | $4,566 | $0 | $0 | $0 | $0 | $4,566 | ($774) | ($1,603) | $0 |
| Cayman Products Inc | $5,400 | 4/22/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Declared Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | Purchase Order Not Identified | Product Net Received In Valid Period | [d] Drop Shipment Deliveries | [e] Valid Receipts | [f] Receipts Consumed by Demand Date | Benfit of Pre-Petition Deduction | [k] Claimable Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cargill Salt Division | $3,778 | 4/2/2003 | $53,214 | $0 | $0 | ($42,155) | $0 | $11,059 | $0 | ($11,609) | $0 |
| Carnax Laboratories Inc | $21,899 | 4/4/2003 | $16,232 | $0 | $0 | ($14,105) | $0 | $2,218 | ($1,584) | $0 | $634 |
| Carthage Corp. | $54,816 | 4/4/2003 | $54,816 | $0 | $0 | ($16,012) | $0 | $40,804 | ($6,167) | $0 | $34,637 |
| Castleberry/Snows Brands Inc | $73,468 | 4/1/2003 | $375,357 | $0 | ($1,308) | ($62,696) | $0 | $11,363 | ($2,833) | ($8,530) | $0 |
| Carmalids Farms | $211,951 | 4/2/2003 | $103,639 | $0 | $0 | $0 | $0 | $105,639 | ($59,359) | ($4,226) | $41,754 |
| CCDA Waters LLC | $67,253 | 4/2/2003 | $72,770 | $0 | $0 | ($20,780) | $0 | $31,990 | ($14,493) | ($24,956) | $8,621 |
| Ce-De Candy Inc | $0 | 4/7/2003 | $7,929 | $0 | $0 | ($3,454) | $0 | $3,674 | ($399) | $0 | $3,275 |
| Cenex Harvest States Cooperative | $0 | 4/2/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Certified Foods Corp. | $475,483 | 4/2/2003 | $475,483 | $0 | $0 | ($121,410) | $0 | $354,073 | ($133,057) | $0 | $221,016 |
| Chariton Inc | $17,363 | 4/2/2003 | $17,363 | $0 | $0 | ($642) | $0 | $16,721 | ($3,679) | ($11,311) | $1,731 |
| Chef Solutions Inc | $23,153 | 4/9/2003 | $23,153 | $0 | $0 | $0 | $0 | $23,153 | ($16,342) | $8,812 | $72,094 |
| Cherry Central Cooperative | $123,633 | 4/7/2003 | $123,633 | $0 | ($4,735) | ($16,989) | $0 | $105,644 | ($24,136) | ($10,110) | $72,378 |
| Chirqupd Wholesale Meat Co | $2,953 | 3/21/2003 | $4,735 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Chippper Beef Jerky | $5,504 | 4/9/2003 | $5,504 | $0 | $0 | $0 | $0 | $5,504 | $0 | ($116) | $5,388 |
| Chiquita Processed Foods LLC | $260,387 | 3/21/2003 | $260,387 | $0 | $0 | ($13,593) | ($5,918) | $240,975 | ($45,056) | ($139,250) | $56,569 |
| Church & Dwight Co Inc | $702,789 | 4/1/2003 | $702,789 | $0 | $0 | ($238,378) | ($17,475) | $465,935 | ($166,414) | ($165,741) | $154,781 |
| CITGO Petroleum Corp | $151,429 | 4/2/2003 | $151,429 | $0 | $0 | $0 | $0 | $151,429 | ($151,429) | $0 | $0 |
| Citrus World Inc | $363,221 | 4/2/2003 | $363,221 | $0 | $0 | ($180,976) | $0 | $182,246 | ($202,602) | $0 | $179,944 |
| Clement Pappas & Co Inc | $216,540 | 3/22/2003 | $216,540 | $0 | $0 | ($33,725) | ($7,524) | $185,291 | ($33,519) | $0 | $151,772 |
| Clemmett Foods Co | $120,499 | 4/2/2003 | $115,915 | $0 | $0 | ($38,869) | $0 | $77,046 | ($12,918) | ($2,330) | $61,799 |
| Clifftar Corp | $153,592 | 4/2/2003 | $153,592 | $0 | $0 | ($101,939) | $0 | $51,653 | ($11,543) | ($2,655) | $37,455 |
| Clorox Sales Co | $3,380,890 | 4/12/2003 | $3,380,890 | $0 | ($40,033) | ($445,509) | ($155,322) | $2,718,928 | ($206,050) | ($468,610) | $1,444,226 |
| Coca Cola Enterprises Inc | $748,000 | 4/11/2003 | $640,505 | $0 | $0 | ($44,810) | ($547,225) | $48,470 | ($11,303) | ($37,167) | $0 |
| Cody Kramer Imports | $572,648 | 4/2/2003 | $572,648 | $0 | ($230,870) | ($248,880) | $0 | $72,899 | ($804) | ($72,094) | $72,094 |
| Coffee Bean International | $4,704 | 4/2/2003 | $4,704 | $0 | $0 | ($57,704) | $0 | $0 | $0 | $0 | $0 |
| Coleman Co Inc | $16,937 | 4/1/2003 | $16,937 | $0 | $0 | $0 | $0 | $35,371 | ($39,109) | ($9,453) | $25,719 |
| Colmena Foods Inc | $3,872 | 4/9/2003 | $3,872 | ($50) | $0 | $0 | $0 | $3,872 | ($9,439) | ($3,433) | $0 |

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
### November 21, 2003

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Resubbed | [f] Product Not Received In Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts by Demand Date | [j] Set-off of Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Colgate Palmolive Co | $1,478,780 | 4/1/2003 | $1,017,026 | $0 | $0 | ($108,797) | ($393,459) | $508,769 | ($163,380) | ($344,225) | $1,164 |
| Colman Brothers Inc | $14,488 | 4/2/2003 | $84,335 | $0 | ($212,265) | ($61,836) | $0 | $1,213 | ($225) | ($500) | $488 |
| Combe Inc | $200,920 | 4/7/2003 | $48,031 | $0 | $0 | ($13,941) | $0 | $34,090 | ($9,886) | ($4,083) | $20,122 |
| Commonwealth Wholesale Corp | $21,314 | 4/7/2003 | $33,304 | $0 | $0 | ($41,352) | $0 | $11,952 | ($37,031) | ($4,941) | $0 |
| ConAgra Foods | $12,252,686 | 3/31/2003 | $12,252,686 | $0 | ($373,307) | ($3,110,678) | ($1,343,908) | $5,574,597 | ($3,974,420) | ($3,315,300) | $1,238,278 |
| Consolidated Brokerage Co Inc | $206,699 | 4/8/2003 | $210,968 | $0 | $0 | ($325,437) | $0 | $168,354 | ($35,958) | ($344,194) | $74,743 |
| Continental Mills Inc | $155,572 | 4/17/2003 | $156,572 | $0 | ($55,465) | ($130,381) | $0 | $5,721 | ($78,957) | ($32,762) | $0 |
| Curwood Company LP | $35 | 4/4/2003 | $386,065 | $0 | $0 | ($36,098) | ($130,949) | $244,508 | ($27,990) | $0 | $216,512 |
| Corporate Connection | $11,974 | 4/23/2003 | $10,193 | ($10,193) | ($314,015) | ($3,871) | ($352,555) | $25 | ($33) | ($312) | $0 |
| Corporate Express Inc | $133,267 | 4/6/2003 | $133,267 | $0 | $0 | ($7,828) | $0 | $2,539 | ($505) | ($505) | $0 |
| Country Home Bakers Inc | $10,365 | 3/27/2003 | $10,365 | $0 | $0 | ($411) | $0 | $0 | ($26,743) | ($2,437) | $0 |
| Crowley Foods LLC | $110,605 | 4/1/2003 | $110,378 | $0 | $0 | ($11) | ($55,447) | $30,820 | ($35,743) | $0 | $11,641 |
| Crony Central Petroleum Corp | $0 | 4/22/2003 | $0 | $0 | ($33,860) | ($346,270) | ($410,949) | $0 | $0 | $0 | $0 |
| Crystal Farms | $784,239 | 3/31/2003 | $784,239 | $0 | $0 | ($32,290) | $0 | $294,146 | ($70,924) | ($17,703) | $205,530 |
| Cumberland Swan | $31,275 | 4/8/2003 | $31,275 | $0 | ($123) | ($33,290) | $0 | $27,683 | ($5,838) | ($13,672) | $8,332 |
| Dade Paper & Bag Co Inc | $2,301 | 4/7/2003 | $2,301 | $0 | ($1,400) | ($898) | $0 | $0 | $0 | ($315) | $0 |
| Dairy Farmers of America | $161,845 | 4/4/2003 | $161,845 | $0 | ($161,845) | $0 | ($45,723) | $0 | $0 | $0 | $0 |
| Dairy Maid Foods | $4,794 | 4/7/2003 | $4,794 | $0 | $0 | ($71) | $0 | $0 | $0 | $0 | $0 |
| Dakota Premium Foods LLC | $0 | 4/1/2003 | $30,410 | $0 | $0 | $0 | $0 | $310,410 | ($5,540) | $0 | $20,869 |
| Dale's Sauces Inc | $27,821 | 4/7/2003 | $27,821 | $0 | ($3,295) | ($22,522) | $0 | $0 | $0 | $0 | $0 |
| Damon Co Inc | $1,193,313 | 4/5/2003 | $814,935 | $0 | ($496) | ($643,320) | $0 | $170,619 | ($153,611) | ($17,008) | $0 |
| Dart Distributing LLC | $18,859 | 4/22/2003 | $18,859 | $0 | ($34,657) | ($35,410) | $0 | $0 | ($1,033) | ($7,748) | $0 |
| Dawn Food Products Inc | $365,349 | 3/31/2003 | $365,349 | $0 | ($221,714) | $0 | ($92,123) | $8,782 | ($353) | ($1,150) | $3,150 |
| Dean Foods Co | $2,137,744 | 3/31/2003 | $1,815,700 | $0 | ($11,324) | ($508) | ($7,468,401) | $1,503 | ($353) | ($353) | $0 |
| Dean Specialty Foods Group | $100,213 | 3/31/2003 | $402,032 | $0 | $0 | ($13,350) | $0 | $334,203 | ($236,540) | ($397,639) | $0 |
| Del Monte Corp | $1,680,554 | 3/28/2003 | $1,411,492 | $0 | ($252,208) | ($224,526) | ($4,424) | $316,698 | ($652,611) | ($17,415) | $308,672 |
| Del Monte Fresh Produce Co | $1,370,244 | 3/28/2003 | $0 | $0 | $0 | $0 | $0 | $1,082,931 | ($148,970) | ($523,190) | $110,759 |

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received in Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Consumed by Demand Date | [j] Setoff of Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DMI Pharmaceuticals Inc | $96,813 | 4/2/2003 | $96,522 | $0 | ($4,457) | ($33,842) | ($4,707) | $56,513 | ($6,392) | ($17,139) | $32,982 |
| Dah Dairy Ltd | $7,222 | 4/16/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Destination Products International Ltd | $84,020 | 4/2/2003 | $84,020 | $0 | $0 | $0 | $0 | $84,020 | ($17,594) | ($4,357) | $62,069 |
| Decaf Finance Co LLC | $59,947 | 3/28/2003 | $59,947 | $0 | ($57,315) | $0 | $0 | $2,633 | ($470) | ($2,162) | $0 |
| Diablo Beverage | $3,678 | 4/8/2003 | $3,652 | $0 | $0 | ($3,652) | $0 | $0 | $0 | $0 | $0 |
| Dahl Corp | $434,774 | 4/2/2003 | $434,774 | $0 | $0 | ($39,530) | ($9,488) | $326,757 | ($93,379) | ($223,881) | $0 |
| Dietz & Watson | $65,171 | 4/1/2003 | $65,171 | $0 | $0 | ($22,262) | ($647) | $42,263 | ($26,186) | ($3,833) | $12,244 |
| Direct Source International Inc | $90,490 | 4/2/2003 | $90,490 | $0 | $0 | ($21,114) | $0 | $69,376 | ($12,957) | $0 | $55,418 |
| Diplo Produce & Packaging Inc | $62,102 | 5/9/2003 | $62,102 | ($52,102) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| DLM Foods | $2,261,428 | 1/16/2003 | $2,280,216 | $0 | ($53,985) | ($317,080) | $0 | $1,329,151 | ($262,896) | ($339,718) | $743,467 |
| Donna Pet Care | $100,843 | 4/2/2003 | $100,843 | $0 | $0 | ($45,365) | $0 | $55,477 | ($17,098) | ($5,987) | $32,992 |
| Dole Fresh Flowers Inc | $1,607 | 4/7/2003 | $1,607 | $0 | ($376) | ($517) | $0 | $317 | ($111) | $0 | $406 |
| Dole Packaged Foods Inc | $134,009 | 4/2/2003 | $124,556 | $0 | $0 | ($7,182) | $0 | $119,375 | ($15,720) | ($48,515) | $54,035 |
| Domino Foods Inc | $318,088 | 4/2/2003 | $318,088 | $0 | $0 | ($65,280) | $0 | $252,808 | ($78,431) | $0 | $174,373 |
| Donsgley Rolco LLC | $0 | 4/2/2003 | $113,272 | $0 | $0 | $0 | ($113,272) | $0 | $0 | $0 | $0 |
| Dorcy | $4,317 | 4/2/2003 | $4,075 | $0 | $0 | ($858) | $0 | $4,317 | ($1,819) | ($1,400) | $998 |
| Dot Foods Inc | $133,096 | 4/1/2003 | $133,096 | $0 | ($2,416) | ($33,933) | ($21,717) | $75,930 | ($35,630) | ($24,404) | $61,275 |
| Downey Wholesale Inc | $0 | 4/2/2003 | $0 | $0 | $0 | ($856) | $0 | $0 | $0 | $0 | $0 |
| DPC Industries Inc | $0 | 4/22/2003 | $0 | $0 | ($8,975) | ($1,083) | ($4,308) | $23,313 | ($346) | ($22,960) | $0 |
| Dr Pepper/Seven-Up Bottling Group Inc | $37,683 | 4/1/2003 | $37,684 | $0 | ($4,114) | ($15,343) | ($117,133) | $60,468 | ($723,682) | ($8,943) | $27,845 |
| Dreyer/Edy's Grand Ice Cream | $197,059 | 4/2/2003 | $197,059 | $0 | $0 | ($43,367) | $0 | $35,927 | ($39,061) | ($39,942) | $46,216 |
| Duro Bag Mfg Co | $74,241 | 4/2/2003 | $106,473 | $0 | ($3,179) | ($310,775) | $0 | $44,299 | ($4,699) | ($8,609) | $26,316 |
| Dyno Merchandise | $17,843 | 4/2/2003 | $3,507 | $0 | $0 | ($3,907) | $0 | $0 | $0 | $0 | $0 |
| Eagle Family Foods Inc | $85,439 | 4/2/2003 | $54,874 | $0 | ($10,775) | ($310,775) | $0 | $44,299 | ($4,699) | ($17,286) | $0 |
| Exeter Unlimited Inc | $3,250 | 4/2/2003 | $3,250 | $0 | $0 | ($3,907) | $0 | $3,250 | $0 | ($839) | $2,211 |
| Eastman Kodak Co | $345,132 | 4/9/2003 | $77,316 | $0 | ($13,860) | ($19,597) | ($14,079) | $42,274 | ($12,026) | $0 | $10,248 |
| Eddline-Walcher Co | $459,062 | 4/1/2003 | $468,687 | $0 | $0 | $0 | $0 | $468,687 | ($403,687) | $0 | $0 |

