1    before the Court, and I just want to clarify that the issue

2    before the Court today is not the validity of the claims or

3    even whether the claims exist after confirmation of the plan.

4    The only issue before the Court today is whether or not the

5    RCT or the PCT is entitled to bring these causes of action.

6    And I think if we kind of narrow the scope and kind of look

7    at that and see what we can all agree on, maybe we can kind

8    of come to an understanding as to where this is going.  I

9    think there is agreement that this question can be answered

10   by looking at the plain language of the plan.  Everybody

11   agrees on that.  Everybody agrees that if it is an RCT asset,

12   it is not a PCT asset, that there's no overlap between the

13   two parties.  If one party owns it, the other does not.  Then

14   we're left with looking at what I'll call the understanding,

15   which people have talked about as to what was the purpose;

16   what was the background; how did we get here?  Well, Your

17   Honor's been involved in this case –

18            THE COURT: Well, do I look at even the purpose and

19   understanding and expectations of the parties if the language

20   is plain?

21            MR. MILLER: I think that the language is clear, and

22   we can just stay with the language, and I guess take it for

23   what it's worth, because I do agree with Your Honor, if the

24   language is clear you really don't need to go beyond that.

25   And I think that the language, when you look at the language,

1    the language does demonstrate the intent.  It's not a

2    question where there's ambiguity and you have to look at what

3    the language, the intent was, but the language is clear

4    because it was intended to keep these assets separate and

5    with that understanding - And it's more of a background to

6    take recognition of the fact that from day one, the

7    reclamation creditors and the debtors had big disputes.

8    There was a procedure set up to deal with the reclamation

9    creditors.  Then that wasn't the appropriate way to do it.

10    They filed a motion to deal with how we're going to deal with

11    the reclamation creditors and the whole valueless argument,

12    and it was decided that's not the appropriate way.  What we

13    have to do is we have to file adversary complaints.  So, a

14    whole slew of adversary complaints were filed, and there was

15    discussion as to whether people, you know, certain parties

16    had to intervene, and there was a lot of issues going on, and

17    at the end of the day, this Court in its wisdom decided to

18    appoint an Official Committee of Reclamation Creditors to

19    deal with these issues, to try to get some closure and get

20    this thing moved along.  And it worked out great.  There was

21    a commission - There was a Committee appointed to represent

22    the reclamation creditors.  There was an Official Committee

23    of Unsecured Creditors.  The debtors were represented, and

24    they came together with this plan.  And so, they took

25    everything together, and they came up with a plan that would

1    resolve the issues, and that's all set forth in the plan.

2    This is how they resolved everything. And I think if we take

3    that into account, and the animosity that was there, and we

4    recognize that if it's a PCT asset, it's not an RCT asset.

5    If it's an RCT asset, it's not a PCT asset.  And we go from

6    there, and we look at what's actually said, and I think that,

7    you know, everybody's focused on the key word.  It's

8    "indirect".  And Your Honor's asked the question, well, what

9    about Deloitte.  What if Deloitte were to bring an action

10   against the vendor?  First of all, the only question before

11   the Court, the only one we're concerned about is the debtor

12   had this whole bundle to begin with, and then it split it out

13   to two different parties.  It split it to the RCT and the

14   PCT.  And the question is, if the debtor was a single party

15   and brought this action, they would be suing the reclamation

16   vendors and the employees together.  We're not in that

17   situation -

18          THE COURT: And Deloitte, and the former officers

19   and directors.

20          MR. MILLER: Everyone.  We're not in that situation.

21   Now, what we have is a party that had that whole bundle of

22   rights saying, Well, what we really did is the action against

23   the employee, we're going to send over here, and the action

24   against the vendor, we're going to send over here, and we're

25   going to give it to two different people.  And to me, as -

A    441

1    and I don't want to repeat what other people have said, the

2    only way that these entities can act is through their

3    employees.  The acts of Deloitte, if Deloitte were to say

4    that they had a contribution right against the vendors, that

5    has nothing to do with the issue before the Court today.  I

6    don't think there's any reclamation vendor that is arguing

7    that that somehow would become an RCT asset, and we're

8    getting absolved of that liability.  We have to deal with

9    that, because that's not - that was not the debtor's right to

10   begin with.  The debtor's right is the right against the

11   reclamation vendor and its employee who acted on behalf of

12   the reclamation vendor.

13          THE COURT: Right, but it's the reclamation

14   employee's claim for indemnification from the reclamation

15   creditor was not a debtor right either that was given away.

16   Really, indemnity and contribution are quite similar in this

17   analogy.

18          MR. MILLER: Right.  If they were to bring an action

19   against us, that would be a direct cause of action.

20          THE COURT: Against whom?

21          MR. MILLER: If the PCT were to bring an action

22   against my client Kemps, that would be a direct cause of

23   action.  They've not done that.  What they have done is

24   brought in indirect - I'm not sure, as other parties have

25   said, what would constitute an indirect cause of action

1    against the vendor.

2            THE COURT: Why isn't the action against Deloitte an

3    indirect cause of action against the reclamation creditors

4    then?

5            MR. MILLER: I'm not sure I understand how you get

6    to that point.

7            THE COURT: Because they have a right of

8    contribution.  If they can establish that the reclamation

9    creditor's employee was part of this fraud.

10           MR. MILLER: But that would be Deloitte's right.

11           THE COURT: Yes, and the employee's right of

12   indemnification is the employee's right.  And if Deloitte had

13   a right of contribution against the reclamation creditor, it

14   would be for the same actions.  It would be for the actions

15   of their employee in committing this fraud, if they had that

16   right.

17           MR. MILLER: I'm trying to figure out a way to -

18   we're at different positions as to how we view the word

19   "indirect" and who's entitled to the ability to -

20           THE COURT: An indirect claim is a claim that I

21   might not have against you directly, but that I have against

22   you.

23           MR. MILLER: It's an indirect claim by the debtor.

24   That's the party that we're talking about.  It's the debtor's

25   indirect or direct cause of action or derivative cause of

 1   action or whatever against the reclamation creditor.

 2          THE COURT: The debtor's claim against the

 3   individuals -

 4          MR. MILLER: Is a direct claim.

 5          THE COURT: Is a direct claim against the

 6   individuals.

 7          MR. MILLER: That's correct, and an indirect.

 8          THE COURT: And it's not an indirect claim against

 9   the reclamation creditors.  They have a direct claim against

10   the reclamation creditors for those same actions.

11          MR. MILLER: But - I agree, they do.  They also have

12   an indirect by bringing the action against the individual,

13   that individual having a right of indemnification, it results

14   in an indirect cause of action against the vendor.

15          THE COURT: No.

16          MR. MILLER: And, pursuant to law, he's entitled to

17   his right of indemnification.  For example, if he was not

18   within the scope of employment, and he did not have the

19   ability to get indemnified, and they were only going after

20   the individual, and there was no way that my client could be

21   liable under any theory, that would not be an indirect cause

22   of action.