**Fleming Companies, Inc. et al.**
**Reclamation Claim Summary by Claimant**
**November 21, 2003**

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Initially Asserted Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received in Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Consumed by Demand Date | [j] Relief of Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Elihu Liquor Corp | $39,437 | 4/21/2003 | $38,540 | ($38,540) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Edward Elno Foods Inc | $78,510 | 4/10/2003 | $78,510 | $0 | $0 | ($48,807) | ($2,233) | $27,481 | ($12,694) | ($7,105) | $7,682 |
| Edwards Oil Inc | $38,772 | 4/12/2003 | $21,928 | $0 | $0 | $0 | $0 | $21,928 | ($21,928) | $0 | $0 |
| El Bueuno Ino dba Bueno Foods | $3,341 | 4/7/2003 | $3,341 | $0 | $0 | ($50) | ($325) | $2,852 | ($1,907) | $0 | $945 |
| Empire Packing Co LP dba Ledbetter Packing Co | $14,940 | 4/12/2003 | $14,940 | $0 | ($14,940) | $0 | $0 | $0 | $0 | $0 | $0 |
| Espos Inc | $8,252 | 4/2/2003 | $8,252 | $0 | $0 | ($8,252) | $0 | $0 | $0 | $0 | $0 |
| Evertush Food Corp | $6,778 | 4/9/2003 | $6,778 | $0 | $0 | $0 | $0 | $6,778 | ($6,583) | ($194) | $0 |
| Bexel Corp | $53,214 | 4/7/2003 | $53,214 | $0 | ($11,069) | ($42,155) | $0 | $74,134 | ($9,937) | ($16,937) | $53,260 |
| Express Trading Inc | $390,475 | 4/12/2003 | $379,190 | $0 | $0 | ($236,250) | $0 | $74,134 | ($9,937) | ($16,937) | $53,260 |
| Exxon/Mobil Oil Corp | $1,029,094 | 4/10/2003 | $1,029,094 | $0 | $0 | $0 | $0 | $1,029,094 | ($1,029,094) | $0 | $0 |
| Fabri-Kal Corp | $2,947 | 4/7/2003 | $2,947 | $0 | $0 | ($22,947) | $0 | $15,835 | ($6,388) | ($2,219) | $7,230 |
| Famous Products Inc | $13,437 | 4/10/2003 | $191,731 | $0 | $0 | ($47,895) | $0 | $140,290 | ($119,219) | ($525,575) | $7,230 |
| Faribault Foods | $191,731 | 4/7/2003 | $59,728 | $0 | $0 | ($51,640) | $0 | $140,290 | ($119,219) | $0 | $188,102 |
| Farm Fresh Food Supplies Inc | $5,858 | 4/21/2003 | $7,075 | $0 | $0 | ($1,217) | ($1,217) | $3,858 | ($2,219) | $0 | $5,699 |
| Farmland Foods Inc | $710,513 | 4/22/2003 | $710,513 | $0 | $0 | ($25,102) | ($25,102) | $693,016 | ($414,665) | ($273,342) | $0 |
| Farmland National Beef Packing Co LP | $1,387,624 | 4/22/2003 | $1,387,624 | $0 | ($455,046) | ($606,166) | $0 | $228,412 | ($284,132) | $0 | $344,291 |
| Fanci Queen | $3,811 | 4/4/2003 | $3,811 | $0 | $0 | ($1,838) | $0 | $1,973 | ($320) | ($1,633) | $0 |
| Fatiless Snack Bro And Co | $18,930 | 4/9/2003 | $15,801 | $0 | ($10,710) | ($2,609) | $0 | $16,520 | ($9,160) | ($7,356) | $1,633 |
| Fermain USA Inc | $66,093 | 4/22/2003 | $66,093 | $0 | ($10,460) | ($17,440) | $0 | $20,671 | ($7,951) | ($1,863) | $7,356 |
| Ferraro Pea Candy Co | $6,497 | 4/10/2003 | $32,716 | $0 | ($12,219) | ($6,497) | $0 | $0 | $0 | $0 | $1,863 |
| Ferrero USA Inc | $181,183 | 4/22/2003 | $184,565 | $0 | ($26,833) | ($34,316) | ($35,762) | $77,655 | ($11,855) | ($21,460) | $44,540 |
| Fiesthio Farms Corp | $7,540 | 4/11/2003 | $10,710 | $0 | ($10,710) | ($35,762) | $0 | $0 | $0 | $0 | $0 |
| Finberg Packing Co Inc | $339,116 | 3/31/2003 | $18,364 | $0 | ($110,460) | ($12,111) | $0 | $7,923 | ($7,523) | $0 | $40,653 |
| Fish House Foods Inc | $19,634 | 4/1/2003 | $19,634 | $0 | $0 | ($8,004) | $0 | $2,694 | ($306) | $0 | $0 |
| Flowers Foods | $0 | 4/22/2003 | $633,652 | $0 | ($13,219) | ($12,830) | ($17,931) | $0 | $0 | ($3,877) | $0 |
| Food Marketing Group | $1,270,301 | 4/12/2003 | $1,270,381 | $0 | $0 | ($252,571) | ($528,133) | $993,668 | ($140,490) | ($535,920) | $222,217 |
| Food/Mrph Inc | $3,019 | 4/15/2003 | $3,741 | $0 | $0 | ($3,741) | $0 | $0 | $0 | $0 | $0 |

Page 7 of 23

74

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received in Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipt Confirmed by Demand Date | [j] Sales or Pre-petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Foster Farms | $694,926 | 4/2/2003 | $694,926 | $0 | $0 | ($7,951) | ($566,659) | $121,315 | ($48,936) | ($27,255) | $45,124 |
| Fox Packaging Co | $3,974 | 4/9/2003 | $3,974 | $0 | $0 | $0 | $0 | $3,974 | $0 | ($3,974) | $0 |
| Frankford Candy & Chocolate Co | $40,023 | 4/11/2003 | $35,156 | $0 | ($3,252) | ($9,240) | $0 | $25,661 | ($3,716) | ($1,499) | $18,386 |
| Fresh Mark | $347,229 | 4/1/2003 | $347,229 | $0 | ($102,287) | ($102,780) | $0 | $142,162 | ($58,718) | ($29,397) | $30,047 |
| Frito-Lay Inc | $416,310 | 4/1/2003 | $395,930 | $0 | $0 | ($252,396) | ($47,260) | $144,319 | ($50,617) | ($57,345) | $23,457 |
| Frozen Specialties Inc | $83,620 | 4/3/2003 | $83,620 | $0 | $0 | ($67,260) | ($31,320) | $4,440 | ($1,217) | $0 | $3,221 |
| Fuji Food Services | $216,607 | 4/2/2003 | $216,607 | $0 | $0 | ($195,649) | $0 | $20,959 | ($11,116) | ($6,412) | $73,404 |
| Fumero Foods Ltd | $33,263 | 4/11/2003 | $5,506 | $0 | $0 | ($3,602) | $0 | $2,504 | ($2,384) | $119 | $0 |
| G.L. Mezzetta Inc | $15,083 | 4/9/2003 | $15,083 | $0 | $0 | ($7,599) | $0 | $7,484 | ($2,008) | ($5,476) | $0 |
| Gacsa Imports Inc | $3,919 | 4/9/2003 | $3,848 | $0 | $0 | ($1,839) | $0 | $2,015 | ($1,533) | ($320) | $146 |
| Geneva USA Inc | $63,062 | 5/17/2003 | $63,062 | ($63,062) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Gary-Williams Energy Corp | $175,238 | 4/1/2003 | $175,238 | $0 | $0 | $0 | $0 | $175,238 | ($175,238) | $0 | $0 |
| GB Common Products | $1,193,504 | 4/2/2003 | $1,193,504 | $0 | ($323,250) | ($413,039) | $0 | $457,244 | ($367,294) | ($169,934) | $119,576 |
| General Mills | $21,923,377 | 3/28/2003 | $10,765,229 | $0 | ($394,470) | ($2,018,492) | ($833,290) | $7,799,037 | ($4,491,602) | ($3,737,566) | $559,190 |
| General Produce Co Ltd | $0 | | $0 | | | | | | | | |
| Georgia Western Bakeries Inc | $0 | 4/2/2003 | $144,439 | $0 | $0 | ($12,468) | ($57,050) | $71,915 | ($4,559) | ($18,615) | $48,740 |
| Georgia Pacific Corp | $2,992,424 | 7/31/2003 | $2,834,321 | $0 | $0 | ($855,345) | ($476,926) | $1,462,049 | ($328,033) | ($1,134,016) | $0 |
| Gerber Products Co | $1,243,567 | 4/1/2003 | $1,240,387 | $0 | $0 | ($421,890) | $0 | $816,477 | ($346,277) | ($320,467) | $349,733 |
| GFA Brands Inc | $28,906 | 4/11/2003 | $28,906 | $0 | $0 | ($878) | $0 | $28,027 | ($22,931) | ($5,097) | $0 |
| Gilroy Enterprises | $107,246 | 4/8/2003 | $107,246 | $0 | ($5,724) | ($85,859) | $0 | $15,597 | ($10,219) | $0 | $5,378 |
| Gillette Co | $185,702 | 3/28/2003 | $176,605 | $0 | ($3,789) | ($70,509) | ($8,221) | $94,007 | ($8,692) | ($85,335) | $0 |
| Gitnet Mary Lee Corp | $344,071 | 4/9/2003 | $344,071 | $0 | $0 | ($47,232) | ($3,222) | $293,558 | ($58,631) | ($5,436) | $229,490 |
| Giorgio Foods Inc | $23,128 | 4/4/2003 | $33,389 | $0 | $0 | ($1,697) | $0 | $32,293 | ($5,538) | ($5,736) | $21,019 |
| GlaxoSmithKline | $559,773 | 3/26/2003 | $577,250 | $0 | ($340,992) | ($208,504) | $0 | $87,754 | ($15,569) | ($69,528) | $2,460 |
| Gold Eagle Co | $12,508 | 4/9/2003 | $12,508 | $0 | $0 | ($3,120) | ($2,392) | $6,997 | ($4,420) | ($2,577) | $0 |
| Gold Kist Inc | $444,226 | 4/2/2003 | $444,226 | $0 | $0 | ($137,762) | ($223,302) | $284,163 | ($178,642) | ($3,221) | $102,299 |
| Gold Pure Food Products Co Inc | $12,161 | 4/2/2003 | $18,106 | $0 | $0 | ($11,359) | $0 | $5,747 | ($1,182) | ($2,161) | $3,404 |

Page 8 of 23

75

A    275

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received In Valid Period | [g] Drop Shipment Deductions | [h] Valid Receipts | [i] Receipts Calculated by Demand Date | [j] Goods of Pre-Petition Deduction | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cohiba Pump Farms LP | $803,154 | 4/2/2003 | $422,786 | $0 | $0 | ($263,154) | $0 | $359,631 | ($242,145) | ($20,138) | $57,529 |
| Good Humor Breyers Ice Cream | $323,814 | 4/2/2003 | $348,905 | $0 | $0 | ($273,757) | $0 | $273,148 | ($60,335) | ($214,813) | $0 |
| Gopher News Inc | $198,659 | 4/4/2003 | $198,659 | $0 | $0 | ($17,502) | ($24,491) | $159,667 | ($32,220) | $0 | $121,345 |
| Gorton Inc | $71,120 | 4/2/2003 | $71,120 | $0 | $0 | ($23,587) | $0 | $47,533 | ($310,991) | ($36,543) | $0 |
| Goya Foods Inc | $26,888 | 4/7/2003 | $26,388 | $0 | $0 | $0 | ($16,888) | $0 | $0 | $0 | $0 |
| Graf Crossley Inc | $345,727 | 4/2/2003 | $354,705 | $0 | ($3,050) | ($236,201) | $0 | $159,454 | ($569,065) | $0 | $94,389 |
| Gray & Co | $16,538 | 4/2/2003 | $46,803 | $0 | ($6,505) | ($9,217) | $0 | $27,086 | ($94,401) | ($21,077) | $20,610 |
| Great Lakes Kraut Co | $3,233 | 4/2/2003 | $3,233 | $0 | $0 | ($1,813) | $0 | $1,420 | ($309) | ($342) | $788 |
| Green Bay Packaging Inc | $2,956 | 4/2/2003 | $2,956 | $0 | ($2,516) | $0 | $0 | $0 | $0 | $0 | $0 |
| GSM Industries | $0 | 4/7/2003 | $0 | $0 | $0 | $0 | $0 | $17,934 | $0 | $0 | $17,934 |
| GTS Propak Inc | $71,140 | 4/7/2003 | $17,934 | $0 | $0 | $0 | $0 | $0 | $0 | ($3,557) | $23,224 |
| Gateway of Smithfield Ltd | $54,794 | 4/2/2003 | $54,794 | $0 | $0 | $0 | $0 | $54,794 | ($18,618) | ($7,494) | $31,517 |
| H & H Distributing of Ann Arbor LLC | $63,551 | 4/2/2003 | $63,551 | $0 | $0 | ($19,602) | $0 | $43,950 | ($9,939) | $0 | $31,517 |
| Hallmark Cards Inc | $112,830 | 4/2/2003 | $123,339 | $0 | ($2,500) | $0 | ($123,339) | $0 | $0 | $0 | $0 |
| Hammer Corporation | $69,401 | 4/2/2003 | $55,738 | $0 | ($32,500) | ($16,891) | $0 | $6,366 | ($402) | $0 | $5,916 |
| Hand Held | $0 | 4/2/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Hanover Foods Corp | $94,314 | 4/2/2003 | $94,314 | $0 | $0 | $0 | $0 | $94,314 | ($22,673) | ($20,006) | $51,635 |
| Hartzog Wholesale Produce | $112,202 | 4/5/2002 | $176,712 | $0 | ($3,510) | ($59,338) | $0 | $13,864 | ($6,258) | $0 | $7,566 |
| Harz Mountain Corp | $40,699 | 4/2/2003 | $40,699 | $0 | $0 | ($18,160) | ($835) | $21,704 | ($22,841) | ($318,863) | $0 |
| Harvest Offe Sea | $7,546 | 4/2/2003 | $7,546 | $0 | $0 | ($37,546) | $0 | $0 | $0 | $0 | $0 |
| Hatco Corp | $30,709 | 4/1/2003 | $30,709 | $0 | ($30,709) | $0 | $0 | $0 | $0 | $0 | $0 |
| Hawaiian Popcorn | $9,645 | 4/9/2003 | $7,059 | $0 | ($555) | ($801) | $0 | $5,746 | $0 | ($20,000) | $5,746 |
| Heinz North America | $1,747,981 | 3/28/2003 | $1,312,792 | $0 | ($55,885) | ($260,816) | ($312,234) | $1,003,853 | ($119,544) | ($2,542,306) | $342,008 |
| Helava Good Cheese Inc | $5,091 | 4/1/2003 | $50,726 | $0 | $0 | ($241,132) | $0 | $7,549 | ($35,134) | ($32,459) | $0 |
| Henkel Consumer Adhesives Inc | $52,142 | 4/2/2003 | $63,139 | $0 | $0 | ($9,288) | $0 | $33,849 | ($9,505) | ($3,919) | $20,430 |
| Heritage Foods | $1,081,929 | 4/2/2003 | $226,481 | $0 | $0 | ($23,263) | $0 | $235,519 | ($117,425) | ($21,196) | $93,898 |
| Hershey Foods Corp | $16,923,834 | 3/28/2003 | $13,456,953 | $0 | ($1,019,353) | ($485,280) | ($1,149,730) | $9,204,590 | ($990,698) | ($1,211,733) | $7,033,734 |