23          THE COURT: That would be -

24          MR. MILLER: That would just be a direct cause of

25   action against the individual with no indirect liability

1    against my client.

2         THE COURT: An indirect claim is a claim that I do

3    not have against you directly.

4         MR. MILLER: Right.

5         THE COURT: But because of some theory of law, I'm

6    allowed to bring against you - it's a claim of somebody else

7    whom I represent.  It's a derivative of somebody else's right

8    - that's what an indirect claim is, but it's a claim against

9    you.  It's not a claim that I have against a third party that

10   might somehow indirectly affect you.  That's not what an

11   indirect claim is.

12        MR. MILLER: I think that we shouldn't lose sight of

13   the words that are used there.  It's not merely direct,

14   indirect, derivative, it says, or otherwise.  The point is

15   that -

16        THE COURT: Against persons, but it's against

17   persons.

18        MR. MILLER: This is supposed to be expansive, and I

19   think that's where you have to start from.  The whole point

20   of this is to be as expansive as possible.  What would be - I

21   guess I would throw a question out to Your Honor.  What would

22   be the intent of having a plan where you would have a

23   provision where you would have one cause of action against

24   the vendor and the cause of action against the employees who

25   caused the vendor's liability, so to speak, to go to another

 1    party so that two trusts could sue and result double the

 2    damages, double the amount?

 3           THE COURT: Well, they won't get double recovery.

 4           MR. MILLER: Why?  If you have one party –

 5           THE COURT: Because you only have to pay once.

 6           MR. MILLER: Not if they take inconsistent

 7    positions.  If the RCT takes a position that there is no

 8    liability, and the PCT takes the position that there is

 9    liability, those are inconsistent results.

10           THE COURT: Well, there may be no liability on the

11    direct claim because the RCT waived it or whatever for

12    whatever reason, but that does not implicate the direct claim

13    against Deloitte or the employees or the former officers and

14    directors.  If you were to suggest that the fact that the RCT

15    felt there were no merit to the claim, it would implicate the

16    actions against everybody else.

17           MR. MILLER: And that's why one party should have

18    it, and it's very clear that as against the reclamation

19    vendor, it goes to the RCT.

20           THE COURT: All claims against the reclamation

21    vendor went to the RCT. Let me turn this around in a

22    situation that you will understand as a bankruptcy

23    practitioner.  Company files bankruptcy.  Gets a discharge.

24    Creditors can still sue the officers and directors of the

25    debtor for actions they took within the scope of their

1   employment to the extent that the creditor can establish they

2   have a direct claim against the employees for their damages.

3   The discharge of the debtor does not discharge the officers

4   and directors unless there's a specific release provision or

5   otherwise.  Turn that around here.  Isn't that the same here?

6   The release of a claim against the vendor does not release

7   any claims against the vendor's employees, unless there's

8   express language, and I'm always careful on plans to make

9   sure the release language is expressed.  So, I don't see it

10   here.  I see the definition of person as being the

11   reclamation creditors, only includes them, not their officers

12   and directors.

13          MR. MILLER: Let's take a look at the plan, first.

14          THE COURT: I agree cause of action was meant

15   broadly, but the RCT assets was not meant to encompass

16   anything except causes of action or claims as broadly as they

17   may be defined against reclamation creditors.

18          MR. MILLER: I'm not sure that I have anything that

19   - I think it's a different reading that obviously the two

20   parties had as to the documents.  I have nothing further,

21   Your Honor.  Thank you, Your Honor.

22          MR. FRIEDMAN: May I make one brief final point -

23          THE COURT: Let your colleague speak first.

24          MR. RALSTON: Your Honor, I'll be brief.  I just -

25   One, I wanted to apologize.  Mark Ralston on behalf of Dean

1  Foods Company.  I failed to identify myself, and I apologize

2  to the court reporter.

3          THE COURT: Thank you.

4          MR. RALSTON: I was the person, who, for the record,

5  followed Mr. Friedman on the opening.  Again, Your Honor,

6  I've been writing lots of notes, and I'm going to try to

7  avoid rehashing issues, and I'm prepared for this Court's

8  very direct questioning.  Albeit, I wasn't born there, I'll

9  just claim to be a simple Texas lawyer who doesn't understand

10  some of the things that have been going on, and here's how I

11  kind of boil it down.  Just as a hypothetical situation,

12  perhaps outside the bankruptcy context, "A" alleges a tort

13  against a corporation and various officers or employees

14  alleging acting within the scope of their corporate

15  authority.  "A" then assigns the causes of actions against

16  officers and directors against "B".  So "B" has the claims

17  against the individuals, the real people.  "A" keeps the

18  claim against the corporation.  "A" brings the lawsuit in one

19  jurisdiction.  "B" brings the lawsuit in another

20  jurisdiction.  As is standard with every corporation, there

21  is a contractual obligation to indemnify.  As I understand

22  it, I'm not a corporate lawyer, it's generally within the

23  formation documents, articles, or by-laws, or what have you,

24  and it's alleged by the plaintiffs in both lawsuits, and I

25  kind of wonder, that can't happen.  I mean there just can't

1    be the opportunity where the corporation, which is a solvent

2    corporation, is going to have to deal with "A" on the direct

3    claims and "B" and again, I know the Court has through its

4    questioning indicated a reluctance to adopt the view of the

5    RCT and the other vendors here today, but it seems to me

6    that's clearly an indirect claim.  Especially when plaintiff

7    "B" is alleging that the officers and other employees are

8    acting within the scope of the corporate authority and

9    alleging as a count that there is a duty to indemnify.  I

10   think we parse over the words "indirect" and I have – I'll

11   get to why I disagree with the Court or I may disagree with

12   the Court's view of what that word means.

13           THE COURT: Well, indirect, but is it an indirect

14   claim against the corporation, I think, is the operative.