Fleming Companies, Inc. et al.
Reclamation Claim Summary by Claimant
November 21, 2003

| Creditor Name | [a] Disclosed Assertion | [b] Demand Date | [c] Blackthuite Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Received | [f] Product Not Received in Valid Period | [g] Drop Shipment Delivered | [h] Valid Receipts | [i] Receipts Consumed by Demand Date | [j] Sent of Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hi-County-Cowan Inc | $97,938 | 4/9/2003 | $97,938 | $0 | ($39,059) | ($4,211) | $0 | $54,668 | ($50,350) | $0 | $4,318 |
| Hi-Country Foods Corp | $18,382 | 4/12/2003 | $18,382 | $0 | ($4,224) | $0 | ($3,520) | $10,638 | ($651) | ($9,888) | $0 |
| Hiland's Farms of PA | $92,535 | 4/4/2003 | $92,535 | $0 | ($19,728) | $0 | $0 | $72,807 | ($71,289) | ($1,518) | $0 |
| Hill's Pet Nutrition Inc & Subsidiaries | $152,994 | 4/1/2003 | $152,994 | $0 | $0 | ($152,994) | $0 | $0 | $0 | $0 | $0 |
| Hinel Canning Co | $34,343 | 4/22/2003 | $34,343 | $0 | ($16,386) | ($20,871) | $0 | $13,474 | ($3,559) | ($13,479) | $4,435 |
| Hobart Corp | $242,017 | 4/12/2003 | $20,394 | $0 | ($33,508) | $0 | $0 | $0 | $0 | $0 | $0 |
| HoneyTree Inc | $151,587 | 4/2/2003 | $151,587 | $0 | ($70,511) | $0 | $0 | $81,016 | ($26,078) | $0 | $54,938 |
| Honeywell | $4,575 | 4/22/2003 | $4,575 | $0 | $0 | $0 | $0 | $4,575 | $0 | ($211) | $4,364 |
| Hower Co | $16,693 | 3/12/2003 | $16,693 | $0 | ($16,693) | $0 | $0 | $0 | $0 | $0 | $0 |
| Hopton Snack Foods | $0 | 4/2/2003 | $14,848 | $0 | $0 | ($349) | ($14,070) | $428 | ($194) | $0 | $274 |
| Hormal Foods Corp | $2,940,934 | 4/12/2003 | $3,284,844 | $0 | ($22,945) | ($52,012,350) | ($801,337) | $1,654,412 | ($440,573) | ($799,597) | $414,243 |
| Hospital Specialty Co | $49,535 | 4/12/2003 | $49,943 | $0 | ($15,272) | $0 | $0 | $34,171 | ($20,606) | ($14,517) | $13,566 |
| Hunstord Inc | $25,645 | 4/17/2003 | $25,645 | $0 | $0 | ($19,183) | ($3,940) | $2,522 | $0 | ($705) | $1,817 |
| HP Hood Inc | $105,678 | 4/10/2003 | $105,678 | $0 | ($3,105) | ($17,217) | $0 | $85,356 | ($30,665) | ($5,691) | $0 |
| Huhamal Foodservice | $34,019 | 4/21/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Husb Detergents Inc | $0 | 4/7/2003 | $25,725 | $0 | ($3,105) | ($9,212) | ($1,607) | $16,006 | ($3,831) | ($10,733) | $0 |
| Inspect Group | $0 | 4/42/2003 | $16,550 | $0 | ($7,753) | $0 | ($4,789) | $0 | $0 | $0 | $0 |
| Imperial Distributing Inc & Diamond Crystal Brands Inc | $8,305 | 4/11/2003 | $8,305 | $0 | ($4,600) | ($5,705) | $0 | $0 | $0 | $0 | $0 |
| Imperial Sugar Company | $87,456 | 4/9/2003 | $87,456 | $0 | ($3,523) | ($50,318) | $0 | $33,613 | ($9,911) | ($1,779) | $21,929 |
| Ingram Entertainment Inc | $148,034 | 4/22/2003 | $148,034 | $0 | $0 | ($782) | ($146,793) | $466 | ($355) | ($411) | $0 |
| Integrity Marketing and Sales LLP | $50,774 | 4/2/2003 | $50,774 | $0 | $0 | ($50,774) | $0 | $0 | $0 | $0 | $0 |
| International Food Group Inc | $105,202 | 4/2/2003 | $105,202 | $0 | ($14,493) | ($54,007) | $0 | $51,135 | ($16,240) | $0 | $34,699 |
| International Food Products Inc | $30,344 | 4/22/2003 | $21,295 | $0 | ($13,012) | ($6,027) | $0 | $0 | $0 | $0 | $0 |
| International Multifoods Corp | $927,777 | 4/12/2003 | $1,032,551 | $0 | ($14,467) | ($309,240) | $0 | $720,598 | ($119,223) | ($466,439) | $134,935 |
| Interstate Brands Companies | $550,492 | 4/22/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Iowa Packing Company | $102,918 | 4/11/2003 | $102,918 | $0 | $0 | ($232,287) | $0 | $74,631 | ($43,372) | $0 | $29,224 |
| Irving Tissue Inc | $29,394 | 4/1/2003 | $28,790 | $0 | ($2,908) | $0 | $0 | $25,933 | ($7,133) | ($13,749) | $0 |

Page 10 of 23

77

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Invoiced Assertion | [b] Demand Date | [c] Electronic Assertion Retail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received In Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Consumed by Demand Date | [j] Sale of Product Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ISG Technology Inc dba Integrated Solution Group | $216,948 | 4/15/2003 | $216,948 | $0 | ($216,948) | $0 | $0 | $0 | $0 | $0 | $0 |
| J & D Foods Inc | $7,756 | 4/16/2003 | $7,756 | $0 | $0 | ($7,756) | $0 | $0 | $0 | $0 | $0 |
| J & J Snack Foods Corp | $44,811 | 4/4/2003 | $44,811 | $0 | $0 | ($14,204) | $0 | $30,517 | ($35,920) | ($24,597) | $0 |
| JKM Consultants Co | $1,236,184 | 3/31/2003 | $1,241,013 | $0 | ($159,220) | ($194,916) | ($262,239) | $1,010,665 | ($104,149) | ($841,100) | $7,616 |
| Jaguar International Inc | $0 | 4/4/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| James Skinner Baking Co | $34,604 | 4/14/2003 | $34,604 | $0 | $0 | ($30,439) | $0 | $13,546 | ($9,310) | ($322) | $3,678 |
| Jergens | $44,258 | 4/5/2003 | $44,258 | $0 | $0 | ($21,592) | $0 | $22,666 | ($4,081) | ($18,585) | $5,678 |
| John Middleton Inc | $184,320 | 4/2/2003 | $184,557 | $0 | ($5,393) | ($44,549) | $0 | $96,792 | ($5,980) | $0 | $43,911 |
| John Marzell & Co | $1,075,761 | 4/12/2003 | $1,069,323 | $7 | ($311,127) | ($273,320) | ($30,350) | $601,276 | ($228,170) | ($368,389) | $284,425 |
| Johnson Brothers Beverages Inc | $0 | 4/12/2003 | $7,357 | $0 | $0 | ($240) | ($178,600) | $7,357 | ($2,603) | ($49,240) | $6,105 |
| Johnsonville Sausage Co | $452,667 | 4/2/2003 | $355,197 | $0 | ($259) | ($52,555) | ($23,660) | $278,720 | ($78,600) | ($49,240) | $120,877 |
| James Dairy Farm | $17,586 | 4/9/2003 | $35,512 | $0 | ($4,273) | ($13,952) | $0 | $18,287 | ($9,593) | ($8,695) | $0 |
| Joyco O'Brien | $29,520 | 4/10/2003 | $41,066 | $0 | $0 | ($41,060) | $0 | $41,060 | $0 | $0 | $0 |
| Joseph Campione Inc | $113,092 | 4/4/2003 | $113,092 | $0 | ($1,728) | ($53,198) | $0 | $53,167 | ($15,181) | ($9,336) | $28,650 |
| Jordan Paper & Packaging Inc of Florida Co. | $28,272 | 4/7/2003 | $28,272 | $0 | $0 | $0 | ($23,772) | $0 | $0 | $0 | $0 |
| JTI McDonald Corp | $3,417,989 | 4/7/2003 | $1,990,613 | $0 | ($234,070) | $0 | $0 | $1,766,543 | ($438,097) | $0 | $1,308,446 |
| JTM Foods Inc | $53,246 | 4/7/2003 | $53,246 | $0 | ($6,250) | ($17,733) | $0 | $29,264 | ($15,743) | ($170) | $13,350 |
| Just Born Inc | $152,687 | 4/12/2003 | $152,687 | $0 | ($21,562) | ($79,381) | $0 | $31,744 | ($11,732) | ($20,012) | $0 |
| Kahiki Family Farm | $325 | 4/15/2003 | $325 | $0 | $0 | ($325) | $0 | $0 | $0 | $0 | $0 |
| Kahli Bottling | $94,035 | 4/2/2003 | $92,787 | $0 | $0 | ($23,377) | ($6,007) | $62,608 | ($19,681) | ($19,291) | $42,607 |
| Kalani International | $13,275 | 4/8/2003 | $17,597 | $0 | $0 | ($10,843) | $0 | $5,754 | ($2,464) | ($4,291) | $0 |
| Kaas Industries Corp | $5,922 | 4/3/2003 | $5,922 | $0 | $0 | $0 | $0 | $5,922 | ($1,163) | $0 | $5,759 |
| Kaplan and Zubrin | $2,256 | 4/4/2003 | $2,256 | $0 | $0 | $0 | $0 | $2,256 | ($1,134) | ($377) | $1,044 |
| Kedd Co | $36,253 | 4/4/2003 | $33,919 | $0 | ($1,181) | ($6,415) | $0 | $27,504 | ($5,600) | ($13,543) | $9,255 |
| Keweenaw Farms LLC | $15,124 | 4/7/2003 | $15,124 | $0 | $0 | ($11,964) | $0 | $1,980 | ($1,980) | $0 | $0 |
| K&y Chemical Co. | $4,223 | 4/7/2003 | $4,223 | $0 | $0 | $0 | $0 | $4,223 | $0 | $0 | $3,444 |

Fleming Companies, Inc. et al.
Reclamation Claim Summary by Claimant
November 21, 2003

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Resolved | [f] Product Not Received in Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Consumed by Demand Date | [j] Benefit of Receipts Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kaytee Roth Corp | $43,413 | 4/2/2003 | $43,413 | $0 | ($603) | ($73,194) | $0 | $17,627 | ($2,716) | ($9,346) | $5,555 |
| Koehler Co | $0 | 4/7/2003 | $503,837 | $0 | ($185,147) | ($73,159) | ($147,418) | $250,319 | ($116,519) | ($113,800) | $0 |
| Kellogg Co | $2,570,139 | 4/7/2003 | $2,570,139 | $0 | $0 | ($336,114) | ($7,350) | $1,765,716 | ($801,162) | ($805,594) | $0 |
| Kemps Foods LLC | $30,991 | 4/1/2003 | $7,361 | $0 | $0 | $0 | $0 | $7,361 | $0 | $0 | $0 |
| Kemp's Candy Co | $6,391 | 4/2/2003 | $35,941 | $0 | $0 | ($47,457) | $0 | $6,584 | ($3,346) | ($1,111) | $1,627 |
| KIK International Inc | $64,071 | 4/2/2003 | $64,071 | $0 | $0 | ($4,573) | ($2,255) | $54,241 | ($21,949) | ($560) | $31,765 |
| Kimberly-Clark Corp | $2,936,913 | 4/1/2003 | $2,411,352 | $0 | ($378,379) | ($240,101) | ($51,775) | $2,041,597 | ($921,759) | ($1,419,839) | $0 |
| Kimmel Sausage Co Inc | $145,611 | 4/9/2003 | $142,991 | $0 | $0 | ($60,557) | ($12,100) | $65,774 | ($57,190) | ($8,394) | $0 |
| KLN Enterprises Inc | $0 | 4/2/2003 | $45,361 | $0 | $0 | ($18,777) | $0 | $6,384 | ($2,555) | $0 | $4,029 |
| Kneaus Foods Inc | $125,474 | 4/7/2003 | $124,474 | $0 | $0 | ($87,465) | $0 | $36,010 | ($6,746) | ($29,263) | $0 |
| Kozy Shack Enterprises Inc | $0 | 4/14/2003 | $126,064 | $0 | $0 | ($114,387) | $0 | $11,678 | ($11,676) | $0 | $0 |
| Kurb Foods | $0 | 4/14/2003 | $26,976,100 | $0 | ($32,071,273) | ($5,230,276) | ($3,803,577) | $16,964,186 | ($24,075,674) | ($26,675,673) | $0 |
| Kyper Bakery Products Inc | $106,504 | 4/2/2003 | $106,504 | $0 | $0 | ($3,802) | ($15,419) | $87,284 | ($22,753) | ($5,185) | $59,346 |
| La Brea Bakery | $0 | 4/17/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| La Gloria Oil and Gas Co | $199,265 | 4/2/2003 | $199,265 | $0 | $0 | ($315,228) | $0 | $34,515 | ($3,101) | $0 | $25,414 |
| Lakeside Foods Inc | $7,073 | 4/22/2003 | $8,881 | $0 | ($929,521) | ($2,041) | $0 | $5,830 | ($31,072) | ($5,622) | $0 |
| Lakeview Farms Inc | $295,068 | 4/17/2003 | $240,808 | $0 | $0 | ($21,019) | $0 | $213,550 | ($46,647) | ($154,003) | $15,280 |
| Land O'Lakes Inc | $36,452 | 4/22/2003 | $41,226 | $0 | ($3,939) | ($12,007) | $0 | $10,624 | ($2,540) | ($347) | $7,737 |
| Lane Limited | $15,192 | 4/9/2003 | $15,192 | $0 | ($132) | ($30,469) | $0 | $2,885 | ($2,671) | $0 | $214 |
| Lashi Products Inc | $5,876 | 4/22/2003 | $5,876 | $0 | $0 | ($12,307) | $0 | $6,876 | ($6,671) | $0 | $3,670 |
| Latin Specialties Inc | $1,730 | 4/22/2003 | $1,730 | $0 | ($1,320) | ($410) | $0 | $0 | ($1,030) | ($2,120) | $0 |
| Lax-Thaun Inc | $5,850 | 4/8/2003 | $5,202 | $0 | ($364) | ($27,715) | ($7,126) | $0 | $0 | $0 | $0 |
| Leggett & Platt Inc | $24,649 | 4/2/2003 | $24,649 | $0 | $0 | $0 | $0 | $24,649 | ($13,411) | ($2,755) | $8,482 |
| Leidy's Inc | $30,021 | 4/12/2003 | $30,021 | $0 | $0 | ($16,346) | ($5,379) | $4,296 | $0 | ($104) | $4,192 |
| Lettieri's Inc | $79,639 | 4/12/2003 | $79,639 | $0 | $0 | ($394) | ($273,870) | $673 | ($241) | ($394) | $0 |
| Lewis Brothers Bakeries Inc | $121,960 | 4/9/2003 | $503,500 | $0 | ($7,629) | ($25,849) | ($52,039) | $25,972 | ($6,654) | ($6,654) | $212,269 |
| Life-Like Products | $63,500 | 4/22/2003 | $503,500 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