15           MR. RALSTON: And I think it is an indirect claim,

16   and the fact of the matter is, think the Court has a very big

17   concern.  Well, does the corporation create the indirect

18   claim by contractually indemnifying the officers and

19   directors?  And the answer is, Yes.  The corporation, like

20   every corporation, creates those indirect claims, and again,

21   both sides have to live with what the plan says.  If that was

22   a concern of the – It's not the PCT because the PCT has made

23   it clear they're not the debtors.  They're not the Official

24   Committee of Unsecured Creditors.  But those were the parties

25   who negotiated the plan along with the predecessor to the

1    RCT, which is the Official Committee of Reclamation

2    Creditors.  And if the parties, the debtors and the Official

3    Committee of Unsecured Creditors were concerned about

4    entities having created indirect claims through contractual

5    obligation to indemnify, I guess they should have done that

6    in the plan, but I can't, again, being just a simple Texas

7    lawyer, I can't understand what the word indirect means

8    except that your ultimate source of recovery as pled by the

9    plaintiff.  I mean there's not even a dispute as to by the

10   PCT that there's a duty to indemnify.  It's their allegation

11   that the ultimate source of recovery is a solvent

12   corporation.  I grant you there is a direct claim against the

13   officer, but that direct claim is inexorably linked to the

14   indirect claim against the corporation, and the fact of the

15   matter is - I'm sorry, about the hand movement, Your Honor -

16           THE COURT: That's all right.

17           MR. RALSTON:  - I'm trying to explain it.  The way

18   the plan works, all claims against the reclamation creditor,

19   even if you go to the Reclamation Committee, if those claims

20   are inexorably linked to indirect claims - to claims against

21   others, they still go because those are indirect - the

22   indirect claim against the corporation is a cause of action,

23   it goes to the RCT.  If some claims are otherwise pulled

24   along with it that the PCT might have a chance to bring,

25   sobeit.  It's in the camp of the RCT.  That's what was

 1    negotiated by the parties that existed before the

 2    confirmation and effective date.  And quite honestly, I get

 3    back to my hypothetical, not only does Dean Foods believe

 4    that that is the correct interpretation of the word indirect,

 5    plain meaning, what have you, giving effect, because we

 6    wouldn't see how you would give effect to that word any other

 7    way.  But apart from that, it seems to me consistent with the

 8    notion of fairness that has to be part of this Court's

 9    concern, that this is an equitable process.  Essentially,

 10   what the PCT is arguing is that, yes, in my hypothetical, "A"

 11   should be able to assign its claims to another entity, and

 12   they both should be able to recover knowing full well that

 13   there's an indemnification obligation of the corporation,

 14   even though it's not a named party.  I mean, you know –

 15         THE COURT: Well, I'm struggling with that too.  Why

 16   shouldn't they both be able to recover?  Because –

 17         MR. RALSTON: I just don't see how that – and, Your

 18   Honor, I'll be happy to assign one of my smarter associates

 19   to the task of finding out why, if I'm asserting a corporate

 20   tort – and you always have the same lawsuit, you know.

 21   Usually it's the corporation is going to be there and you're

 22   going to throw in a few officers because you want to get

 23   their attention; right?  There's got to be something out

 24   there, and I'll be happy to try to find it, and perhaps this

 25   Court wants to have some post-hearing briefing, why, if I had

```
 1   a cause of action for a corporate tort, why can't I assign it
 2   to my brother Brian, you know, the cause of action and we can
 3   both recover and make out like bandits.  I presume the
 4   plaintiff bar, if they could to that, would be doing it in
 5   every case.  So, I just don't know offhand.  I can't cite,
 6   you know, a case law, probably because it's so outrageous
 7   that no one's tried it before, and maybe we discovered a new
 8   way for the plaintiff's bar to, you know, to make some money.
 9   But I just don't see how that could be - and getting to my
10   colleague on the vendor side's argument, that can't be a
11   reasonable interpretation of this plan.  I mean, in reading
12   it, I think you would have to - I use the term in our brief,
13   through the artifice of drafting, create the situation where
14   there is a double recovery.  I don't think that's the case,
15   and I'm not accusing anyone of trying to do that, and I think
16   when you look at the language and that indirect has to have
17   some meaning, and you look at the purpose of the plan as a
18   backstop, there only can be one conclusion, and in this
19   particular case where the actions of the vendors and their
20   officers are allegedly one and the same, including the
21   intent, the actions, complete overlay, and that there's an
22   indemnification obligation as alleged by the PCT.  That has
23   to be an indirect claim.  As to Deloitte, counsel for the RCT
24   mentioned - excuse me, PCT mentioned that, you know, there's
25   also issues in Texas of comparative liability.  So
```

1   contribution isn't necessarily an issue.  Deloitte,

2   presumably, would take the position, if we are liable, we're

3   only liable for a small percentage because all the bad acts

4   were committed by Fleming's directors and officers, and I

5   presume that they're aware of the SEC issues and by these

6   vendors.  And so, if there is any liability, we've got a

7   little chunk, and so the judgment is for a comparative

8   negligence or gross negligence, and it's limited.  So, I

9   think that –

10          THE COURT: So, it's not joint and several?

11          MR. RALSTON: Well, again, with the officer and the

12   company there's a complete overlay with the actions.  I don't

13   even believe that the causes of action against Deloitte are

14   the same causes of action asserted against the officers of

15   the vendors.

16          THE COURT: Let's take the debtor's officers and

17   directors, which are.

18          MR. RALSTON: Right.

19          THE COURT: They were the other side of the

20   transaction –

21          MR. RALSTON: Right.

22          THE COURT:  – the alleged fraud committed with your

23   employees.

24          MR. RALSTON: Right.

25          THE COURT: It's all alleged.

1          MR. RALSTON:  Alleged, and again, for purposes of

2    the record, can I adopt all of the legal argument of my

3    colleagues.

4          THE COURT: Yes, and for purposes of the record,

5    I've made it clear this is all allegations.

6          MR. RALSTON: Thank you, Your Honor.

7          THE COURT: But, I mean, the director's officers and

8    directors were the other side of the transaction.

9          MR. RALSTON: Correct, and I presume that they could

10   say even though we - even though it's alleged that our torts

11   were intentional, that we were aided and abetted.  I - you

12   know, we can get into a lot of hypotheticals, and there could

13   be some good law review questions here, again, to echo,

14   though it's not before the Court.  We haven't crossed that

15   bridge.  No contribution claim has been filed against Dean

16   Foods or any of the other vendors, if I'm correct.  And so,

17   yeah, we could get to some gray areas, perhaps.  This is not

18   a gray area.  This is a black and white area, at least as we

19   view it.  Now, in response to your hypothetical, presenting,

20   I think, more of a gray area -

21         THE COURT: Your's is more direct than the indirect

22   claims that Deloitte and the Fleming officers and -

23         MR. RALSTON: Well, ours is - Well, I don't want to

24   say more direct because it doesn't have to be direct.  The

25   plan says indirect.  So, ours is - the claims as I see them,

1    Your Honor, are -

2           THE COURT: But I'm suggesting that the Deloitte and

3    the Fleming officer and director claims over and against the

4    employees might be just as indirect -

5           MR. RALSTON: As a practical matter -

6           THE COURT: - as yours.

7           MR. RALSTON:    - I think they can take care of that

8    through comparative negligence as far as Deloitte, okay, as a

9    practical matter, if the Court is concerned with the

10   practical implications.  Presumably, as I stated earlier,

11   Deloitte did not feel strongly about that defense because the

12   RCT indicated - excuse me, the PCT indicated that it had

13   settled with Deloitte, and I believe they stated to this

14   Court that it was a confidential amount, but they were happy

15   with it.  So, since they're happy with it, I'm going to

16   assume that they got a good settlement, and since they got a

17   good settlement, and since I assume that Deloitte was

18   adequately represented by counsel, Deloitte didn't feel very

19   strongly that comparative negligence, a comparative claim

20   against a vendor would really do it justice, and I happen to

21   agree because, you know what, it's a gray area, but, you

22   know, it's one of those areas where you say, you're getting a

23   little far afield of what the situation here is.  Here I

24   think you're saying, Wait a minute.  Again, back to my

25   hypothetical, my "A" and "B" hypothetical, that seems to me

1    to implicate the word indirect as clearly as you could.