Page 12 of 23

79

A    279

## Fleming Companies, Inc., et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received In Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Conversed by Demand Date | [j] Statute of Pre-Petition Protection | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Liggett Water Brands Inc | $206,423 | 4/14/2003 | $206,423 | $0 | ($10,093) | ($89,197) | ($770) | $106,398 | ($16,803) | $0 | $89,348 |
| Lily Cups Inc | $274,728 | 4/8/2003 | $274,728 | $0 | ($31,759) | ($71,175) | $0 | $245,794 | ($59,525) | $0 | $186,269 |
| Lipak & Spragill USA, Inc | $54,529 | 4/15/2003 | $54,529 | $0 | $0 | ($27,729) | $0 | $26,799 | ($1,896) | ($24,903) | $0 |
| Linde Oil Co Inc | $103,757 | 4/11/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Link Snacks Inc | $375,158 | 4/11/2003 | $860,834 | $0 | ($49,448) | ($303,507) | ($255,089) | $231,330 | ($82,846) | ($4,772) | $143,572 |
| Lone Star Beverage Co | $46,293 | 4/10/2003 | $16,818 | $0 | $0 | $0 | $0 | $16,818 | ($16,818) | $0 | $0 |
| Lone Star Consolidated Foods Inc | $45,293 | 4/29/2003 | $45,909 | ($45,909) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| L'Oreal Paris | $129,770 | 4/7/2003 | $31,567 | $0 | ($11,213) | ($12,903) | $0 | $7,446 | ($1,231) | ($6,216) | $0 |
| Lucas World Inc | $5,271 | 4/7/2003 | $4,233 | $0 | ($4,233) | $0 | $0 | $0 | $0 | $0 | $0 |
| Lykis Meat Group (Smoyland) | $150,303 | 4/1/2003 | $150,303 | $0 | ($374,834) | $0 | $0 | $75,670 | ($34,956) | ($10,778) | $30,527 |
| M.A. Gedney Co | $16,672 | 4/4/2003 | $16,672 | $0 | $0 | ($27,764) | $0 | $8,908 | ($1,632) | ($6,182) | $1,294 |
| Madein International / CIT | $8,219 | 4/1/2003 | $8,219 | $0 | $0 | ($8,219) | $0 | $0 | $0 | $0 | $0 |
| Madix Store Fixtures | $30,935 | 4/1/2003 | $30,935 | $0 | ($22,541) | ($1,054) | $0 | $0 | $0 | $0 | $0 |
| Malo-O-Meal Co | $567,835 | 3/28/2003 | $567,835 | $0 | $0 | ($18,199) | ($57,870) | $491,782 | ($83,942) | ($107,004) | $300,336 |
| Martha Farms, Inc | $33,837 | 4/16/2003 | $33,837 | $0 | ($4,208) | ($19,274) | $0 | $10,535 | ($10,535) | $0 | $0 |
| Marigold Foods LLC | $1,622,138 | 4/1/2003 | $2,193,332 | $0 | ($4,102) | ($220,175) | ($1,217,151) | $751,036 | ($142,529) | ($166,670) | $441,833 |
| Majon Specialty Foods Inc | $8,866 | 4/21/2003 | $8,866 | ($8,866) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Market Express Trans Inc | $0 | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Marinbang, Inc | $179,966 | 4/6/2003 | $179,966 | $0 | $0 | ($128,555) | $0 | $50,411 | ($19,054) | ($31,357) | $0 |
| Maierfoods USA | $4,721,497 | 4/2/2003 | $4,721,497 | $0 | ($2,443,623) | ($390,525) | ($95,149) | $1,282,200 | ($339,027) | ($576,646) | $374,527 |
| Maui Pineapple Co Ltd | $24,742 | 4/7/2003 | $24,742 | $0 | ($7,563) | ($15,636) | $0 | $1,544 | ($442) | ($1,102) | $0 |
| Maxell Corporation of America | $3,609 | 4/2/2003 | $3,609 | $0 | ($810) | ($879) | $0 | $1,920 | ($504) | ($39) | $1,377 |
| Mayfair Sales Inc | $45,369 | 4/4/2003 | $45,669 | $0 | ($35,260) | $0 | $0 | $9,383 | ($1,788) | ($77) | $7,519 |
| MBM Corp | $127,895 | 4/4/2003 | $127,895 | $0 | ($13,513) | ($114,382) | $0 | $0 | $0 | $0 | $0 |
| McCain Foods USA In... | $28,013 | 4/2/2003 | $28,013 | $0 | ($9,629) | ($14,835) | $0 | $3,499 | ($1,201) | ($2,298) | $0 |
| McCormick & Co Inc. | $0 | 3/12/2003 | $1,026,221 | $0 | ($311,677) | ($383,240) | $0 | $610,579 | ($131,510) | ($489,069) | $0 |
| McIlhenny Co... | $19,108 | 4/1/2003 | $19,108 | $0 | $0 | ($2,471) | $0 | $16,638 | ($1,445) | ($15,193) | $0 |

## Fleming Companies, Inc. et.al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | Docketed Assertion [a] | Demand Date [b] | Electronic Assertion Detail [c] | Untimely Assertion Adjustment [d] | Purchase Order/Net Identified [e] | Product Not Received in Valid Period [f] | Drop Shipment Delivered [g] | Valid Receipts [h] | Receipts Consumed by Demand Date [i] | Start of Pre-Petition Application [j] | Calculated Reclamation Claim [k] |
|---|---|---|---|---|---|---|---|---|---|---|---|
| McKee Foods Corp | $84,704 | 4/2/2003 | $40,627 | $0 | $0 | ($226) | ($27,672) | $12,770 | ($1,048) | $0 | $0 |
| McKesson Corp | $0 | 4/22/2003 | $724,615 | $0 | $0 | $390 | ($724,799) | $46 | ($9) | $0 | $41 |
| Mead Johnson Nutritionals | $3,785,088 | 2/27/2003 | $3,521,450 | $0 | ($5,500) | ($1,442,255) | ($6,938) | $2,368,126 | ($336,844) | ($110,343) | $1,703,509 |
| Meadowgrass Corp | $250,277 | 4/2/2003 | $283,277 | $0 | ($250,277) | $0 | $0 | $0 | $0 | $0 | $0 |
| Mechanical Services Inc | $681,804 | 4/1/2003 | $174,002 | $0 | ($6,213) | ($75,760) | $0 | $85,029 | ($1,653) | ($2,407) | $84,956 |
| Medtech | $19,383 | 4/2/2003 | $17,348 | $0 | ($2,768) | ($7,724) | $0 | $6,855 | ($1,632) | ($2,167) | $3,057 |
| Menshelman Co | $15,226 | 4/2/2003 | $15,226 | $0 | $0 | ($7,094) | $0 | $8,142 | ($13,366) | ($6,776) | $0 |
| Meow Mix Co | $32,707 | 4/2/2003 | $35,638 | $0 | ($2,699) | ($12,408) | ($1,570) | $43,015 | ($60,076) | ($316,939) | $0 |
| Metro Beverage Co | $90,952 | 4/2/2003 | $59,525 | $0 | $0 | ($56,660) | $0 | $88,651 | ($230,702) | ($316,939) | $57,508 |
| Metro Access Inc | $11,088 | 4/2/2003 | $11,088 | $0 | $0 | ($39,001) | $0 | $1,997 | $260 | ($115) | $1,516 |
| Michael Foods Inc | $33,316 | 3/01/2003 | $39,755 | $0 | ($6,949) | ($5,467) | $0 | $25,614 | ($4,996) | ($11,808) | $10,210 |
| Mid Wisconsin Beverage Inc | $31,573 | 4/9/2003 | $31,573 | $0 | $0 | ($9,091) | ($2,317) | $22,257 | ($15,862) | $0 | $12,395 |
| Midstate Mills Inc | $24,320 | 4/11/2003 | $24,320 | $0 | ($24,320) | $0 | $0 | $0 | $0 | $0 | $0 |
| Midas Oil Co and Transport Inc | $455,497 | 4/17/2003 | $418,532 | $0 | $0 | $0 | $0 | $418,532 | ($418,532) | $0 | $0 |
| Milk Products LP | $0 | 4/22/2003 | $335,379 | $0 | $0 | ($383) | ($335,672) | $605 | ($255) | $0 | $350 |
| Millbrook Distribution Services | $1,578 | 4/8/2003 | $1,578 | $0 | $0 | $0 | ($1,578) | $0 | $0 | $0 | $0 |
| Millet Co | $13,116 | 4/11/2003 | $13,116 | $0 | $0 | $0 | $0 | $13,116 | ($6,100) | $0 | $7,015 |
| Minute Maid Co | $591,907 | 4/8/2003 | $591,907 | $0 | ($11,891) | ($167,757) | $0 | $382,259 | ($295,385) | $0 | $86,874 |
| Mink-USA Inc | $60,166 | 4/7/2003 | $60,166 | $0 | $0 | ($49,608) | $0 | $16,558 | ($2,123) | ($1,835) | $6,719 |
| Mitrel Bauran Logistics Inc | $49,010 | 4/22/2003 | $16,691 | $0 | $0 | $0 | ($3,388) | $13,102 | ($3,269) | $0 | $10,034 |
| Mitrel Foods Inc | $19,530 | 4/1/2003 | $19,530 | $0 | $0 | ($1,029) | $0 | $18,551 | ($1,517) | ($2,335) | $14,699 |
| Mohawk Foods | $58,292 | 3/31/2003 | $58,292 | $0 | $0 | ($44,463) | $0 | $13,830 | ($3,591) | $0 | $10,239 |
| Mowry Seafood International LLC | $123,572 | 4/1/2003 | $123,572 | $0 | $0 | ($12,247) | ($39,932) | $96,393 | ($7,560) | $0 | $88,833 |
| Morgan Foods Inc | $234,071 | 4/1/2003 | $135,705 | $0 | ($11,039) | ($25,286) | $0 | $110,420 | ($13,368) | ($1,729) | $95,322 |
| Morningstar Foods Inc | $909,533 | 4/1/2003 | $771,162 | $0 | ($31,039) | ($124,947) | $0 | $436,177 | ($118,375) | ($79,880) | $237,418 |
| Morton Salt | $0 | 4/1/2003 | $271,948 | $0 | ($11,865) | ($50,824) | $0 | $208,259 | ($54,851) | ($75,628) | $77,879 |
| Motts Inc | $0 | 4/2/2003 | $1,071,799 | $0 | ($12,837) | ($580,623) | $0 | $478,338 | ($105,048) | ($183,471) | $189,818 |

Page 14 of 23

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | Untimely Assertion Adjustment | Purchase Order Not Identified | Product Not In Valid Period | [e] Drop Shipment Deliveries | [f] Yield Receipts | [j] Receipts Consumed by Demand Date | [j] Sum of Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Morel Olympia Wafers Inc | $59,440 | 4/7/2003 | $41,010 | $0 | ($8,294) | ($14,085) | ($11,440) | $7,191 | ($971) | ($921) | $5,330 |
| Moyer & Sons Inc | $10,220 | 4/4/2003 | $10,220 | $0 | $0 | $0 | $0 | $10,220 | ($4,756) | ($91) | $5,376 |
| Mrs Grey's Kitchen Inc | $121,773 | 4/2/2003 | $120,446 | $0 | ($6,659) | ($80,700) | $31,467 | $21,459 | ($3,836) | ($549) | $27,079 |
| Mrs Grissoms Salads Inc | $0 | 4/5/2003 | $10,675 | $0 | ($10,781) | ($9,570) | ($206,170) | $3,790 | ($3,720) | $0 | $0 |
| Mrs Smith's Bakeries Inc | $0 | 4/1/2003 | $224,673 | ($184,101) | ($10,594) | ($25,216) | ($211,566) | $183,681 | ($36,011) | ($87,144) | $60,525 |
| Mucol International Marketing Inc | $159,297 | 4/21/2003 | $184,101 | $0 | $0 | $0 | $0 | $74,356 | ($216,523) | ($53,833) | $0 |
| Musco Family Olive Co | $74,356 | 4/8/2003 | $73,356 | $0 | $0 | $0 | $0 | $74,356 | $0 | $0 | $0 |
| NACCO Materials Handling Group Inc | $17,733 | 4/7/2003 | $17,733 | $0 | ($17,733) | $0 | $0 | $0 | $0 | $0 | $0 |
| National Dairy | $0 | 4/2/2003 | $0 | $0 | $0 | $0 | $1 | $0 | $0 | $0 | $0 |
| NBX Corp | $5,992 | 4/4/2003 | $5,520 | $0 | $0 | $0 | ($3,520) | $29,859 | ($5,833) | ($25,666) | $0 |
| Nestle Ice Cream Co LLC | $141,656 | 4/3/2003 | $141,604 | $0 | ($3,267) | ($50,079) | ($58,699) | $29,859 | ($5,833) | ($25,666) | $0 |
| Nestle USA | $7,643,147 | 3/61/2003 | $5,276,531 | $0 | ($597,654) | ($3,167,360) | ($87,997) | $4,533,529 | ($469,759) | ($2,751,521) | $702,248 |
| Nestle Waters North America | $602,970 | 4/7/2003 | $602,970 | $0 | ($7,148) | ($31,719) | ($16,394) | $547,709 | ($102,256) | ($387,453) | $0 |
| New World Pasta | $0 | 4/1/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| New York Frozen Foods | $93,917 | 4/1/2003 | $93,917 | $0 | $0 | ($8,528) | $0 | $85,389 | ($15,760) | ($13,219) | $56,410 |
| Niña's Foods USA Co Inc | $132,206 | 4/8/2003 | $132,206 | $0 | $0 | ($73,507) | ($1,607) | $57,173 | ($24,234) | ($24,834) | $8,034 |
| Nomura & Co Inc | $8,842 | 4/2/2003 | $8,842 | $0 | $0 | ($8,843) | $0 | $0 | $0 | $0 | $0 |
| Norpit Food Co Inc | $125,163 | 4/7/2003 | $120,825 | $0 | ($10,594) | ($3,712) | $0 | $106,119 | ($56,751) | ($39,472) | $9,895 |
| Northland Cranberries Inc | $15,285 | 4/8/2003 | $15,285 | $0 | $0 | $0 | $0 | $15,285 | ($3,004) | ($12,281) | $0 |
| Novartis Consumer Health Inc | $259,342 | 4/1/2003 | $259,282 | $0 | ($34,773) | ($88,602) | ($2,831) | $113,526 | ($21,829) | ($87,697) | $0 |
| NuCal Foods Inc | $87,215 | 4/1/2003 | $89,590 | $0 | $0 | ($15,905) | ($73,783) | $8,692 | ($3,013) | ($1,232) | $4,398 |
| Nutek Foods Inc | $8,692 | 4/1/2003 | $8,692 | $0 | $0 | ($1,073) | $0 | $8,692 | $0 | $0 | $0 |
| NutraMax | $74,520 | 4/22/2003 | $1,073 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Olverto Sausage Co | $48,537 | 4/2/2003 | $138,040 | $0 | ($11,852) | ($16,591) | $0 | $50,092 | ($9,666) | ($339) | $39,836 |
| Ocean Beauty Seafoods Inc | $167,761 | 4/2/2003 | $167,761 | $0 | $0 | ($154,200) | $0 | $14,561 | ($7,361) | ($7,201) | $0 |
| Osborn Transvision Pride Sausage Inc | $84,619 | 4/1/2003 | $95,806 | $0 | ($54,685) | ($6,177) | $0 | $33,943 | ($11,520) | ($24,016) | $337 |
| Old House Foods Inc | $119,674 | 4/22/2003 | $132,718 | $0 | $0 | ($3,099) | ($16,708) | $107,911 | ($67,000) | ($602) | $40,159 |