2    Plaintiff alleges that officer did wrong.  Plaintiff alleges

3    that officer acted within the scope of its corporate

4    authority.  Plaintiff alleges duty of indemnification of

5    corporation even though they're not a named defendant.  Yes,

6    they can't bring a named defendant in because that's the word

7    direct in the cause of action, and the direct claim has gone

8    to the RCT.  But along with that direct claim is the indirect

9    claim against the vendor, and that indirect claim is

10   essentially what's implicated by the action against the

11   individual.  And then again you get to the "A" and "B".  It

12   only make sense that that's the case because otherwise you

13   get a potential for double recovery that at least to my

14   knowledge you don't have outside the bankruptcy process, and

15   if the bankruptcy plan created the situation of a double

16   recovery, it did so, I think, under a cloud without full

17   disclosure and essentially impugning the equitable nature of

18   this process.  So, we may parse over the words.  I think that

19   ours clearly is the correct reading of the plan, but, Your

20   Honor, if there is - if the Court needs to look at the

21   entirety of the plan to give the words effect, I think that's

22   the only - the RCT's position is the correct one.  One of the

23   issues on the indirect, and this is a nit, Your Honor, I

24   don't quite understand, and maybe I'm missing something,

25   won't be the first time and it won't be the last, excuse me,

1    as I understood the PCT's position, the indirect meant that a
2    creditor could not bring a claim against a reclamation
3    creditor.  Now, I think, as I - and this Court may have
4    answered some of my questions, if that creditor had a direct
5    claim against a reclamation creditor, I don't think the plan
6    effectuates a third-party release.  In other words, if a
7    creditor were to have said that a vendor misrepresented
8    something to that creditor and then reliance upon that
9    misrepresentation, the creditor extended trade creditor or
10   lent money, that to me is a direct claim of the creditor, and
11   that's not a property of the estate.  So that is unaffected
12   by the plan, and therefore, the definition of indirect
13   proposed by the PCT can't be accepted because it wouldn't
14   work in the first place.

15            THE COURT: Well, it's an indirect claim that the
16   estate would have. Perhaps by virtue of the fact that the
17   estate is a creditor through some other machination.

18            MR. RALSTON: So, that's a slightly different form
19   of claim.  In my hypothetical the claim was one where the
20   creditor had suffered particularized harm as opposed to the
21   body of creditors.

22            THE COURT: Right.

23            MR. RALSTON: To me, as a matter of law, at least in
24   the Fifth Circuit and I presume the Third Circuit's the same,
25   causes of action that would otherwise be brought by creditors

 1    on behalf of an entity, vest with the entity upon filing a

 2    bankruptcy.  You know, the classic being the fraudulent

 3    conveyance or transfer causes of action.  Again, therefore,

 4    the definition that the PCT proposes for the term indirect

 5    has no effect because as a matter of law, those claims vest

 6    with the estate and there's no standing for a creditor to

 7    bring a derivative type claim.  So, if the word indirect is

 8    going to be given any meaning, I think it's the RCT's - the

 9    meaning that the RCT and the vendors ascribe to that word,

10    and I guess, Your Honor, we can parse over the words, but,

11    you know, I don't know if it was Oliver Wendell Holmes who

12    said it, but, if it looks like a duck, it walks like a duck,

13    and it talks like a duck; it's a duck.  And, Your Honor, what

14    we've got here is a duck.  Thank you.

15            THE COURT: Thank you.

16            MR. FRIEDMAN: May I make one responsive comment?

17            THE COURT: You may.

18            MR. FRIEDMAN: We're all trying to satisfy Your

19    Honor's concerns that when you look at the - in trying to

20    articulate our basis for differentiating between claims of

21    Deloitte and claims against these individuals, when you read

22    the complaint of the PCT against Deloitte, you look at those

23    allegations, there is nothing in those allegations or that is

24    necessary in those allegations that establishes the liability

25    of a reclamation creditor.  There are allegations against

1    Deloitte for its own alleged wrongdoing.  So, it is then
2    Deloitte that is asserting contribution.  It's not a claim of
3    any kind, direct, indirect, derivative, otherwise of the
4    estate.  When you have the claim against the employee, you,
5    in effect now, let's assume there's been a determination of
6    an employee's fault to a percentage or a sum; okay?  You've
7    then got the ability, I think as Your Honor has acknowledged,
8    to recover that one time.  Can't recover that twice.  So now
9    you have a situation where there is a specific issue as to
10   what value has been derived from the reclamation creditor for
11   the benefit of these two estate vehicles and what has not.
12   So now you've already got an issue.  I mean, let's assume
13   whether it's through litigation, it's through settlement, or
14   otherwise.  I mean, through litigation you obviously have the
15   - you do have the specter of competing claims moving through
16   the process to result.  But let's say you've got a result.
17   Then you've got within, let's assume that everything is
18   settled between the reclamation creditor and the RCT, now
19   you've got an issue in litigation brought by the PCT.  What
20   is the value of what the RCT derived?  And you have
21   litigation looking at, again, what was the benefit that the
22   estate might have derived from a settlement?  In some cases
23   it might be easy.  It might be dollars, and some -
24   segregated, and some cases it might not be so easy.  Judging
25   from this process, it's going to be a complicated issue, but

1   be that as it may, that has to involve the reclamation

2   creditor in a way that's different from a situation against

3   Deloitte.  Plus, just looking at the allegations, by alleging

4   that someone acted within the scope, there are the direct

5   allegations that create reclamation creditor liability, which

6   you don't have in allegations against Deloitte.  Whenever

7   you're alleging -

8           THE COURT: Well, let's not use Deloitte.  Let's use

9   the allegations against Fleming's directors and officers who

10  participated with the reclamation creditors in this alleged

11  fraud.  I mean they're the same.  So -

12          MR. FRIEDMAN: Well, it's - I wouldn't say they are

13  the same, because I don't think that the liability of the

14  Fleming officers and directors stands on whether the

15  reclamation vendors themselves or the reclamation vendors'

16  employees have liability.

17          THE COURT: No, but I'm positing the allegations are

18  they both participated in this fraud, and therefore, I'm

19  positing that, as you say, we get a judgment against

20  everybody who participated in this alleged fraud, now you

21  have joint and several liability, all for the same actions.

22  I mean -

23          MR. FRIEDMAN: Yes, and if you - Well, whether you

24  may or may not, depending on what the relevant state law is,

25  but certainly whatever piece gets applied to the employee

1    it's the same piece that would get applied to the employer.

2    It's not -

3         THE COURT: I thought I heard it was joint and

4    several liability, so it's a hundred percent.  Now, we all

5    agree that you can't recover more than a hundred percent, but

6    it does not mean that you can't get a hundred percent

7    judgment against every single one of the defendants.