Page 15 of 23

82

A  282

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Declared Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received In Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Claimed by Demand Date | [j] Short of Pre-petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Old Orchard Brands LLC | $165,814 | 2/28/2003 | $189,373 | $0 | $0 | ($18,848) | ($6,050) | $144,974 | ($22,977) | ($50,151) | $64,845 |
| Old World Industries Inc | $13,288 | 4/1/2003 | $13,288 | $0 | $0 | $0 | $0 | $13,288 | $0 | $0 | $13,288 |
| Or-Cor | $110,467 | 4/1/2003 | $110,487 | $0 | $0 | ($6,170) | $0 | $104,297 | ($20,715) | ($33,249) | $42,334 |
| Queen Sylvania | $10,393 | 4/1/2003 | $10,393 | $0 | $0 | ($5,618) | $0 | $4,775 | ($357) | ($4,178) | $0 |
| Otis Spunkmeyer Inc | $37,460 | 4/17/2003 | $73,332 | $0 | ($23,120) | ($34,150) | ($3,012) | $10,729 | ($21) | $19,708 | $19,708 |
| Owens Country Sausage Inc | $40,676 | 4/5/2003 | $40,576 | $0 | ($4,796) | ($5,988) | ($5,355) | $21,556 | ($15,199) | ($5,987) | $179 |
| P & C Pacific Bakeries Inc | $2,994 | 4/7/2003 | $2,994 | $0 | $0 | $0 | $0 | $2,994 | ($1,087) | $0 | $1,997 |
| Paco Dairy Foods Co | $1,061,442 | 4/22/2003 | $1,049,381 | $0 | ($4,132) | ($113,918) | $0 | $931,331 | ($249,760) | ($57,019) | $681,567 |
| Pacific Coast Producers | $107,293 | 4/22/2003 | $407,592 | $0 | ($26,585) | ($156,817) | ($264,355) | $264,355 | ($78,616) | ($6,009) | $189,228 |
| Pacify Corp | $559,342 | 4/2/2003 | $559,342 | $0 | $0 | ($281,103) | $0 | $278,239 | ($72,103) | ($188,259) | $17,184 |
| Pace-O-Gold Baking Co | $0 | 4/2/2003 | $73,337 | $0 | ($3,697) | ($30,916) | ($17,357) | $21,795 | ($6,909) | ($3,357) | $11,536 |
| Paramount Farms Inc | $43,592 | 4/2/2003 | $35,809 | $0 | $0 | $0 | ($10,119) | $6,740 | ($735) | $6,005 | $6,005 |
| Parmon Lubriants Corp | $0 | 3/29/2003 | $36,839 | $0 | ($13,792) | ($80,618) | $0 | $34,300 | ($23,628) | ($9,420) | $14,767 |
| Pasco Beverage Group LLC | $133,800 | 4/10/2003 | $133,800 | $0 | $0 | ($231,103) | $0 | $120,739 | ($18,638) | ($39,426) | $1,455 |
| Pathlok Cristolp Inc | $135,190 | 4/22/2003 | $105,680 | $0 | $0 | ($38,377) | $0 | $71,302 | ($37,872) | $0 | $95,410 |
| Peak Foods LLC | $14,872 | 4/1/2003 | $14,872 | $0 | $0 | ($6,381) | $0 | $11,491 | $0 | ($11,491) | $0 |
| Pearson Candy Co | $26,356 | 4/7/2003 | $26,580 | $0 | $0 | ($21,146) | ($5,404) | $0 | $0 | $0 | $0 |
| Peerless Coffee | $34,888 | 4/17/2003 | $96,888 | $0 | ($96,388) | $0 | $0 | $0 | $0 | $0 | $0 |
| Pegasus International Inc | $35,039 | 4/4/2003 | $66,105 | $0 | $0 | ($17,929) | $0 | $48,177 | ($7,722) | ($6,846) | $33,609 |
| Pennzoil/Quaker State Company | $59,653 | 3/31/2003 | $56,459 | $0 | ($1,316) | ($30,850) | $0 | $24,093 | ($5,210) | ($19,863) | $0 |
| Pepperidge Farm Inc | $336,123 | 4/1/2003 | $119,128 | $0 | $0 | $0 | ($119,128) | $0 | $0 | $0 | $0 |
| Pepsi Cola Company | $238,591 | 4/1/2003 | $238,591 | $0 | ($31,284) | $0 | ($4,323) | $232,984 | ($30,034) | ($10,383) | $192,555 |
| Perrigo | $43,978 | 4/7/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| PetroChem Transport Inc | $4,643,655 | 4/1/2003 | $1,400,487 | $0 | $0 | ($310,732) | ($326,070) | $1,355,611 | ($124,932) | ($544,537) | $685,943 |
| Pfizer Consumer Group | $14,073 | 4/12/2003 | $27,242 | $0 | ($3,272) | ($9,878) | $0 | $8,940 | ($164) | ($6,710) | $2,946 |
| Pharmacia Corporation | $315,928 | 4/1/2003 | $315,928 | $0 | ($8,423) | ($8,444) | $0 | $7,484 | ($1,199) | ($6,289) | $0 |
| Pharmavite LLC | | 4/4/2003 | | | | | | | | | |

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Declared Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received in Valid Period | [g] Drop Shipment/ Deliveries | [h] Valid Receipts | [i] Receipts Commenced by Demand Date | [j] Sales of Product/ Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pharr Foods Inc | $194,801 | 4/2/2003 | $211,658 | $0 | $0 | ($58,152) | $0 | $152,506 | ($122,691) | $0 | $130,216 |
| PB/NTR Foods USA | $33,358 | 4/2/2003 | $45,544 | $0 | $0 | ($19,135) | $0 | $25,409 | ($3,920) | $0 | $21,490 |
| Shigeta's Pella Corp | $492,838 | 4/1/2003 | $497,029 | $0 | ($9,909) | ($158,557) | ($124,026) | $311,472 | ($122,492) | ($21,621) | $167,402 |
| Pilot Corporation of America | $5,164 | 4/2/2003 | $5,164 | $0 | $0 | ($2,074) | $0 | $3,090 | ($502) | ($878) | $1,566 |
| Pinnacle Foods Corp | $964,318 | 4/1/2003 | $791,482 | $0 | $0 | ($220,932) | ($2,951) | $567,559 | ($120,125) | ($247,644) | $0 |
| Placid Refining Co LLC | $57,831 | 4/2/2003 | $57,831 | $0 | $0 | $0 | $0 | $57,831 | ($57,831) | $0 | $0 |
| Playtex Products Inc | $390,577 | 4/1/2003 | $396,267 | $0 | ($11,068) | ($116,799) | $0 | $468,400 | ($69,248) | ($159,933) | $139,175 |
| Porky Products Inc | $28,443 | 4/2/2003 | $28,445 | $0 | $0 | ($28,445) | $0 | $0 | $0 | $0 | $0 |
| Portina Reg Division of HJ Heinz Co LP | $33,664 | 4/2/2003 | $48,161 | $0 | ($52,831) | ($12,637) | $0 | $31,523 | ($1,516) | $0 | $30,007 |
| Potandon Produce LLC | $287,272 | 4/2/2003 | $289,818 | ($259,182) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Potomac Farms Dairy | $0 | 4/15/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Prairie Farms Dairy Inc | $448,325 | 4/4/2003 | $448,325 | $0 | $0 | ($246,064) | $0 | $202,262 | ($97,166) | ($51,300) | $53,786 |
| Premium Waters Inc | $141,389 | 4/12/2003 | $390,056 | $0 | ($37,491) | ($234,418) | ($87,105) | $65,638 | ($169,947) | ($1,075) | $0 |
| Presilats Brands International | $87,729 | 3/8/2003 | $87,729 | $0 | $0 | ($21,901) | $0 | $65,828 | ($31,991) | ($5,365) | $28,454 |
| Procter & Gamble Distributing Co | $9,357,970 | 3/12/2003 | $8,614,215 | $0 | ($310,697) | ($1,640,695) | ($717,972) | $6,245,550 | ($1,699,665) | ($2,503,190) | $2,042,695 |
| Procter & Gamble Sus | $162,659 | 4/4/2003 | $172,059 | $0 | ($8,120) | ($23,932) | $0 | $139,950 | ($51,002) | ($57,028) | $31,020 |
| Profile Foods Inc | $36,495 | 4/4/2003 | $49,986 | $0 | ($33,994) | ($1,578) | $0 | $14,407 | ($7,338) | ($7,050) | $18,766 |
| Purity Wholesale Grocers Inc | $81,907 | 4/2/2003 | $81,909 | $0 | ($13,999) | ($13,910) | $0 | $54,000 | ($8,203) | ($8,948) | $31,020 |
| Quaker Oats Company | $6,949,276 | 4/4/2003 | $6,949,276 | $0 | ($313,205) | ($562,288) | ($270,820) | $6,002,963 | ($2,158,004) | $0 | $3,844,959 |
| Quality Bakery | $8,265 | 4/1/2003 | $8,265 | $0 | $0 | ($8,265) | ($5,607) | $29,502 | ($8,999) | ($11,594) | $8,909 |
| Quincie Foods | $80,163 | 4/2/2003 | $80,163 | $0 | $0 | ($45,693) | $0 | $829,509 | $0 | $0 | $0 |
| Rabcorp Holdings Inc | $1,316,195 | 3/31/2003 | $1,002,699 | $0 | ($62,658) | ($170,537) | $0 | $823,509 | ($207,341) | $0 | $621,162 |
| Radiance Specialty Co | $8,873 | 4/25/2003 | $8,832 | $0 | $0 | ($9,862) | $0 | $29,502 | $0 | $0 | $9,809 |
| Ranir Corp | $48,165 | 4/7/2003 | $48,165 | $0 | $0 | ($48,165) | $0 | $0 | $0 | $0 | $0 |
| Reckas Foods Inc | $27,559 | 4/8/2003 | $27,559 | $0 | $0 | ($3,544) | ($137) | $23,878 | ($4,546) | $0 | $19,332 |
| RC Industries Inc | $30,217 | 4/8/2003 | $30,217 | $0 | ($11,173) | $0 | $0 | $19,044 | ($8,516) | $0 | $10,528 |
| Reemus Foods | $72,184 | 4/12/2003 | $42,184 | $0 | $0 | ($5,310) | $0 | $36,374 | ($5,513) | ($7,218) | $23,643 |

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
### November 21, 2003

| Creditor Name | [a] Docketed Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received in Valid Period | [g] Drop Shipment/ Deliveries | [h] Valid Receipts | [i] Receipts Consumed by Demand Date | [j] Start of Pre-Petition Deduction | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Rockin Reecakes Inc | $1,200,152 | 3/31/2003 | $1,144,195 | $0 | ($303,813) | ($457,475) | ($477) | $616,234 | ($70,074) | ($423,757) | $122,423 |
| Red Gold | $335,643 | 4/2/2003 | $335,643 | $0 | ($16,520) | ($202,778) | ($16,505) | $293,430 | ($505,505) | ($364,656) | $178,206 |
| Redingfitz, Inc. | $148,138 | 4/2/2003 | $148,138 | $0 | $0 | ($148,138) | ($4,560) | $0 | $0 | $0 | $0 |
| Regent Products Corp | $7,379 | 4/9/2003 | $7,379 | $0 | $0 | ($3,032) | $0 | $160,703 | ($358,469) | ($13,039) | $94,415 |
| Reily Foods Co | $194,608 | 4/2/2003 | $194,608 | $0 | ($14,439) | ($3,085) | $0 | $6,130 | ($1,009) | $161 | $4,939 |
| Relchint FoodService Inc | $38,351 | 4/2/2003 | $39,570 | $0 | $0 | ($18,960) | $0 | $5,553 | ($858) | ($544) | $4,217 |
| Reichmuth Corp | $17,394 | 4/12/2003 | $15,167 | $0 | $0 | ($9,614) | $0 | $3,711 | ($1,212) | $101 | $2,499 |
| Republic Tobacco | $62,046 | 4/4/2003 | $62,046 | $0 | ($347,411) | ($310,914) | $0 | $98,233 | ($294,957) | ($3,267) | $0 |
| Reser's Fine Foods Inc | $228,271 | 4/4/2003 | $269,460 | $0 | ($310,116) | ($31,616) | ($70,617) | $0 | $0 | $0 | $0 |
| ReTrust Inc | $56,709 | 4/17/2003 | $159,441 | $0 | ($159,441) | $0 | $0 | $0 | $0 | $0 | $0 |
| Revlon | $2,205 | 4/7/2003 | $2,205 | $0 | ($1,431) | ($774) | $0 | $0 | $0 | $0 | $0 |
| Rexall Sundown Inc. | $25,127 | 4/4/2003 | $25,127 | $0 | ($1,687) | ($3,448) | $0 | $2,876 | ($310) | ($2,461) | $19,303 |
| Rhodes International Inc | $2,876 | 4/2/2003 | $2,876 | $0 | $0 | ($44,016) | $0 | $80,481 | ($16,530) | ($354,410) | $0 |
| Rich Products Corp | $124,447 | 4/2/2003 | $124,447 | $0 | $0 | ($303,287) | $0 | $866,963 | ($333,471) | $0 | $535,991 |
| Rich-SeaPak Corp | $1,086,054 | 3/28/2003 | $1,102,608 | $0 | ($310,859) | ($15,432) | $0 | $6,659 | ($799) | ($5,860) | $0 |
| Ricola USA Inc | $22,091 | 3/31/2003 | $22,991 | $0 | $0 | ($306) | $0 | $11,969 | ($33,469) | ($8,561) | $0 |
| RJ Reynolds Tobacco Co | $10,429 | 4/4/2003 | $12,276 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Roaring Spring Water | $39,354,171 | 4/1/2003 | $0 | $0 | ($2,102) | ($10,292) | $0 | $14,564 | ($310,147) | ($31,879) | $2,537 |
| Rolling Pin Manufacturing Corp | $2,132 | 4/22/2003 | $2,132 | $0 | $0 | ($24,865) | $0 | $0 | $0 | $0 | $0 |
| Ricco Packing Co Inc | $24,856 | 4/7/2003 | $24,856 | $0 | $0 | ($24,865) | ($810) | $14,564 | ($731) | $0 | $2,519 |
| Rodun Food Products Inc | $0 | 4/1/2003 | $25,681 | $0 | $0 | ($16,145) | $0 | $3,010 | $0 | $0 | $0 |
| Redmann Benson & Hedges Inc | $19,159 | 4/3/2003 | $19,159 | $0 | ($3,369) | ($103,369) | $1 | $2,559,216 | ($931,777) | $0 | $1,717,439 |
| Royal Foods Inc | $2,664,953 | 4/9/2003 | $2,664,953 | $0 | $0 | ($70,460) | ($312,676) | $54,948 | ($311,382) | $0 | $23,566 |
| Royal Oak Sales Inc | $0 | 4/10/2003 | $338,110 | $0 | $0 | ($192,833) | $0 | $341,776 | ($115,316) | $0 | $206,461 |
| RS Tahn Farm | $3,570 | 4/21/2003 | $534,005 | $0 | $0 | ($2,138) | $0 | $210 | ($210) | $0 | $0 |
| R&D Coffee Inc | $22,427 | 4/22/2003 | $22,427 | $0 | ($11,996) | ($2,415) | $0 | $8,015 | $0 | $0 | $5,015 |

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Declared Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received in Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Covered by Demand Date | [j] Benefit of Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| S&K Sales Co. | $31,608 | 4/1/2003 | $32,008 | $0 | ($32,700) | $0 | $0 | $0 | $0 | $0 | $0 |
| Santa Fe Natural Tobacco Company Inc | $0 | 4/1/2003 | $308,556 | $0 | ($160,590) | ($70,270) | $0 | $277,232 | ($182,938) | $0 | $194,344 |
| San Luis Bakery Group Inc | $2,492,923 | 4/2/2003 | $2,492,929 | $0 | ($93,328) | ($299,859) | $0 | $374,755 | ($282,716) | ($68,257) | $723,722 |
| San Luis Corp | $5,638,824 | 4/10/2003 | $3,638,824 | $0 | ($384,355) | ($1,059,060) | ($461,895) | $1,722,408 | ($257,671) | ($512,182) | $852,734 |
| Sargento Foods Inc | $144,628 | 3/31/2003 | $145,076 | $0 | $0 | ($25,023) | $0 | $121,954 | ($35,507) | ($50,759) | $34,932 |
| SC Johnson & Son Inc | $1,705,966 | 4/2/2003 | $1,705,966 | $0 | ($4,135) | ($1,267,596) | $0 | $437,212 | ($110,141) | ($328,071) | $0 |
| Schärr Co. | $31,031 | 4/22/2003 | $31,031 | $0 | ($31,031) | $0 | $0 | $0 | $0 | $0 | $0 |
| Schering-Plough Healthcare Products | $7,211 | 4/22/2003 | $11,271 | $0 | ($7,711) | ($1,598) | ($3,550) | $0 | $0 | $0 | $0 |
| Schreiber Foods Inc | $124,235 | 4/2/2003 | $124,235 | $0 | $0 | ($17,527) | ($372,404) | $132,698 | ($29,982) | ($5,248) | $83,457 |
| Schumer Consumer Brands | $163,764 | 4/1/2003 | $163,764 | $0 | $0 | ($48,807) | $0 | $13,733 | ($3,064) | ($10,660) | $0 |
| Schwan's Food Service Inc | $151,152 | 4/2/2003 | $164,079 | $0 | ($32,233) | ($48,807) | $0 | $113,944 | ($59,159) | $0 | $62,840 |
| Scripto | $2,018 | 4/2/2003 | $2,018 | $0 | $0 | ($2,018) | $0 | $0 | $0 | $0 | $0 |
| Seaboard Farms Inc | $32,787 | 4/7/2003 | $39,037 | $0 | $0 | ($19,228) | $0 | $79,810 | ($49,607) | $0 | $30,172 |
| Seneca Foods Corp | $142,803 | 4/2/2003 | $156,926 | $0 | $0 | ($800) | ($35,439) | $120,688 | ($21,906) | ($3,137) | $95,643 |
| Sequoia Beverage Co | $0 | 4/7/2003 | $105,276 | $0 | $0 | $0 | ($106,276) | $0 | $0 | $0 | $0 |
| Seville Imports Inc | $40,882 | 4/4/2003 | $41,148 | $0 | $0 | ($12,249) | $0 | $28,725 | ($4,994) | $0 | $23,731 |
| SBW Fitel | $13,350 | 4/2/2003 | $89,591 | $0 | $0 | ($54,159) | $0 | $24,972 | ($7,307) | ($2,260) | $15,215 |
| Shamrock Foods Co | $32,378 | 4/11/2003 | $32,376 | $0 | $0 | $0 | ($32,378) | $0 | $0 | $0 | $0 |
| Shannon Milling Company | $45,408 | 4/17/2003 | $45,408 | $0 | $0 | ($28,734) | ($16,674) | $0 | $0 | $0 | $0 |
| Signature Brands LLC | $0 | 4/17/2003 | $73,497 | $0 | $0 | ($9,398) | $0 | $60,483 | ($13,221) | ($50,338) | $925 |
| Signature Fruit Co. LLC | $175,585 | 4/1/2003 | $164,132 | $0 | $0 | ($52,633) | ($30,918) | $80,552 | ($10,895) | ($28,826) | $40,830 |
| Silver Springs Citrus Inc | $65,858 | 4/2/2003 | $65,858 | $0 | $0 | ($15,598) | $0 | $49,859 | ($12,428) | ($994) | $36,437 |
| Simek's | $32,603 | 4/1/2003 | $32,683 | $0 | $0 | $0 | $0 | $32,683 | ($4,445) | ($15,300) | $8,938 |
| Simmons Foods Inc | $10,824 | 4/2/2003 | $10,824 | $0 | $0 | ($10,824) | $0 | $0 | $0 | $0 | $0 |
| Sioux Honey Association | $29,711 | 6/12/2003 | $29,713 | ($29,713) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Silver Steinhardt Homemade Rolls | $54,657 | 4/11/2003 | $54,867 | $0 | ($5,160) | ($26,385) | $0 | $23,322 | ($7,144) | $0 | $16,177 |
| Skyjack Metals Inc | $0 | 4/1/2003 | $15,496 | $0 | ($8,037) | ($2,412) | $0 | $5,056 | ($4,741) | ($359) | $0 |