8         MR. FRIEDMAN: Right, but whatever you can recover,

9    whatever the exposure is of the employee, it's the same

10   exposure -

11        THE COURT: A hundred percent.

12        MR. FRIEDMAN:  - a reclamation creditor has.

13        THE COURT: It's a hundred percent.

14        MR. FRIEDMAN: We assume that's a hundred percent,

15   and now you've got the issue to be litigated over what was

16   the value of what was given to the RCT and the fact that both

17   could then be - from the get-go, going after the same issue.

18   So, you've got that specter of the duplicate exposure and the

19   duplicate cost, and then at the back end you've got the issue

20   of, Okay, well, what was recovered from one as opposed to the

21   other?  I think that those problems demonstrate why the

22   language should be read to give meaning that it's looking at

23   what the exposure ultimately is and relates to the

24   reclamation creditor not for a meaning that wouldn't - for

25   which those words don't need to be there.  In order to say

1   that someone from the estate can bring a derivative claim,

2   that doesn't need to be in a plan that exists already.  It's

3   a property of the estate.

4          THE COURT: There's lots of things in this plan that

5   probably didn't need to be there.  I know lawyers over-

6   lawyer.

7          MR. FRIEDMAN: Right.  That's - But what needed to

8   be there was where it went, and that's our construction,

9   those words have meaning in terms of where a claim goes not

10  whether it belongs to the estate or doesn't belong to the

11  estate.  Thank you.

12         MR. BERGER: Good morning, Judge.  Neal Berger for

13  FMG. I know you heard from Ms. Pertchard, but I will be

14  brief.  I want to comment only on the question that Your

15  Honor posited which is, What's the difference between a

16  direct action against the Fleming officers, one that

17  continues after the corporate entity files a bankruptcy, and

18  one against the individual employees?  The difference, Your

19  Honor, is that against the background of the pleading and

20  what's being asserted here, the officers and directors of

21  Fleming allegedly perpetrated a fraud.  They're acting

22  outside of the scope of their employment.  The vendor

23  officers, like Mr. Frank, the officer in question here, is

24  alleged to be acting within the scope of his employment.

25  There's indemnification when liability is asserted or fixed

 1    in a case for actions taken within the scope of employment.
 2    There isn't indemnification when someone is acting outside of
 3    the scope and commits a fraud.

 4         THE COURT: But, I think in my positing my analogy,
 5    I was not thinking necessarily of a situation where it was
 6    only limited to actions against directors and officers that
 7    are not covered by indemnity.  Even actions against directors
 8    and officers which are covered by indemnity, are not
 9    discharged in a bankruptcy.  Those actions can continue.

10         MR. BERGER: They can, but in those instances - Your
11    Honor's correct, in many instances a corporate entity files
12    an 11 and you see actions continuing against officers and
13    directors.  Sometimes there's a request for relief from the
14    stay because claims against D&O policies may exceed, and -

15         THE COURT: Right, right.

16         MR. BERGER:  - you get into distributive and Mandel
17    issues.  But in this instance you have something that
18    happened before the petition was filed, before that event
19    happened, and what happened here was the implementation
20    through negotiation of a plan that had a bar to actions and
21    indirect actions and here, what our position, and you heard
22    it from a number of parties, is that this is an indirect
23    attempt to achieve a recovery from a reclamation creditor.

24         THE COURT: But that's why I'm pressing you on that.
25    Isn't this exactly - a discharge discharges a company from

1    all claims, direct indirect, derivative, et cetera, which

2    somebody may have against that company, but it's never been

3    suggested that the discharge means that the officers and

4    directors who have indemnity claims against the debtor are

5    discharged of those claims.

6         MR. BERGER: But just the opposite is what's

7    happening here in the Texas pleading.  They're saying, we

8    don't have an action against FMG.

9         THE COURT: Right.

10        MR. BERGER: But FMG took actions because of its

11   employees did X, Y, and Z.

12        THE COURT: Right.

13        MR. BERGER: And FMG is going to be responsible.

14   That's what they're saying in their complaint.  The

15   reclamation creditor is the party that's responsible.

16        THE COURT: Right.

17        MR. BERGER: Only in response to what we've had, the

18   procedure brought here, are we hearing, well, there may be an

19   independent cause of action, I don't know if there is or

20   there isn't, but ultimately in the pleading, as it stands

21   today, this PCT is looking for a recovery against FMG.

22        THE COURT: No, it isn't.  No, it isn't.  It hasn't

23   sued you.  You're not a party.

24        MR. BERGER: But the pleading does say, Your Honor -

25        THE COURT: Says that you're responsible for your

1    employee.

2           MR. BERGER: That we're responsible – no, no.  That

3    we're responsible for the damages.

4           THE COURT: Okay.  You want me to direct that they

5    strike that paragraph?

6           MR. BERGER: No, no, Your Honor, I'm not asking for

7    that.

8           THE COURT: I didn't think –

9           MR. BERGER: But I think that was an important

10   distinction between the Fleming officers and our officers,

11   the distinction is that those officers, the Fleming officers,

12   are acting outside of the scope.  Ours are acting within the

13   scope.

14          THE COURT: Yeah.

15          MR. BERGER: Thank you, Judge.

16          THE COURT: Thank you.

17          MR. HILDEBRAND: I'll try and briefly take another

18   pass.

19          THE COURT: Okay.

20          MR. HILDEBRAND: Your Honor, there is a single

21   injury to the debtors allegedly caused by the actions of a

22   Kraft employee, John Kenneth Adams.  And I think the question

23   before you today is, who has a right to recover for that

24   injury under the plan?  Is it the RCT?  Or the PCT?  Kraft

25   cannot act in this matter except through its agent who caused

1   the alleged injury.  The fact that there may be separate
2   causes of action against both the company and the individual
3   to recover for that single injury to the debtors does not
4   mean they can be pealed apart.  It's still one right of the
5   debtors to recover for whatever injury was caused to them by
6   the acts of Mr. Adams, and the plan clearly assigned that
7   piece of the drama to the RCT.  Now, it didn't assign
8   Deloitte's piece to the RCT.  It did not assign the vendor
9   officers' piece to the RCT, but it did assign Mr. Adams'
10  piece to the RCT because Mr. Adams is a Kraft employee, and
11  that injury is the same thing that Kraft negotiated with the
12  RCT.  It's the same injury.  It also happens to comport with
13  the intent and the language of the plan, the intent of the
14  reclamation creditors in bargaining for dealing with a single
15  entity.  So that's the simplest way I can describe our
16  position.  We think it's supported by the plain language, and
17  we would ask you to go that way.