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| [a] Creditor Name | Declared Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order/Not Identified | [f] Product Not Received in Valid Period | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Consumed by Demand Date | [j] Sum'f of Valid Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Silva-Fast Foods Co | $566,609 | 4/12/2003 | $595,394 | $0 | $0 | ($48,363) | ($5,410) | $541,584 | ($129,246) | ($284,116) | $4,739 |
| Smithfield Deli Group | $6,198 | 4/12/2003 | $6,198 | $0 | $0 | $0 | $0 | $6,198 | ($1,453) | ($90,092) | $33,937 |
| Smithfield Packing Co | $240,288 | 4/12/2003 | $233,674 | $0 | $0 | ($22,777) | ($11,940) | $197,860 | ($975,851) | ($33,469) | $0 |
| Snackworks LLC | $113,978 | 4/9/2003 | $113,978 | $0 | ($84,214) | ($29,660) | $0 | $0 | $0 | $0 | $0 |
| Sola Corp Co | $108,931 | 4/12/2003 | $100,256 | $0 | ($5,520) | ($35,308) | $0 | $72,428 | ($312,340) | ($38,951) | $21,234 |
| Sorrento Lactalis Inc | $71,315 | 4/22/2003 | $74,137 | ($52,380) | $0 | ($62,339) | $0 | $11,798 | ($621) | ($10,278) | $899 |
| South Win Ltd | $4,284 | 4/22/2003 | $4,284 | $0 | $0 | $0 | $0 | $0 | $0 | $839 | $0 |
| Southern Counties Oil Co | $365,182 | 4/22/2003 | $365,182 | $0 | $0 | ($170,869) | $0 | $365,182 | ($365,182) | $0 | $0 |
| SPARROS Agricultural Corp | $104,814 | 4/2/2003 | $243,991 | $0 | ($939) | ($13,307) | $0 | $72,484 | ($71,218) | ($1,265) | $2,706 |
| Specialty Bakers Inc | $34,230 | 4/12/2003 | $318,673 | $0 | $0 | ($12,167) | $0 | $4,766 | ($1,452) | ($208) | $0 |
| Specialty Brands Inc | $34,230 | 4/12/2003 | $34,230 | $0 | $0 | ($12,167) | $0 | $22,103 | ($1,003) | ($19,094) | $43,003 |
| Specialty Meat Group Inc | $393,746 | 4/9/2003 | $407,431 | $0 | ($354,016) | ($248,865) | ($8,861) | $166,510 | ($67,417) | $0 | $240,630 |
| Specialty Store Services Inc | $0 | 4/9/2003 | $11,651 | $0 | $0 | ($2,771) | $0 | $0 | $0 | $0 | $6,152 |
| Spencers Brands | $462,838 | 4/2/2003 | $462,838 | $0 | ($318,484) | ($128,271) | $0 | $316,083 | ($275,653) | $0 | $0 |
| Spic and Span Co | $24,316 | 4/2/2003 | $24,317 | $0 | ($5,693) | ($14,597) | $7 | $3,035 | ($1,400) | ($1,484) | $0 |
| Spring Glen Fresh Foods Inc | $7,205 | 4/4/2003 | $7,205 | $0 | ($342) | $0 | ($7,205) | $0 | $0 | $0 | $0 |
| Starsdix, Inc Inc | $4,021 | 4/9/2003 | $7,428 | $0 | ($55,080) | $0 | ($7,085) | $0 | $0 | $26,238 | $0 |
| Storck USA LP | $705,516 | 4/2/2003 | $165,723 | $0 | ($158,711) | $0 | ($7,205) | $65,565 | ($9,049) | ($1,579) | $26,238 |
| Stremicks Penny/Synah Dinah Bakers | $0 | 4/12/2003 | $226,533 | $0 | ($13,405) | ($15,037) | $0 | $35,505 | ($12,127) | ($248) | $3,044 |
| Sunbeam Products Inc | $29,718 | 4/1/2003 | $29,718 | $0 | ($4,210) | ($11,284) | ($289,483) | $14,181 | ($3,784) | ($5,550) | $4,907 |
| Sun-Maid Growers of California | $83,985 | 4/2/2003 | $83,045 | $0 | $0 | ($28,290) | ($43) | $54,749 | ($14,378) | ($13,469) | $26,903 |
| Sunset Farm Foods Inc | $5,517 | 4/14/2003 | $5,517 | $0 | $0 | ($3,517) | $0 | $0 | $0 | $0 | $0 |
| Sunshine Milk Inc | $226,703 | 4/1/2003 | $274,608 | $0 | $0 | ($145,312) | $0 | $129,296 | ($28,675) | ($6,020) | $94,597 |
| Sunsweet Growers Inc | $239,298 | 4/1/2003 | $239,298 | $0 | $0 | ($121,808) | $0 | $117,490 | ($23,500) | ($9,504) | $84,483 |
| Superior Dairy Inc | $5,471 | 4/9/2003 | $5,471 | $0 | $0 | $0 | $0 | $5,471 | ($3,156) | ($2,315) | $0 |
| Sure Shot Trucking | $4,100 | 4/9/2003 | $4,100 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Swedish Match North America Inc | $375,365 | 4/2/2003 | $318,703 | $0 | ($7,742) | $0 | ($510,946) | $319,409 | ($33,207) | ($93,385) | $135,816 |

Page 20 of 23

87

A   287

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Deducted Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Unlikely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received in Valid Period | [g] Drop Shipment Deliveries | [h] Yield Receipts | [i] Receipts Construed by Demand Date | [j] Result of Pre-Petition Deduction | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sweetheart | $463,852 | 4/22/2003 | $463,333 | $0 | ($19,567) | ($240,298) | ($39,235) | $168,035 | ($3,240) | $0 | $144,510 |
| Swift & Co | $3,440,368 | 3/31/2003 | $3,440,368 | $0 | ($80,272) | ($228,440) | ($1,291,035) | $1,310,630 | ($159,572) | ($159,765) | $751,480 |
| Swiss Coca-Cola USA | $41,588 | 4/9/2003 | $41,588 | $0 | ($6,543) | $0 | ($41,388) | $0 | $0 | $0 | $0 |
| Swisher International Inc | $439,306 | 4/1/2003 | $439,306 | $0 | ($88,943) | ($62,357) | ($99,660) | $259,107 | ($19,306) | $0 | $228,007 |
| Switalski Packing Co | $16,140 | 8/8/2003 | $16,140 | ($16,140) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Sysco A Division of Fikness Brands Inc | $43,899 | 4/9/2003 | $43,899 | $0 | $0 | $0 | ($43,899) | $40,899 | ($24,128) | ($316) | $19,455 |
| Sysco Food Services of Modesto Inc | $7,677 | 4/7/2003 | $7,677 | $0 | ($4,700) | $0 | ($7,677) | $0 | $0 | $0 | $0 |
| T McLarnil Company | $439,463 | 4/1/2003 | $335,839 | $0 | $0 | ($320,860) | ($42,138) | $109,621 | ($313,507) | ($26,453) | $64,538 |
| Teasdale Research Laboratories Inc | $52,193 | 4/15/2003 | $52,193 | $0 | $0 | ($1,850) | $0 | $50,103 | ($14,572) | ($35,531) | $0 |
| Telco Food Products Inc | $80,761 | 4/17/2003 | $80,761 | $0 | $0 | ($378,433) | $0 | $2,328 | ($1,711) | ($618) | $0 |
| The Bachman Co | $269 | 4/17/2003 | $269 | $0 | $0 | $0 | ($269) | $0 | $0 | $0 | $0 |
| The Fonda Group Inc | $1,224,791 | 4/2/2003 | $12,248 | $0 | $0 | ($9,093) | $3,255 | $3,255 | ($1,483) | ($1,772) | $0 |
| The Harvest Drug Group | $39,906 | 4/2/2003 | $2,543 | $0 | $0 | $0 | ($2,106) | $437 | ($659) | ($369) | $68 |
| Thermo Serv Aladdin | $5,937 | 4/4/2003 | $35,184 | $0 | ($12,680) | ($15,216) | ($36,590) | $3,304 | ($37) | ($491) | $2,776 |
| Thaia Inc | $172,423 | 6/24/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Topp'd Elmo Foods | $19,541 | 4/2/2003 | $19,541 | $0 | $0 | ($4,594) | ($14,948) | $0 | $0 | $0 | $0 |
| Toppo Associates LLC | $161,984 | 4/7/2003 | $161,984 | $0 | $0 | ($104,459) | $0 | $57,525 | ($13,480) | ($2,099) | $41,946 |
| Topp Mfg Co Inc | $3,085 | 4/2/2003 | $3,085 | $0 | $0 | $0 | $0 | $3,085 | ($484) | ($26) | $2,575 |
| Trailblazer Food Products | $1,672 | 4/2/2003 | $2,340 | $0 | ($1,671) | ($669) | $0 | $0 | $0 | $0 | $0 |
| TransOcean Product Services, Inc. | $126,175 | 4/3/2003 | $126,175 | $0 | $0 | $1 | $0 | $126,175 | ($126,175) | $0 | $0 |
| Travis Meats Inc | $1,378 | 4/3/2003 | $6,018 | $0 | ($5,679) | ($6,679) | $0 | $1,378 | ($639) | $2 | $739 |
| Tri Salsa Co | $104,106 | 4/2/2003 | $291,627 | $0 | ($351,903) | ($323,343) | $0 | $171,692 | ($323,677) | $0 | $146,596 |
| Trident Seafoods Corp | $197,994 | 4/9/2003 | $197,994 | $0 | $0 | ($117,780) | ($58,638) | $80,214 | ($325,012) | ($55,202) | $0 |
| Tri-Eagle Beverage | $15,991 | 4/2/2003 | $15,991 | $0 | $0 | $0 | ($15,991) | $0 | $0 | $0 | $0 |
| Trinidad Benham Corp | $276,444 | 4/4/2003 | $276,444 | $0 | ($31,386) | ($27,250) | $0 | $217,652 | ($355,990) | ($250) | $0 |
| Turner Holdings LLC dba | $181,455 | 4/12/2003 | $51,482 | $0 | $0 | $0 | ($31,482) | $51,482 | ($12,177) | $0 | $161,673 |
| Turner/Coliseum Dairy | | | | | | | | | | | $39,355 |
| Tuttle Wax Inc | $2,514 | 4/2/2003 | $1,450 | $0 | $0 | ($1,450) | $0 | $0 | $0 | $0 | $0 |

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | Docketed Assertion [a] | Demand Date [b] | Electronic Assertion Detail [c] | Untimely Assertion Adjustment [d] | Purchase Order Not Identified [e] | Product Not Received in Valid Period [f] | Drop Shipment Deliveries [g] | Valid Receipts [h] | Receipts Consumed by Demand Date [i] | Benefit of Pre-Petition Deductions [j] | Calculated Reclamation Claim [k] |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Twin City Poultry Company | $6,465 | 4/8/2003 | $6,465 | $0 | $0 | ($1,177) | ($2,145) | $3,140 | ($1,790) | $0 | $1,350 |
| Tyco Healthcare Retail Group Inc | $128,423 | 4/7/2003 | $128,423 | $0 | $0 | $0 | $0 | $128,423 | ($54,015) | ($31,601) | $42,807 |
| Tyson Foods Inc | $2,751,406 | 4/8/2003 | $8,605,191 | $0 | ($1,139,677) | ($1,420,311) | ($483,110) | $4,362,093 | ($778,500) | ($677,202) | $2,906,502 |
| Unilever Bestfoods North America | $4,412,247 | 4/7/2003 | $4,412,247 | $0 | ($3,700) | ($32,261,763) | ($246,044) | $4,101,741 | ($146,723) | ($478,772) | $275,608 |
| Unilever HPC | $1,507,335 | 4/7/2003 | $1,541,678 | $0 | ($355,247) | ($366,190) | ($356,606) | $593,294 | ($38,918) | ($539,201) | $23,882 |
| Unisa Foods | $49,896 | 4/4/2003 | $49,896 | $0 | $0 | ($13,162) | ($3,290) | $32,264 | ($3,633) | ($464) | $20,603 |
| Unisource Worldwide Inc | $0 | 4/2/2003 | $41,903 | $0 | $0 | $0 | ($1,100) | $24,036 | ($5,594) | ($5,538) | $11,801 |
| United Plastics | $21,118 | 4/2/2003 | $21,118 | $0 | $0 | $0 | $0 | $21,118 | ($3,680) | ($5,194) | $33,888 |
| United Salt Corp | $14,169 | 4/2/2003 | $14,169 | $0 | $0 | ($8,675) | ($1,100) | $5,494 | ($1,412) | ($194) | $3,888 |
| United Sugar Corp | $490,507 | 4/2/2003 | $490,507 | $0 | ($32,162) | ($139,550) | ($14,770) | $317,047 | ($124,412) | ($310,529) | $182,165 |
| Uno Foods Inc | $5,636 | 4/10/2003 | $10,324 | $0 | $0 | ($4,688) | $0 | $5,474 | ($2,639) | $539 | $539 |
| US Acrylic Inc | $20,634 | 4/10/2003 | $64,499 | ($64,499) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| US Foodservice | $123,379 | 4/2/2003 | $124,665 | $0 | ($319,403) | ($31,637) | ($35,600) | $60,339 | ($262,282) | ($355,118) | $2,005,140 |
| US Smokeless Tobacco Brands Inc | $0 | 3/12/2003 | $3,562,533 | $0 | ($169,657) | ($353,583) | ($151,826) | $2,677,061 | ($971,921) | $0 | $0 |
| Valley Wide Beverage Co | $0 | 4/8/2003 | $72,562 | $0 | $0 | $0 | ($32,562) | $0 | $0 | $0 | $0 |
| Valor | $8,037 | 4/4/2003 | $20,160 | $0 | ($312,104) | $0 | $0 | $8,057 | ($1,549) | $0 | $6,507 |
| Valu Farms LLC | $0 | 4/4/2003 | $377,662 | $0 | ($56,971) | ($42,015) | ($337,062) | $0 | $0 | $0 | $0 |
| Verena Foods LLC | $347,369 | 4/2/2003 | $347,369 | $0 | $0 | $0 | ($46,467) | $251,916 | ($543,936) | ($5,936) | $194,673 |
| Veryfine Products Inc | $22,555 | 4/1/2003 | $22,005 | $0 | $0 | $0 | $22,005 | ($328) | $0 | $20,842 |
| Yestcom Retail Solutions | $226,414 | 4/2/2003 | $226,714 | $0 | $0 | ($785) | ($225,784) | $144 | ($323) | ($122) | $0 |
| Victory Wholesale Grocers | $24,223 | 4/10/2003 | $24,223 | $0 | $0 | $0 | $0 | $24,223 | ($13,199) | ($38,399) | $61,623 |
| Viking Coca-Cola Bottling Co | $3,993 | 4/10/2003 | $20,310 | $0 | $0 | ($11,763) | ($693) | $7,979 | ($1,567) | $0 | $5,512 |
| Vistar Corporation | $5,925 | 4/9/2003 | $5,925 | $0 | ($5,925) | $0 | $0 | $0 | $0 | $0 | $0 |
| Vogt Distributing | $2,925 | 4/9/2003 | $2,925 | $0 | ($2,925) | $0 | $0 | $0 | $0 | $0 | $0 |
| Wards Cove Packing Co | $9,574 | 4/2/2003 | $9,574 | $0 | $0 | $0 | $0 | $9,574 | ($3,289) | $0 | $0 |
| Wawa Distribution Inc | $5,959 | 4/2/2003 | $5,959 | $0 | ($109) | $0 | $0 | $5,959 | ($6,959) | $0 | $6,283 |
| Weaver Brothers Inc | $5,009 | 4/8/2003 | $5,009 | $0 | $0 | $0 | ($5,009) | $0 | $0 | $0 | $0 |