18          THE COURT: Well, unfortunately, I agree with the
19  PCT.  I think that the plain language of the plan provides
20  that only causes of action or claims against reclamation
21  creditors were transferred to the RCT, and I view a claim
22  against the vendors, the reclamation creditors, as separate
23  from the claims against the employees albeit that they arise
24  from the same actions and result in the same injuries.  They
25  are separate claims, and there was no assignment to the RCT

1    of any claims which the estate may have against employees of

2    the vendors.  I think my analogy to the effect of a discharge

3    and to the difference between claims against a debtor and

4    claims against a debtor's officers and employees is just as

5    applicable here.  I don't know the answer on the double

6    recovery, but I seem to recall from my law school days that

7    there is some concept that would preclude a double recovery

8    on a claim to the extent there's joint and several liability

9    that does not mean the plaintiff may recover a hundred

10   percent from each of the defendants.  I recognize that it may

11   be difficult to parse out what percentage of that claim has

12   already been paid by any reclamation creditors who have

13   settled with the RCT, the RCT claim, a direct claim against

14   them for these injuries, but I leave that for another court,

15   another forum to decide.  Again, my comments are premised on

16   allegations.  I make no comment as to whether any of these

17   clams have any validity at all.  I only determine that the

18   plan did not - or did retain with the PCT the causes of

19   action which the estate may have against the employees of the

20   reclamation vendors.  Well, I'll look for a form of order to

21   that effect.

22          MS. PATRICK: May I approach, Your Honor?

23          THE COURT: Yes.

24          MS. PATRICK: Because I could hand it to your clerk

25   or to you?

1          THE COURT: You may hand it to me.  Is this the

2     order attached to your pleadings?

3          MS. PATRICK: Yes, it is, and also . . . (microphone

4     not recording).

5          THE COURT: All right.

6          MR. MILLER: Your Honor, could we have a moment just

7     to look at the order?

8          THE COURT: Yeah, why don't you look at it.

9          MR. FRIEDMAN: Your Honor, may I comment on -

10          THE COURT: Yes.

11          MR. FRIEDMAN: At least for the RCT, and I'll let

12     the reclamation vendors speak for themselves, I do have some

13     concerns that the order may go beyond the scope of what is

14     actually being decided here and given the intensity of the

15     dispute here, would like to make sure that we don't end up

16     having a dispute among any of the parties regarding the

17     meaning of the language.  Certainly, as to the granting of

18     the PCT's motion, the denial of the RCT's motion, I think

19     that seems clear from Your Honor's comments, but that whether

20     in paragraph (1), claims against any persons or entities who

21     are not reclamation creditors or the property of the PCT, I

22     question, Your Honor, whether the ruling now is to go beyond

23     the claims that have been asserted in the Texas litigation

24     and whether it's the intent to issue an order that goes

25     beyond that.  Similarly, in paragraph (2), I don't know

1   whether the statement about standing really - and what might

2   be asserted in the Texas litigation goes beyond.  There might

3   be issues related to standing that are somewhat other than

4   whether under the plan the -

5        THE COURT: Well, and I'm not sure, no person, I'm

6   not - the parties before me can't, but I'm not sure I can say

7   no person shall assert.

8        MS. PATRICK: Your Honor, the intent of that was as

9   follows: Many of the officers asked Judge Ward to stay his

10  ruling pending a decision by this Court.

11       THE COURT: Okay.

12       MS. PATRICK: And what I don't want to do is, having

13  asked and said, we want Judge Walrath to decide, I don't want

14  them having been disappointed in your decision to come back

15  and say to Judge Ward, disregard what the Bankruptcy Court

16  did.  We want another bite at the apple.

17       THE COURT: Well, isn't that something you address

18  with Judge Ward, not me.

19       MS. PATRICK: Well, I think it is, Your Honor -

20       THE COURT: Are they parties here?

21       MS. PATRICK: Huh?

22       THE COURT: I'm not sure they're parties to this

23  action here.

24       MS. PATRICK: Well, it's a problem, Your Honor, I

25  grant, but I don't want - I'm very -

1          THE COURT: I know what you want, yeah.

2          MS. PATRICK: I know.  I'm always very clear about

3    what I want.  The issue is, I don't want serial motions and I

4    don't want a bunch of delay and you have heard here people

5    speak for Peter Frank in this Court on that issue.  People

6    have identified themselves as counsel for Mr. Frank.  And so,

7    you know, from my perspective, Your Honor, the ownership

8    issue has been decided.  This is a question in rem that was

9    for this Court.  The claims are owned by us, and that is it.

10   That's the nature of the motion.

11         THE COURT: Well, I'm inclined to strike paragraph

12   (2) and modify paragraph (1) just to say the claims against

13   the vendor officers are not - who are not reclamation

14   creditors are property of the PCT.

15         MR. FRIEDMAN: I understand that, Your Honor, and

16   again to the balance of it - But also paragraph (3), Your

17   Honor, I think that - I don't know what efforts to interfere

18   might be but I don't think there's been any effort to

19   interfere whatsoever.  We came to this Court and asked for

20   this Court to make a ruling, and I don't think it's

21   appropriate based on that to enter an injunction against us,

22   against the RCT for any efforts to interfere with the

23   prosecution of the claims.  I don't know what that might

24   mean.  Certainly -

25         THE COURT: I think you're already subject to

A    470

1    whatever injunction the confirmation order has and the plan
2    has.

3         MS. PATRICK: Right, and my only concern, Your
4    Honor, is I didn't want the RCT having come to this Court to
5    go down to Judge Ward and try to re-trade or unwind the
6    Court's ruling, and so that's my concern.  I take your point
7    that it's governed by the plan, and I don't expect that the
8    RCT will appear in front of Judge Ward to reargue the
9    ownership issue and if they do, I'm sure that this Court
10   would have something to say about that.

11        THE COURT: All right.  I would strike paragraphs
12   (2) and (3) and the clause "and claims against any persons or
13   entities" that is in paragraph (1).

14        MR. HILDEBRAND: I have a further question about the
15   scope of the order.  Consistently, your oral ruling, Your
16   Honor, an expressed concern for sorting out the issues later
17   on as to what extent a vendor like Kraft has been released
18   from a portion of any judgment that may lodge against Mr.
19   Adams, could we have language to the effect that to the
20   extent Mr. Adams caused injury to the debtors while acting
21   within the scope of his employment at Kraft, the RCT has
22   settled and resolved those damages to the debtors?

23        MS. PATRICK: Your Honor, that's exactly what we're
24   here about, and the answer ought to be, I think, plainly
25   under the plan, no.  Judge Ward will decide and the jury will

1    decide what liability Mr. Adams has, if any, for his tortuous

2    acts and any credit on the judgment that is to be applied, is

3    for Judge Ward to be applied.  I would like very much to try

4    my case before somebody starts talking about what my judgment

5    ought to look like.

6           MR. HILDEBRAND: I'm wondering, Your Honor, what it

7    is exactly that the RCT released then.

8           THE COURT: Their direct claim against you.

9           MS. PATRICK: Released as to the full extent of RCT

10   assets.  They released what they had.

11          THE COURT: Their claim against you.

12          MR. HILDEBRAND: And - but doesn't that include any

13   damages caused by Kraft's employee?