## Fleming Companies, Inc. et al.
## Reclamation Claim Summary by Claimant
## November 21, 2003

| Creditor Name | [a] Declared Assertion | [b] Demand Date | [c] Electronic Assertion Detail | [d] Untimely Assertion Adjustment | [e] Purchase Order Not Identified | [f] Product Not Received In Valid Trxfid | [g] Drop Shipment Deliveries | [h] Valid Receipts | [i] Receipts Consumed by Demand Date | [j] Relief Of Pre-Petition Deductions | [k] Calculated Reclamation Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Webb Foods Inc | $772,715 | 4/15/2003 | $440,521 | $0 | $0 | ($237,393) | $0 | $211,629 | ($122,370) | ($89,350) | $0 |
| Wells Dairy Inc | $397,410 | 4/29/2003 | $397,410 | $0 | ($4,139) | ($50,656) | ($163,367) | $359,294 | ($329,549) | ($59,602) | $50,143 |
| Wells Lamont Corp | $51,070 | 4/23/2003 | $8,948 | $0 | $0 | ($8,946) | $0 | $0 | $0 | $0 | $7 |
| Westbrook Fire Insurance Co | $0 | 4/22/2003 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Western Petroleum Co | $86,856 | 4/22/2003 | $43,428 | $0 | ($322,607) | ($124,452) | ($327,400) | $48,428 | ($43,428) | $0 | $0 |
| Western Sugar Cooperative | $493,072 | 4/22/2003 | $506,059 | $0 | $0 | ($153,905) | $0 | $315,704 | ($134,094) | ($3,795) | $179,611 |
| WestFarm Foods | $310,942 | 4/22/2003 | $310,942 | $0 | ($9,633) | $0 | $0 | $5,206 | ($24,607) | $0 | $0 |
| Westwind Resources Inc | $6,528 | 4/4/2003 | $6,528 | $0 | $0 | $0 | $0 | $6,528 | ($1,322) | $0 | $5,206 |
| Weyerhaeuser | $0 | 4/9/2003 | $30,724 | $0 | $0 | ($22,892) | ($211,560) | $2,557 | ($23,172) | $0 | $7,185 |
| Whitey Industries Inc | $6,319 | 4/12/2003 | $6,319 | $0 | ($1,289) | ($45,902) | $0 | $2,140 | ($23) | $0 | $2,117 |
| Willow Brook Foods Inc | $0 | 4/22/2003 | $127,740 | $0 | ($2,333) | ($22,892) | $0 | $120,601 | ($46,026) | ($3,383) | $71,191 |
| Winona Packing Company Inc | $20,404 | 4/22/2003 | $20,404 | $0 | ($520,404) | $0 | $0 | $0 | $0 | $0 | $0 |
| Wisconsin Fleece Inc | $92,672 | 4/22/2003 | $93,672 | $0 | $0 | ($50,197) | $0 | $33,286 | ($11,148) | ($365) | $22,137 |
| W.L. Gore & Associates Inc | $13,076 | 4/22/2003 | $13,076 | $0 | ($541) | ($55,704) | $0 | $6,831 | ($1,120) | $0 | $5,345 |
| WM Wrigley Jr Co. | $3,189,265 | 4/22/2003 | $3,189,265 | $0 | ($316,603) | ($1,726,721) | $0 | $1,145,942 | ($342,054) | ($217,700) | $685,233 |
| Wolverine Packing Co | $16,162 | 4/22/2003 | $16,162 | $0 | $0 | $0 | $0 | $16,162 | ($4,898) | ($311,264) | $0 |
| World Collections Inc | $6,826 | 4/17/2003 | $12,151 | $0 | ($3,182) | ($32,694) | $0 | $6,476 | $0 | ($900) | $6,168 |
| Wright Petroleum Co | $37,559 | 4/2/2003 | $28,457 | $0 | $0 | $0 | $0 | $28,467 | ($28,867) | $0 | $0 |
| WISP International | $150,905 | 4/2/2003 | $150,905 | $0 | ($13,371) | ($113,823) | $0 | $23,771 | ($4,117) | $244 | $19,610 |
| Wyandot Inc | $159,586 | 4/2/2003 | $16,305 | $0 | ($7,476) | ($6,997) | $0 | $1,831 | ($237) | $936 | $638 |
| Wyeth Consumer Healthcare | $334,699 | 4/2/2003 | $334,699 | $0 | ($39,720) | ($124,686) | $0 | $170,289 | ($315,102) | $80,973 | $74,253 |
| Yoohoo Chocolate Beverages | $3,713 | 4/4/2003 | $27,551 | $0 | ($27,551) | $0 | $0 | $0 | $0 | $0 | $0 |
| Zeinehh | $155,915 | 4/11/2003 | $155,915 | $0 | $0 | ($108,128) | $0 | $47,787 | ($33,074) | ($15,713) | $0 |
| **GRAND TOTAL:** | $210,400,732 | | $242,452,738 | ($895,870) | ($15,585,897) | ($89,250,598) | ($24,738,784) | $142,981,535 | ($37,723,699) | ($53,567,910) | $31,687,987 |

# Exhibit G

Enron: Press Release                                              Page 1 of 2



## PRESS ROOM

products+services    press room
investors            contacts
work at enron        enron.com home

You are here:  >>enron.com  >>Press Room  >>Press Room  >>2005  >>Enron Corp

## Press Release

**ENRON REACHES SETTLEMENT WITH JPMORGAN
CHASE IN MEGACLAIMS LITIGATION VALUED AT $1
BILLION**

FOR IMMEDIATE RELEASE: Tuesday, August 16, 2005

**HOUSTON, TEXAS** -- August 16, 2005 - Enron Corp. today
announced an agreement with JPMorgan Chase and its
affiliates ("JPMC") to settle JPMC's portion of the Enron
MegaClaims litigation. According to the terms of the
agreement, JPMC will pay Enron at least $350 million in
cash. JPMC also agreed to subordinate or pay for the
allowance of claims with a value of $660 million. The
settlement is valued at approximately $1 billion.

"Today's settlement is a tremendous financial outcome for
the Enron estate," said Stephen Cooper, Enron's interim
CEO and chief restructuring officer. "We are encouraged by
the momentum of the recent MegaClaims settlements and
look forward to working with the remaining financial
institutions to get these issues behind us."

The MegaClaims litigation generates value for the Enron
estate through both cash recovery and claims reduction.
Settlements announced to date provide for $665 million of
cash payments and the subordination or cash in lieu of
subordination of approximately $3 billion in claims.

"This latest settlement reached with JPMorgan Chase is our
fourth agreement to date and our first with a U.S.-based
financial institution," added John J. Ray III, Enron's Board
Chairman. "This settlement achieves a significant milestone
towards settling the MegaClaims litigation and delivers on
the goal to deliver value to creditors as rapidly as possible."

Financial institutions still to settle include Barclays PLC;
Citigroup Inc.; Credit Suisse First Boston, Inc.; The
Toronto–Dominion Bank; Deutsche Bank AG; and Merrill
Lynch & Co. The Enron MegaClaims complaint involves
claims that the banks aided and abetted breaches of
fiduciary duties; aided and abetted fraud; and engaged in
civil conspiracy. The suit also includes bankruptcy-based
claims relating to equitable subordination; preferential
and/or fraudulent transfers; and the re-characterization of
certain transactions.

The agreement, which also resolves other litigation and
claims between Enron and JPMC, remains subject to the
approval of the United States Bankruptcy Court for the
Southern District of New York.

Enron is represented in this matter by Susman Godfrey
LLP; Togut, Segal & Segal; and Venable LLP.

Elsewhere in
Press Rele

Enron Corp

archive 200

archive 200

archive 200

archive 200

archive 200

archive 199

archive 199

archive 199

archive 199

**EXHIBIT**

G

**Enron's Internet address is www.enron.com.**
###

CAUTIONARY STATEMENT: Certain statements contained in this press release are "forward-looking statements" within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934, as amended. Forward-looking statements include statements concerning plans, objectives, goals, strategies, future events or performance, and other statements that are other than statements of historical facts. Forward-looking statements are based on the opinions and estimates of management at the time the statements are made and are subject to certain risks and uncertainties that could cause actual results to differ materially from those anticipated in the forward-looking statements. Important factors that could cause actual results to differ materially from those in the forward-looking statements herein include, but are not limited to, political developments affecting federal and state regulatory agencies, and developments with respect to the bankruptcy of Enron. Except as required by law, Enron does not undertake any obligation to update any forward-looking statements.

###

Click here to download this press release in Adobe Acrobat 7.0 format.

Click here to download Adobe Acrobat 7.0.

*For additional information please contact:*

**Amy Rosenberg**

**(212) 212-850-5615**

top of page



Copyright 1997-2004 Enron. All rights re:



**PRESS ROOM**          products+services   pressroom
                        investors           contacts
                        work at enron       enron.com home

You are here:  >>enron.com  >>Press Room  >>Press Room  >>2005  >>Enron Corp

## Press Release

### ENRON REACHES SETTLEMENT WITH CANADIAN IMPERIAL BANK OF COMMERCE IN MEGACLAIMS LITIGATION

FOR IMMEDIATE RELEASE: Friday, August 5, 2005

HOUSTON, TEXAS -- Enron Corp. announced today that it reached an agreement with Canadian Imperial Bank of Commerce (CIBC) to settle CIBC's portion of the Enron MegaClaims litigation. According to the terms of the agreement, CIBC will pay Enron $250 million in cash and fully subordinate approximately $40 million in claims held by the bank. CIBC also agreed to pay Enron $24 million to permit Enron to allow approximately $80 million in claims transferred by CIBC to third parties.

"We are pleased that, to date, Enron has reached agreements in the MegaClaims litigation that have added approximately $300 million in cash to the estate," said Stephen Cooper, Enron's interim CEO and chief restructuring officer.

"The CIBC agreement represents a tremendous benefit to the Estate and we look forward to successfully resolving the remaining claims," noted John J. Ray III, Enron's Board Chairman.

Financial institutions still to settle include Barclays PLC; Citigroup Inc.; Credit Suisse First Boston, Inc.; Deutsche Bank AG; J.P. Morgan Chase & Co.; Merrill Lynch & Co., Inc.; and The Toronto–Dominion Bank. Enron's complaint includes claims that the banks aided and abetted breaches of fiduciary duties; aided and abetted fraud; and engaged in civil conspiracy. The suit also includes bankruptcy-based claims relating to equitable subordination; preferential and/or fraudulent transfers; and the re-characterization of certain transactions.

The agreement, which resolves all open issues between Enron and CIBC, remains subject to the approval of the United States Bankruptcy Court for the Southern District of New York.
Enron is represented in this matter by Susman Godfrey LLP; Togut, Segal & Segal; and Venable LLP.

**Enron's Internet address is** www.enron.com.
###

CAUTIONARY STATEMENT: Certain statements contained in this press release are "forward-looking statements" within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934, as amended. Forward-looking statements include statements concerning plans, objectives, goals, strategies, future

Elsewhere in
Press Rele

Enron Corp

archive 200·

archive 200:

archive 200:

archive 200

archive 200

archive 199!

archive 199!

archive 199:

archive 199!

A    294

events or performance, and other statements that are other than statements of historical facts. Forward-looking statements are based on the opinions and estimates of management at the time the statements are made and are subject to certain risks and uncertainties that could cause actual results to differ materially from those anticipated in the forward-looking statements. Important factors that could cause actual results to differ materially from those in the forward-looking statements herein include, but are not limited to, political developments affecting federal and state regulatory agencies, and developments with respect to the bankruptcy of Enron. Except as required by law, neither Enron nor Portland General Electric Company undertake any obligation to update any forward-looking statements.

### ###

Click here to download this press release in Adobe Acrobat 7.0 format.

Click here to download Adobe Acrobat 7.0.

*For additional information please contact:*

**Amy Rosenberg**

**(212) 212-850-5615**



top of page

Copyright 1997-2004 Enron. All rights res

A    295



## PRESS ROOM

products+services    press.room
investors             contacts
work at enron        enron.com home

You are here:  >> enron.com  >> Press Room  >> Press Room  >> 2005  >> Enron Corp

## Press Release

### ENRON REACHES SETTLEMENT WITH TORONTO-DOMINION BANK IN MEGACLAIMS LITIGATION

FOR IMMEDIATE RELEASE: Tuesday, August 16, 2005

HOUSTON, TEXAS -- August 16, 2005 - Enron Corp. today announced an agreement with The Toronto Dominion Bank, Toronto Dominion (Texas) Inc., and TD Securities (USA) LLC (collectively "TD") to settle TD's portion of the Enron MegaClaims litigation. According to the terms of the agreement, TD will pay Enron $70 million in cash. TD also agreed to subordinate $55.6 million in held claims and pay $60 million for the allowance of approximately $320 million in claims transferred by TD to third parties.

We are pleased with today's agreement with TD and encouraged by the momentum of the settlements Enron has negotiated over the past several weeks," said Stephen Cooper, Enron's interim CEO and chief restructuring officer. "The terms of this settlement reflect the modest role we believe TD played relative to others involved in this case. We hope to be able to continue to work with the remaining institutions in this litigation to move the process forward."

The MegaClaims litigation generates value for the Enron estate through both cash recovery and claims reduction. Settlements announced to date provide for $735 million of cash payments and the subordination or cash in lieu of subordination of over $3 billion in claims.

The TD agreement is the fifth settlement reached with financial institutions," added John J. Ray III, Enron's Board Chairman. "Today's announcement reflects our determination to resolve the litigation and continue to deliver value to creditors as quickly as possible."