14          THE COURT: No.  No.

15          MR. HILDEBRAND: Okay.

16          THE COURT: No.  Just as it doesn't include any

17   damages caused by Fleming employee on their side of the

18   alleged fraudulent transaction.

19          MR. HILDEBRAND: All right, Your Honor.

20          MR. RALSTON: Your Honor, we're satisfied with the

21   deletions of paragraphs (2) and (3).  We would just note for

22   the record, I do not represent John Robinson, the Dean Foods

23   officer who is the defendant in the underlying suit.  One of

24   the concerns I was going to raise and the Court addressed it,

25   was the res judicata issue, in my mind, has not been decided,

1    as to the issue as to whether the plan preserved the claims.

2    I don't believe we have necessarily have standing to even

3    bring that issue before the Court since to the extent that it

4    would be with the RCT if we had that issue.  Mr. Robinson may

5    have that issue with the PCT, and I believe that the issue as

6    to whether the plan preserved the claims in and of themselves

7    sufficiently would be probably for Judge Ward to decide.

8         MS. PATRICK: Your Honor, if I may.  I could not

9    disagree more.  They explicitly raised in their pleadings

10   whether these claims had been preserved in the plan.  We

11   argued that the claims had been preserved and that they were

12   the property of the PCT.  Whether these claims are preserved

13   or not, is for this Court.  It was here in the RCT's motion.

14   There is no question about that.  That issue is dead.

15        MR. MILLER: Your Honor, I'll respond to that

16   because we did raise it in ours on behalf of Kemps, and the

17   issue has not been raised here.  In their - The RCT did not

18   raise it in their motion, and the response that we filed in

19   support of the motion in footnote 5 - well, I can read the

20   language to you, but in essence, what we did is said that the

21   issue before the Court today is not whether or not this claim

22   survives or whether it exists.  It's who has the right,

23   should it continue.  So, I think that to make it clear,

24   paragraph (1) should say, "to the extent such claim exists".

25   And the issue of whether or not the claim exists is for

 1   another day.

 2           THE COURT: Well, who's going to decide it?  Me.

 3           MR. MILLER: No, I think, Your Honor, that's an

 4   issue for the Texas Court to decide when it's raised whether

 5   or not that cause of action existed due to confirmation of

 6   the plan.  It's similar, Your Honor, to the situation that

 7   was raised before Your Honor in Worldwide Direct.

 8           THE COURT: Yeah.

 9           MR. MILLER: When we represented PWC and Your Honor

10   advised the trustee in that situation, who had brought it

11   back to your court for an interpretation, quite frankly, of

12   the plan, as to what it meant.  Your Honor correctly stated,

13   That's for another court to determine what *res judicata*

14   effect the plan and the order states.

15           THE COURT: Well, is this not a case where the

16   question is whether or not the disclosure statement

17   adequately stated the claims that were being preserved

18   against creditors and others?

19           MR. MILLER: And does the plan adequately provide

20   for the retention of that cause of action to some party, and,

21   I guess, we've decided that, and to the extent that it does

22   exist, it's the PCT's asset.  All I'm saying is that whether

23   that cause of action survived is for another court to decide

24   based upon an interpretation and reading of this plan.

25           THE COURT: Well, I don't remember the Worldwide

1   decision where I didn't decide it.  I have decided that issue

2   in other cases.  I don't know why I wouldn't decide that

3   issue.

4          MR. MILLER: We did not - Your Honor, whether or not

5   -

6          THE COURT: What is the argument that it is not

7   preserved?

8          MR. MILLER: I'm sorry?

9          THE COURT: What is the argument that it is not

10  preserved by the description that's in the disclosure

11  statement.

12         MR. MILLER: Well, we didn't brief the issue, Your

13  Honor, so I'm not in a position to tell you all the reasons

14  why we would believe that it may not have been.  And once

15  again, I do not represent those individuals.  So, I can't

16  speak on their behalf.  They've admitted that they're not

17  bringing the action against my client, which is Kemps.  But

18  it seems to me that those people aren't represented here.  We

19  put in our footnote that we're not addressing that issue, but

20  that issue should be reserved.  They addressed the issue in

21  their reply that they filed, but, you know, that's not how it

22  came about.  Ours was very clear that we were not addressing

23  the issue.  We'd raise it at another time to the extent that

24  became an issue.  So, at issue today, was whether or not the

25  RCT or the PCT had this cause of action to the extent the

1    cause of action existed.

2         MS. PATRICK: Your Honor, at page 33 of our opening

3    brief, the cross-motion says, and I quote, "The PCT is

4    entitled to the entry of an order declaring that it owns the

5    claims it has filed.  There is an explicit plan provision

6    conferring these claims on the PCT.  These claims were not

7    discharged, and the existing plan injunction and the

8    confirmation order requires the PCT to maximize these claims

9    for the benefit of its creditors."  The existence and

10   preservation of the claims is in our cross-motion, and Kemps'

11   counsel in their reply brief, it was they who made the

12   argument that the claims were not preserved because they

13   weren't listed on Exhibit A.  I didn't come up with that

14   myself.  That is the argument that they made, which is why I

15   pointed the Court to the retained claim language and the

16   expressed statement that Exhibit A is not the sole means by

17   which preservation is determined.  They joined issue on this.

18   They have made allegations in the opening brief about the

19   disclosure statement not preserving these claims.  We have

20   briefed it expressly.  It is before the Court.  It is not for

21   Judge Ward.  It is for this Court to decide and to decide

22   now.

23         MR. MILLER: Well, I'll point to footnote 8 of our

24   reply, that says, "The issue of whether the EO claims against

25   Green, Thorp, and Kemps were adequately preserved in the plan

1   and disclosure statement, it's not currently before the Court

2   on the RCT's motion.  Kemps has not waived raising such

3   issues at a later appropriate time.  Accordingly, Kemps

4   hereby denies any liability with respect to the EO claims,

5   and hereby reserves all of its rights to contest the EO

6   claims and the availability of them to parties to assert the

7   EO claims against Green, Thorp, and/or Kemps."

8        THE COURT: Well, I think I, of necessity, have to

9   determine whether the claims were preserved because

10   otherwise, my opinion here would be an advisory opinion.

11   Claims, if there are any, belong to PCT.

12        MR. MILLER: But, I think that people that are

13   represented here are representing the vendors.

14        THE COURT: Uh-huh.

15        MR. MILLER: And our position was that the indirect

16   causes of action against the employees, who we don't

17   represent, is not an asset that should be transferred to the

18   PCT but should be retained by the RCT.  This, what they're

19   asking for, is a judgment or a ruling against people that

20   weren't represented here, that didn't file any pleading in

21   connection with that.  And they should be able to raise

22   whatever defenses they would have.  I mean, I don't represent

23   the two employees that are identified with respect to Kemps.

24   I'm representing Kemps.

25        THE COURT: All right.

1           MR. MILLER: Thank you, Your Honor.

2           MS. PATRICK: But, Your Honor, it's Kemps that made

3    the argument that the claims were not preserved.  It's they

4    that made the argument about Exhibit A.  It's - they made it

5    in their second brief in response to my cross-motion.