Financial institutions still to settle include Barclays PLC; Citigroup Inc.; Credit Suisse First Boston, Inc.; Deutsche Bank AG; and Merrill Lynch & Co. The Enron MegaClaims complaint involves claims that the banks aided and abetted breaches of fiduciary duties; aided and abetted fraud; and engaged in civil conspiracy. The suit also includes bankruptcy-based claims relating to equitable subordination; preferential and/or fraudulent transfers; and the re-characterization of certain transactions.

The agreement, which resolves all open issues between Enron and TD, remains subject to the approval of the United States Bankruptcy Court for the Southern District of New York.

Enron is represented in this matter by Susman Godfrey LLP; Togut, Segal & Segal; and Venable LLP.

Elsewhere in
Press Rele

Enron Corp

archive 200

archive 200:

archive 200:

archive 200

archive 200

archive 199

archive 199

archive 199

archive 199

Enron: Press Release                                                    Page 2 of 2

**Enron's Internet address is www.enron.com.**
### ###

CAUTIONARY STATEMENT: Certain statements contained in
this press release are "forward-looking statements" within
the meaning of Section 27A of the Securities Act of 1933
and Section 21E of the Securities Exchange Act of 1934, as
amended. Forward-looking statements include statements
concerning plans, objectives, goals, strategies, future
events or performance, and other statements that are
other than statements of historical facts. Forward-looking
statements are based on the opinions and estimates of
management at the time the statements are made and are
subject to certain risks and uncertainties that could cause
actual results to differ materially from those anticipated in
the forward-looking statements. Important factors that
could cause actual results to differ materially from those in
the forward-looking statements herein include, but are not
limited to, political developments affecting federal and
state regulatory agencies, and developments with respect
to the bankruptcy of Enron. Except as required by law,
Enron does not undertake any obligation to update any
forward-looking statements.

### ###

Click here to download this press release in Adobe Acrobat
7.0 format.

Click here to download Adobe Acrobat 7.0.

*For additional information please contact:*

**Amy Rosenberg**

**(212) 212-850-5615**

top of page



Copyright 1997-2004 Enron. All rights re:




**PRESS ROOM**

products+services · press room
investors
work@enron         contacts
enron.com home

You are here:  >>enron.com  >>Press Room  >>Press Room  >>2005  >>Enron Corp

## Press Release

Elsewhere in
Press Rele

Enron Corp

archive 200·

archive 200:

archive 200:

archive 200'

archive 200(

archive 199!

archive 199(

archive 199'

archive 199(

**ENRON REACHES SETTLEMENT WITH THE ROYAL
BANK OF SCOTLAND IN MEGACLAIMS LITIGATION**
RBS to Make Cash Payment to Enron and Forfeit Rights to
Claims in the Enron Bankruptcy

FOR IMMEDIATE RELEASE: Sunday, July 17, 2005

**HOUSTON** -- Enron Corp. announced today that it has
reached an agreement with The Royal Bank of Scotland PLC
(RBS) to settle RBS' portion of the MegaClaims litigation.
RBS is the first of ten financial institutions named as
defendants in the suit to settle with the Enron estate.
According to the terms of the agreement, RBS will pay
Enron $41.8 million in cash. In addition, RBS will
subordinate or assign to Enron approximately $329 million
of claims filed by RBS in the Enron bankruptcy in return for
a $20 million cash payment from the estate. This
agreement resolves all open issues between Enron and
RBS.
"The terms of this settlement are commensurate with the
modest role we believe RBS played relative to others
involved in this case," said Stephen Cooper, Enron's interim
CEO and chief restructuring officer. "We are pleased that
the agreement was reached in a timely manner and
achieved our objective of a cash recovery in addition to the
subordination of claims against the estate."
Other financial institutions involved in the MegaClaims
litigation include Barclays PLC; Canadian Imperial Bank of
Commerce; Citigroup Inc.; Credit Suisse First Boston, Inc.;
Deutsche Bank AG; J.P. Morgan Chase & Co.; Merrill Lynch
& Co., Inc.; Royal Bank of Canada; and The Toronto-
Dominion Bank. The complaint includes claims that the
banks aided and abetted breaches of fiduciary duties; aided
and abetted fraud; and engaged in civil conspiracy. The
suit also includes bankruptcy-based claims relating to
equitable subordination; preferential and/or fraudulent
transfers; and the re-characterization of certain
transactions.
The agreement remains subject to the approval of the
United States Bankruptcy Court for the Southern District of
New York, which has jurisdiction over the MegaClaims
litigation. Enron is represented in this matter by Susman
Godfrey LLP; Togut, Segal & Segal; and Venable LLP.

Enron's Internet address is www.enron.com.
### 

CAUTIONARY STATEMENT: Certain statements contained in
this press release are "forward-looking statements" within
the meaning of Section 27A of the Securities Act of 1933
and Section 21E of the Securities Exchange Act of 1934, as
amended. Forward-looking statements include statements
concerning plans, objectives, goals, strategies, future
events or performance, and other statements that are

other than statements of historical facts. Forward-looking
statements are based on the opinions and estimates of
management at the time the statements are made and are
subject to certain risks and uncertainties that could cause
actual results to differ materially from those anticipated in
the forward-looking statements. Important factors that
could cause actual results to differ materially from those in
the forward-looking statements herein include, but are not
limited to, political developments affecting federal and
state regulatory agencies, and developments with respect
to the bankruptcy of Enron. Except as required by law,
neither Enron nor Portland General Electric Company
undertake any obligation to update any forward-looking
statements.

###

Click here to download this press release in Adobe Acrobat
7.0 format.

Click here to download Adobe Acrobat 7.0.

*For additional information please contact:*

**Jennifer Lowney**

**(212) 333-3810 or (917) 215-1598**

top of page



Copyright 1997-2004 Enron. All rights re:

A 299



**PRESS ROOM**

products+services | press room
investors | contacts
work at enron | enron.com home

You are here:  >>enron.com  >>Press Room  >>Press Room  >>2005  >>Enron Corp

## Press Release

### ENRON REACHES SETTLEMENT WITH THE ROYAL BANK OF CANADA IN MEGACLAIMS LITIGATION

FOR IMMEDIATE RELEASE: Thursday, July 28, 2005

HOUSTON -- Enron Corp. announced today that it has reached an agreement with The Royal Bank of Canada (RBC) to settle RBC's portion of the MegaClaims litigation. According to the terms of the agreement, RBC will pay Enron $25 million in cash to settle claims against the bank and other members of the RBC financial group.

The agreement also includes an arrangement between RBC and Enron to resolve claims in Enron's bankruptcy case and litigation related to those claims. Specifically, RBC will pay Enron $24 million in cash in order for Enron to allow $114 million in claims held by RBC or transferred by RBC to third parties.

Stephen Cooper, Enron's interim CEO and chief restructuring officer, said, "This settlement reflects our assessment that RBC played the smallest role of any of the financial institutions involved in this case. This is the second settlement in the MegaClaims litigation in recent weeks and we are pleased that we were once again able to achieve a meaningful cash recovery for the estate.""The terms of this settlement are commensurate with the modest role we believe RBS played relative to others involved in this case," said Stephen Cooper, Enron's interim CEO and chief restructuring officer. "We are pleased that the agreement was reached in a timely manner and achieved our objective of a cash recovery in addition to the subordination of claims against the estate."

The agreement, which resolves all open issues between Enron and RBC, remains subject to the approval of the United States Bankruptcy Court for the Southern District of New York.

The remaining financial institutions in the MegaClaims litigation include Barclays PLC; Canadian Imperial Bank of Commerce; Citigroup Inc.; Credit Suisse First Boston, Inc.; Deutsche Bank AG; J.P. Morgan Chase & Co.; Merrill Lynch & Co., Inc.; and The Toronto-Dominion Bank. The complaint includes claims that the banks aided and abetted breaches of fiduciary duties; aided and abetted fraud; and engaged in civil conspiracy. The suit also includes bankruptcy-based claims relating to equitable subordination; preferential and/or fraudulent transfers; and the re-characterization of certain transactions. Enron is represented in this matter by Susman Godfrey LLP; Togut, Segal & Segal; and Venable LLP.

**Enron's Internet address is** www.enron.com.
### ###

CAUTIONARY STATEMENT: Certain statements contained in this press release are "forward-looking statements" within

Elsewhere in
Press Rele

Enron Corp

archive 200

archive 200

archive 200

archive 200

archive 200

archive 199

archive 199

archive 199

archive 199

the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934, as amended. Forward-looking statements include statements concerning plans, objectives, goals, strategies, future events or performance, and other statements that are other than statements of historical facts. Forward-looking statements are based on the opinions and estimates of management at the time the statements are made and are subject to certain risks and uncertainties that could cause actual results to differ materially from those anticipated in the forward-looking statements. Important factors that could cause actual results to differ materially from those in the forward-looking statements herein include, but are not limited to, political developments affecting federal and state regulatory agencies, and developments with respect to the bankruptcy of Enron. Except as required by law, neither Enron nor Portland General Electric Company undertake any obligation to update any forward-looking statements.

### ###

Click here to download this press release in Adobe Acrobat 7.0 format.

Click here to download Adobe Acrobat 7.0.

*For additional information please contact:*

**Jennifer Lowney**

**(212) 333-3810 or (917) 215-1598**

top of page



Copyright 1997-2004 Enron. All rights re:

# Exhibit H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re PARMALAT SECURITIES LITIGATION

This document relates to: 05 Civ. 4015

MASTER DOCKET
04 MD 1653 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ENRICO BONDI,

Plaintiff,

-against-

05 Civ. 4015 (LAK)

BANK OF AMERICA CORPORATION, et al.,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

John B. Quinn
R. Brian Timmons
Loren Kieve
Michael B. Carlinsky
QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
*Attorneys for Plaintiff*

Joseph B. Tompkins, Jr.
Alan C. Geolot
Mark P. Guerrera
SIDLEY AUSTIN BROWN & WOOD LLP
*Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

Plaintiff Enrico Bondi has served since December 2003 as the Extraordinary

Commissioner of Parmalat Finanziaria S.p.A., Parmalat S.p.A., and 21 affiliated entities (the


EXHIBIT
H

2

"Parmalat Debtors") in the Italian reorganization proceedings known as Extraordinary Administration.[1] His position is roughly equivalent to that of a chapter 11 bankruptcy trustee in the United States. This action, which was filed in the United States District Court for the Western District of North Carolina and transferred here by the Judicial Panel on Multidistrict Litigation, alleges in substance that Bank of America Corporation and affiliates[2] (collectively "BoA" or the "Bank") structured transactions that operated to defraud the Parmalat Debtors and their investors. The defendants move to dismiss the action for failure to state a claim and to join indispensable parties.[3]

## I.  The Complaint

The thrust of the complaint, the well-pleaded factual allegations of which are presumed true for purposes of this motion, is that BoA assisted the Parmalat Debtors, their affiliates (collectively "Parmalat" or the "Company") and these companies' managers in "structuring and executing a series of complex, mostly off-balance sheet, financial transactions that were deliberately

---

[1]   See Bondi v. Grant Thornton Int'l, 322 B.R. 44, 45-46 (S.D.N.Y. 2005) ("Bondi I"); In re Parmalat Finanziaria S.p.A., 320 B.R. 46, 47-48 (S.D.N.Y. 2005); Joint Report on the Status of Proceedings in Italy (Jan. 18, 2005) (04 MD 1653, docket item 47) ("Joint Report").

[2]   The defendants are Bank of America Corporation, Bank of America National Trust & Savings Association, Banc of America Securities, LLC, Banc of America Securities Limited ("BASL"), and Bank of America, N.A. The complaint names also Bank of America International, Ltd., but the parties agree that that entity is the same as BASL.

[3]   BASL joins in the main BoA motion and moves to dismiss also for lack of personal jurisdiction. Its personal jurisdiction defense is addressed in a separate ruling issued today.

designed to conceal Parmalat's insolvency."[4] The Bank's "knowing assistance ensured that Parmalat's financial statements were false and misleading. . . . The eventual result of this deception was Parmalat's bankruptcy[.]"[5] According to the complaint:

> "[k]eeping Parmalat's actual financial condition secret was crucial to the ability of certain Parmalat insiders . . . to maintain an investment grade credit rating for Parmalat. This allowed them to continue to raise additional financing for (a) their massive acquisition campaign, (b) their equally massive looting of the company and (c) their effort to keep the company afloat amid a mounting wave of losses, debts and disappearing funds."[6]

A.    *Specific Transactions*

1.    *December 1997 Credit Agreement with Venezuelan Subsidiary*

On December 16, 1997, BoA entered into an $80 million five-year credit agreement with one of Parmalat's Venezuelan subsidiaries. The parties did not disclose a side letter that gave BoA additional guarantees, a $120,000 "Arrangement Fee," and interest beyond the publicly-disclosed rate. In other words, the transaction made Parmalat appear healthier and more credit-worthy than BoA knew that it was.[7]

---

[4]

Cpt. ¶ 1.

[5]

*Id.* ¶ 75.

[6]

*Id.* ¶ 204.

[7]

*Id.* ¶¶ 77-87.

4

2.    *September 1998 Loans Secured by Cash Raised Through Private Placements of Debt*[8]

On September 29, 1998, BoA entered into an $80 million eight-year credit agreement with two of Parmalat's Venezuelan subsidiaries and a $100 million credit agreement with a Brazilian subsidiary. The loans were secured by cash deposits made by Eurofood IFSC Limited ("Eurofood"), an Irish Parmalat subsidiary, in the entire amounts of the respective loans. Eurofoods obtained the funds through issuance of eight-year notes to institutional investors in the United States in private placements arranged by BoA. In other words, the flow of funds in substance was from the investors to the South American subsidiaries. BoA had no risk, but when Parmalat's troubles came to light in December of 2003, BoA foreclosed on the collateral for the loan to the Venezuelan subsidiaries.

The fact that the loans were secured by cash put up by Parmalat was not disclosed publicly. Consequently, the purchasers of the eight-year notes did not know that they were contributing collateral for BoA loans. Nor did the purchasers of Parmalat's publicly-traded securities know that Parmalat had approximately $180 million less available cash than its financial statements indicated. Side letters that increased the fees and interest payable to BoA also were not disclosed, thus further distorting Parmalat's financial picture.[9] In addition, the actual purpose of the Venezuela loans was to extinguish debt under the December 16, 1997 agreement – not, as the public disclosure suggested, "to fund import/export activities by the Venezuelan companies."[10]

---

[8]    The complaint in the consolidated securities fraud action includes a version of these allegations. *See In re Parmalat Sec. Litig.*, No. 04 MD 1653, 2005 WL 1653638, at *6 (S.D.N.Y. July 13, 2005).

[9]    Cpt. ¶¶ 88-107, 112-30.

[10]    *Id.* ¶¶ 108-09.

A    306

5

Finally, the complaint alleges that Parmalat, starting in September 2001, made premium payments on a new credit risk insurance policy. The payments, which totaled $20 million, were deposited to an account controlled by BoA officers, rather than paid to the underwriter of the policy.[11]

### 3.    October 1999 Credit Agreement with Mexican Subsidiary

On October 12, 1999, BoA signed a $25 million credit agreement with a Mexican subsidiary of Parmalat. Again, the loan was collateralized with approximately $25.5 million in cash deposited by a Parmalat entity. The complaint alleges a complicated series of transfers, but the end result was that the money moved from one Parmalat entity to another. BoA had no exposure but received an annual interest spread and fees. In December of 2003, the Bank foreclosed on the collateral.[12]

### 4.    $300 Million Equity Investment in Administracao[13]

BoA allegedly structured a set of transactions pursuant to which $300 million of privately placed debt issued by a Brazilian Parmalat subsidiary was disguised as an equity investment. In particular, BoA created two special purpose entities (SPEs) that purchased $300 million worth of stock, equivalent to an 18 percent stake, in Parmalat Administracao S.A. ("Administracao"). The SPEs in turn issued four-year notes that were purchased by BoA,

---

[11]
    *Id.* ¶ 110.

[12]
    *Id.* ¶¶ 131-41.

[13]
    The securities fraud complaint includes a version of these allegations. *See In re Parmalat Sec. Litig.*, 2005 WL 1653638, at *5.