6           MR. HILDEBRAND: Your Honor, if I could speak.

7    Kraft certainly never reached this issue.  Mr. Adams is not

8    before this Court, and that the premise of our motion,

9    certainly, was that Mr. Adams' claims conceptually were with

10   RCT and included in indirect causes of action.  Now that this

11   Court has determined otherwise, Mr. Adams should be free to

12   argue whatever the plan gives him to say that the claims

13   against him individually were improperly disclosed and

14   preserved under the plan, particularly since they've assisted

15   on this formulated greeting where the vendors are separated

16   from their employees, it seems to me Mr. Adams is entitled to

17   go back and read the fine print and find out whether he's

18   separated for all purposes and dropped out of the picture.

19   So, at a minimum, he ought to be heard on that subject in

20   front of this Court, if you're going to decide it today.

21          MR. RALSTON: Your Honor, not to belabor the point.

22   This Court if it remembers the Worldwide direct decision, may

23   remember me sitting by Mr. Wilbinsky's side as you poured us

24   out, when we brought -

25          THE COURT: I don't remember it, unfortunately.

1          MR. RALSTON: Well, you did, and the *res judicata* -

2     this Court determined that the *res judicata* issue was

3     properly decided before the home court.  I will tell you in

4     candor to the Court, as an officer of the Court, we did not

5     brief this issue on behalf of Dean Foods, and we certain

6     don't represent John Robinson.  I don't know if Mr. Robinson

7     or his counsel desires to raise this issue or whether they

8     decided whether it would be before this Court or before the -

9     or Judge Ward's Court.  But certainly, in candor to the

10    Court, we do not think that the *res judicata* issue as to a

11    preservation was before it.  It was, rather, assuming that

12    those claims were preserved, who owned the claims.  And,

13    again, I'm not going to exercise or engage in any exercise of

14    conjecture as to what Mr Robinson and his counsel wish to do

15    if such a claim is determined to exist.  I don't know, I

16    haven't looked at the plan regarding the *res judicata* issue.

17    I just note that our briefing, and I don't think a fair

18    meeting of the any of the briefing indicates that that issue

19    was teed up before the Court.  I think it's just the

20    ownership issue.

21         MR. BERGER: Your Honor, Neal Berger.  Just one

22    point and one request.  Your Honor, Ms. Pertchard and I

23    appear today for Food Marketing Group not for Peter Frank.

24    Your Honor had - that's my statement then as to the request.

25    Your Honor did say a number of times on the record that you

1   weren't pre-judging any of the allegations.  You weren't

2   making any findings of fact.  Your Honor has ruled on the

3   ownership of this cause of action, but as to other rights,

4   claims, and defenses, it would be appropriate in the order

5   that those be preserved.  The transcript is lengthy, and I

6   want to be certain that any other court or any other party

7   looking at Your Honor's order is abundantly clear that Your

8   Honor did not make findings of fact as to the allegations and

9   any of the pleadings or in the arguments today.

10          MS. PATRICK: Your Honor, if I may just briefly.  I

11  think the Court has been clear.  There's no request for

12  findings of fact in any of the motions, and the Court has

13  said it has made none, but the plan specifically says that

14  *res judicata* shall not apply as a defense to any claim

15  preserved, and the Court is exactly right.  The question

16  whether these claims exist is a necessary antecedent to the

17  ownership issue.  Otherwise, it's just an advisory opinion,

18  and this is teed up here, and I do not think - people can

19  make whatever arguments they want to make in a district

20  court.

21          THE COURT: Well, how is it teed up?

22          MS. PATRICK: It's teed up in my cross-motion -

23          THE COURT: I've said these are not - I've said

24  expressly that these are not claims against the only parties

25  that are here.  So, how can I make any conclusion with

1    respect to claims that are not against them?

2         MS. PATRICK: Well, the answer, Your Honor, is that

3    you are necessarily, when you say these are not claims

4    against reclamation creditors, the PCT has claims.  I mean

5    inherent in that is something that is at issue.  There was a

6    bone that was being argued about between these two dogs.

7         THE COURT: However, the dog in this fight isn't

8    here.

9         MS. PATRICK: Your Honor, the dog -

10        THE COURT: It's not their claims.  One dog is here,

11   the other isn't here.  These parties are not the dog in this

12   fight.  I've made that - really.

13        MS. PATRICK: Let me say this, Your Honor.  I think

14   it ought to be clear at least this much, that none of the

15   creditors who appeared here to argue that these claims were

16   not preserved, and certainly not the RCT, none of them who

17   actually litigated the question whether these claims were

18   preserved ought to be heard to argue or support a claim that

19   they were not preserved.

20        THE COURT: Well, they're not parties in interest.

21        MS. PATRICK: I understand and the only reason I

22   raise it, Your Honor, is because when I very pointedly said I

23   did not expect to see the RCT in Judge Ward's Court making

24   arguments, the silence was deafening from my left as to

25   whether any of these parties who chose to litigate here

1    intend to go make the same arguments in front of Judge Ward.

2    They should not be allowed, having teed up before Your Honor,

3    whether the claims were preserved and whether they owned them

4    to appear before Judge Ward and argue the contrary of this

5    Court's ruling.

6          THE COURT: Well, all I can say is that I can rule

7    that any claims that were preserved by the plan against the

8    vendor officers are the property of the PCT.

9          MS. PATRICK: Okay.

10         THE COURT: But I cannot make a ruling that would

11   effect the vendor officers without them being here.

12         MS. PATRICK: Okay.

13         THE COURT: All right?

14         MS. PATRICK: I think our order is still fine with

15   the deletions that you have.

16         THE COURT: And with the addition after claims of -

17   which were preserved by the plan.  So it would read, Under

18   Fleming's plan of reorganization, any claims which were

19   preserved by the plan against the vendor officers who are not

20   reclamation creditors are the property of the PCT.

21         MR. HILDEBRAND: (Microphone not recording.)

22         THE COURT:  All right, with those modifications

23   then, I'll enter the order.

24         MS. PATRICK: Your Honor, if you want, I think I

25   have -

1          THE COURT: I've made my changes.

2          MS. PATRICK: Okay.

3          THE COURT: All right, we're done?

4          MS. PATRICK: Thank you again for your courtesy to

5     me.

6          ALL: Thank you, Your Honor.

7          THE COURT: Thank you, we'll stand adjourned.

8          (Whereupon at 12:19 p.m. the hearing in this matter

9     was concluded for this date.)

10

11

12

13

14

15

16

17

18

19          I, Elaine M. Ryan, approved transcriber for the

20     United States Courts, certify that the foregoing is a correct

21     transcript from the electronic sound recording of the

22     proceedings in the above-entitled matter.

23

24     /s/ Elaine M. Ryan                              10/26/05
       Elaine M. Ryan
       2801 Faulkland Road
       Wilmington, DE 19808
       (302) 683-0221